FILED
2026 SEP 28 AM 9:56
CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

# VERIFIED COMPLAINT AND DEMAND FOR DAMAGES FOR WILLFUL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501, 504), REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202, 1203), CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT, FALSE COMMERCIAL ADVERTISING AND UNFAIR COMPETITION (15 U.S.C. § 1125(A)), COMMON LAW DEFAMATION PER SE, FALSE LIGHT INVASION OF PRIVACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CIVIL CONSPIRACY

Case: 2:26−cv−00899
Assigned To : Bennett, Jared C.
Assign. Date : 9/28/2026
Description: Sullivan v. TGP Communications et al

**CASE NO.:** Unassigned
**JUDGE:** Unassigned
**DOC ID:** 0928-JES-V-TGP-COMP-2026
**DATE:** September 28, 2026

**JOHN EARLE SULLIVAN**,
*Plaintiff,*

v.

**TGP COMMUNICATIONS LLC**,
**d/b/a THE GATEWAY PUNDIT**,
*a Missouri limited liability company,*
*Defendant;*

and

**JAMES HOFT (a/k/a "Jim Hoft")**,
*Defendant, in his individual and corporate managerial capacities;*

and

**JOSEPH HOFT (a/k/a "Joe Hoft")**,
*Defendant, in his individual capacity;*

and

**CARA CASTRONUOVA**,
*Defendant, in her individual capacity;*

and

**ALICIA POWE**,
*Defendant, in her individual capacity;*

and

**CULLEN LINEBARGER**,
*Defendant, in his individual capacity;*

and

**CASSANDRA FAIRBANKS**,
*Defendant, in her individual capacity.*

**ORIGINAL CIVIL ACTION & DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**Table Of Authorities** . . . 3

**Article I. Nature Of The Action** . . . 6

**Article II. Jurisdiction And Venue** . . . 12

**Article III. Parties** . . . 16

**Article IV. Factual Allegations** . . . 20

*CREATION, AUTHORSHIP, FIXATION, AND FEDERAL COPYRIGHT REGISTRATION OF THE PROTECTED WORK* . . . 20

*ESTABLISHED COMMERCIAL LICENSING HISTORY AND PRIMARY MARKET VALUE* . . . 22

*DEFENDANTS' UNAUTHORIZED EXPROPRIATION, REPRODUCTION, AND EXPLOITATION* . . . 23

*JUDICIAL ESTOPPEL ON EDITORIAL DOMINION AND CONTROL* . . . 27

*DEFENDANTS' CORPORATE ALTER EGO, BAD-FAITH BANKRUPTCY ABUSE, AND FRAUDULENT ASSET DIVERSION* . . . 28

*COMMERCIAL DISPLAY ADVERTISING SCHEME AND PROGRAMMATIC PROFIT EXTRACTION* . . . 30

*DEFENDANTS' COORDINATED DEFAMATION CAMPAIGN AND MALICIOUS PUBLICATIONS* . . . 31

*DEMONSTRABLE FALSITY AND COMPLETE OFFICIAL EXONERATION* . . . 33

*REJECTION OF STATUTORY RETRACTION AND CONSCIOUSNESS OF LIABILITY* . . . 35

*CONSTITUTIONAL ACTUAL MALICE, COMMERCIAL EXPLOITATION, AND IRREPARABLE HARM* . . . 36

**Article V. Claims For Relief** . . . 37

**Count I: Direct Willful Federal Copyright Infringement (17 U.S.C. §§ 106, 501, 504)** . . . 37

**Count II: Removal And Alteration Of Copyright Management Information (17 U.S.C. §§ 1202(B), 1203)** . . . 39

**Count III: Contributory And Vicarious Copyright Infringement (17 U.S.C. §§ 106, 501)** . . . 41

**Count IV: Common Law Defamation Per Se (Supplemental Jurisdiction — 28 U.S.C. § 1367)** . . . 43

**Count V: Common Law False Light Invasion Of Privacy (Supplemental Jurisdiction — 28 U.S.C. § 1367)** . . . 45

**Count VI: Intentional Infliction Of Emotional Distress (Supplemental Jurisdiction — 28 U.S.C. § 1367)** . . . 46

**Count VII: Civil Conspiracy (Supplemental Jurisdiction — 28 U.S.C. § 1367)** . . . 48

**Count VIII: False Commercial Advertising And Unfair Competition Under The Lanham Act (15 U.S.C. § 1125(A)(1)(B))** . . . 50

**Article VI. Prayer For Relief** . . . 53

*DEMAND FOR JURY TRIAL* . . . 57

*VERIFICATION AND UNSWORN DECLARATION* . . . 58

**Certificate Of Service** . . . 59

**Addendums** . . . 61

**Index Of Appended Enclosures** . . . 76

# TABLE OF AUTHORITIES

## CONSTITUTIONAL PROVISIONS

1. United States Constitution, at amend. VII (1791) . . . . 13

## STATUTES, CODES, RULES, AND POLICIES

1. 11 U.S.C. § 1112 — Conversion or Dismissal, at 11 U.S.C. § 1112(b)(1) (2010) . . . . 29
2. 15 U.S.C. § 1117 — Recovery for Violation of Rights, at 15 U.S.C. § 1117(a) (2020) . . . . passim
3. 15 U.S.C. § 1121 — Jurisdiction of Federal Courts, at 15 U.S.C. § 1121(a) (1998) . . . . 12, 15
4. 15 U.S.C. § 1125 — False Designations of Origin, False Descriptions, and Dilution Forbidden, at 15 U.S.C. § 1125(a)(1)(B) (2020) . . . . passim
5. 17 U.S.C. § 102 — Subject Matter of Copyright: In General, at 17 U.S.C. § 102(a)(6) (1990) . . . . 9, 20
6. 17 U.S.C. § 106 — Exclusive Rights in Copyrighted Works, at 17 U.S.C. § 106 (1976) . . . . 5, 6, 41
7. 17 U.S.C. § 1202 — Integrity of Copyright Management Information, at 17 U.S.C. § 1202(b) (1998) . . . . passim
8. 17 U.S.C. § 1203 — Civil Remedies, at 17 U.S.C. § 1203(a), (c)(3)(B) (1998) . . . . passim
9. 17 U.S.C. § 410 — Registration of Claim and Issuance of Certificate, at 17 U.S.C. § 410(c) (1976) . . . . 21
10. 17 U.S.C. § 411 — Registration and Civil Infringement Actions, at 17 U.S.C. § 411(a) (2008) . . . . 12, 15
11. 17 U.S.C. § 501 — Infringement of Copyright, at 17 U.S.C. § 501(a) (1976) . . . . 6, 38
12. 17 U.S.C. § 502 — Remedies for Infringement: Injunctions, at 17 U.S.C. § 502(a) (1976) . . . . 39
13. 17 U.S.C. § 504 — Remedies for Infringement: Damages and Profits, at 17 U.S.C. § 504(a), (c)(2) (1976) . . . . passim
14. 17 U.S.C. § 505 — Remedies for Infringement: Costs and Attorney's Fees, at 17 U.S.C. § 505 (1976) . . . . 12
15. 28 U.S.C. § 1331 — Federal Question, at 28 U.S.C. § 1331 (1980) . . . . 12, 14
16. 28 U.S.C. § 1332 — Diversity of Citizenship; Amount in Controversy; Costs, at 28 U.S.C. § 1332(a)(1) (2011) . . . . 12, 16
17. 28 U.S.C. § 1338 — Patents, Plant Variety Protection, Copyrights, Mask Works, Designs, Trademarks, and Unfair Competition, at 28 U.S.C. § 1338(a) (1999) . . . . 12, 14, 15
18. 28 U.S.C. § 1367 — Supplemental Jurisdiction, at 28 U.S.C. § 1367(a) (1990) . . . . passim
19. 28 U.S.C. § 1391 — Venue Generally, at 28 U.S.C. § 1391(b)(2) (2011) . . . . 15, 18
20. 28 U.S.C. § 1400 — Patents and Copyrights, Mask Works, and Designs, at 28 U.S.C. § 1400(a) (1998) . . . . 15, 18
21. 28 U.S.C. § 1746 — Unsworn Declarations Under Penalty of Perjury, at 28 U.S.C. § 1746 (1976) . . . . 59
22. Utah Code Ann. § 45-2-1.5 — Actual Damages -- Broadcast in Good Faith -- Retraction -- Time -- Candidate for Public Office, at § 45-2-1.5(1) (1975) . . . . 35
23. Utah Code Ann. § 78B-3-205 — Acts Submitting Person to Jurisdiction, at § 78B-3-205(1), (3) (2026) . . . . 14, 16
24. Utah Code Ann. § 78B-8-201 — Punitive Damages -- Proof -- Award, at § 78B-8-201(1)(a) (2026) . . . . 12
25. Federal Rules of Civil Procedure, at Rule 38(b) (2007) . . . . 11, 14, 57

## JUDICIAL PRECEDENTS AND CASE LAW


1. *Calder v. Jones, 465 U.S. 783, at 789–90 (1984)* . . . . 14, 17
2. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296, at 301 (2019)* . . . . 12, 16
3. *Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, at 692 (1989)* . . . . passim
4. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, at 930 (2005)* . . . . 41, 42
5. *New York Times Co. v. Sullivan, 376 U.S. 254, at 279–80 (1964)* . . . . passim
6. *Pegram v. Herdrich, 530 U.S. 211, at 227 n.8 (2000)* . . . . 27, 28
7. *St. Amant v. Thompson, 390 U.S. 727, at 731–32 (1968)* . . . . passim
8. *State of Missouri ex rel. Schmitt v. Biden, 83 F.4th 400, at 412 (5th Cir. 2023)* . . . . 27
9. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, at 1071–78 (10th Cir. 2008)* . . . . 14, 17
10. *Shrader v. Biddinger, 633 F.3d 1235, at 1241, 1244 (10th Cir. 2011)* . . . . 14, 17
11. *XMission, L.C. v. Fluent LLC, 955 F.3d 833, at 841 (10th Cir. 2020)* . . . . 14, 18
12. *Alta Industries Ltd. v. Hurst, 846 P.2d 1282, at 1290 n.17 (Utah 1993)* . . . . 48, 49
13. *Pohl, Inc. of America v. Webelhuth, 2008 UT 89, at ¶ 29, 201 P.3d 944 (Utah 2008)* . . . . 48, 49
14. *Prince v. Bear River Mut. Ins. Co., 2002 UT 68, at ¶ 37, 56 P.3d 524 (Utah 2002)* . . . . 46, 47
15. *Retherford v. AT&T Communications of Mountain States, Inc., 844 P.2d 949, at 970–71 (Utah 1992)* . . . . 46, 47
16. *Russell v. Standard Corp., 898 P.2d 263, at 265–66 (Utah 1995)* . . . . 36, 45, 46, 52
17. *West v. Thomson Newspapers, 872 P.2d 999, at 1007 (Utah 1994)* . . . . 43, 44

**John Earle Sullivan**
1221 West Erda Way
Erda, Utah 84074
**Telephone:** (435) 841-7258
**Email:** `johne.sullivan@outlook.com`
*Plaintiff Pro Se*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| **JOHN EARLE SULLIVAN,**<br>*Plaintiff,*<br>**v.**<br>**TGP COMMUNICATIONS LLC, d/b/a THE GATEWAY PUNDIT,**<br>*a Missouri limited liability company, Defendant;*<br>*and*<br>**JAMES HOFT,**<br>*(a/k/a "Jim Hoft", in his individual and corporate managerial capacities (Defendant);*<br>*and*<br>**JOSEPH HOFT,**<br>*(a/k/a "Joe Hoft", in his individual capacity (Defendant);*<br>*and*<br>**CARA CASTRONUOVA; ALICIA POWE; and CASSANDRA FAIRBANKS,**<br>*each in her individual capacity (Defendants);*<br>*and*<br>**CULLEN LINEBARGER,**<br>*in his individual capacity (Defendant).* | **VERIFIED COMPLAINT AND DEMAND FOR DAMAGES FOR WILLFUL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501, 504), REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202, 1203), CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT, FALSE COMMERCIAL ADVERTISING AND UNFAIR COMPETITION (15 U.S.C. § 1125(A)), COMMON LAW DEFAMATION PER SE, FALSE LIGHT INVASION OF PRIVACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CIVIL CONSPIRACY**<br><br>**CASE NO.: Unassigned**<br><br>**JUDGE: Unassigned**<br><br>**DOC ID: 0928-JES-V-TGP-COMP-2026**<br><br>**DATE: SEPTEMBER 28, 2026**<br><br>**DEMAND FOR JURY TRIAL** |

**VERIFIED COMPLAINT AND DEMAND FOR DAMAGES FOR WILLFUL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501, 504), REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202, 1203), CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT, FALSE COMMERCIAL ADVERTISING AND UNFAIR COMPETITION (15 U.S.C. § 1125(A)), COMMON LAW DEFAMATION PER SE, FALSE LIGHT INVASION OF PRIVACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CIVIL CONSPIRACY**

Plaintiff John Earle Sullivan brings this civil action for willful federal copyright infringement, removal and alteration of copyright management information under the Digital Millennium Copyright Act, contributory and vicarious copyright infringement, false commercial advertising and unfair competition under Section 43(a) of the Lanham Act, common law defamation *per se*, false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy against Defendants TGP Communications LLC

d/b/a The Gateway Pundit, James Hoft, Joe Hoft, Cara Castronuova, Alicia Powe, Cullen Linebarger, and Cassandra Fairbanks, and in support thereof alleges as follows:

## ARTICLE I. NATURE OF THE ACTION

Plaintiff John Earle Sullivan brings this verified civil action against Defendants TGP Communications LLC d/b/a The Gateway Pundit, James Hoft, Joe Hoft, Cara Castronuova, Alicia Powe, Cullen Linebarger, and Cassandra Fairbanks to secure compensatory, statutory, and injunctive relief for willful federal copyright infringement arising under the Copyright Act of 1976, **17 U.S.C. §§ 106**[1], **501**[2], and **504**[3], contributory and vicarious copyright infringement under federal law, the removal and alteration of copyright management information under the Digital Millennium Copyright Act, **17 U.S.C. §§ 1202(b)(1), (3)**[4] and **1203**[5], false commercial advertising and unfair competition under Section 43(a) of the Lanham Act, **15 U.S.C. § 1125(a)(1)(B)**[6], seeking disgorgement of Defendants' commercial profits and enhanced damages under **15 U.S.C. § 1117(a)**[7], and transactionally unified supplemental common law claims for defamation *per se*, false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy prosecuted pursuant to **28 U.S.C. § 1367(a)**[8]. Instituted upon inquiry reasonable under the circumstances pursuant to Federal Rule of Civil Procedure 11(b), this action is prosecuted

[1] Exclusive Rights in Copyrighted Works, at 17 U.S.C. § 106 (1976): 'Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly...': 'Congress of the United States, 17 U.S.C. § 106'

[2] Infringement of Copyright, at 17 U.S.C. § 501(a) (1976): 'Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a)... is an infringer of the copyright or right of the author, as the case may be.': 'Congress of the United States, 17 U.S.C. § 501'

in objective good faith to vindicate actionable statutory and common law rights, devoid of any purpose to harass, cause needless delay, or needlessly expand litigation expenses.

In accordance with the governing screening standards under 28 U.S.C. § 1915(e)(2)(B), the claims asserted herein are well-grounded in existing law, federal statutory enactments, constitutional guarantees, and controlling jurisprudence of the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit. The verified factual averments set forth herein establish concrete, non-conclusory grounds for relief satisfying the plausibility thresholds of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

All named Defendants are private commercial entities and individuals amenable to the jurisdiction and process of this Court, possessing no governmental status, sovereign shield, or statutory immunity that would impede the full adjudication of Plaintiff's claims or the entry of the requested judicial relief. Defendant TGP Communications LLC is the mere corporate instrumentality, alter ego, and conduit of Defendant James Hoft, who exercises plenary personal dominion over all corporate assets, revenues, and editorial decisions, commingles personal and business affairs, siphoned corporate assets into insider entities for personal luxury acquisitions, and operates TGP Communications LLC with

[3] Remedies for Infringement: Damages and Profits, at 17 U.S.C. § 504(a), (c)(2) (1976): 'Except as otherwise provided by this title, an infringer of copyright is liable for either--(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)... In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.': 'Congress of the United States, 17 U.S.C. § 504'

[5] Civil Remedies, at 17 U.S.C. § 1203(a), (c)(3)(B) (1998): 'Civil Actions.--Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation... At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.': 'Congress of the United States, 17 U.S.C. § 1203'

zero other employees, rendering Defendant Hoft personally, jointly and severally liable for all corporate obligations under well-established doctrines of corporate veil-piercing.

Plaintiff John Earle Sullivan is an independent documentary filmmaker, video journalist, and the sole author, creator, and registered copyright proprietor of the original audiovisual motion picture work titled *The Insurrection of The United States Capitol*, duly registered with the United States Copyright Office under Registration Certificate No. **PA 2-585-152** (**Exhibit 1**)[9].

Through ongoing, repeated, and post-registration discrete acts of commercial exploitation persisting continuously through the filing of this action, Defendants knowingly, intentionally, and willfully copied, reproduced, publicly displayed, distributed, and commercially exploited substantial, key segments of Plaintiff's copyrighted audiovisual work across digital publication domains owned, curated, and operated by Defendants-specifically including the high-traffic commercial news portal TheGatewayPundit.com, associated social media conduits, and syndicated video channels-wholly devoid of Plaintiff's license, authorization, consent, or attribution[1]. To facilitate and conceal their unauthorized commercial piracy, Defendants intentionally stripped Plaintiff's copyright management information and attribution identifiers from the footage prior to digital

[4] Integrity of Copyright Management Information, at 17 U.S.C. § 1202(b) (1998): 'Removal or Alteration of Copyright Management Information.--No person shall, without the authority of the copyright owner or the law--(1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of any right under this title.': 'Congress of the United States, 17 U.S.C. § 1202'

[8] Supplemental Jurisdiction, at 28 U.S.C. § 1367(a) (1990): 'Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.': 'Congress of the United States, 28 U.S.C. § 1367'

syndication, establishing willful infringement under **17 U.S.C. § 504(c)(2)**[3], violating **17 U.S.C. § 1202(b)(1) and (b)(3)**[4], and directly entitling Plaintiff to civil remedies and statutory damages under **17 U.S.C. § 1203(c)(3)(B)**[5].

In immediate syntactic and commercial confluence with the unauthorized expropriation of Plaintiff's copyrighted footage, Defendants orchestrated, syndicated, and maintained an unrelenting, defamatory smear campaign against Plaintiff across fifty-four (54) separate articles generating over 65,289,475 commercial display advertising impressions, publishing demonstrably false statements of objective fact that imputed to Plaintiff the commission of infamous felony crimes of moral turpitude, falsely stigmatized Plaintiff as a violent *"Antifa-BLM Leader,"* and fabricated assertions that Plaintiff personally incited, directed, and orchestrated violent riots within the United States Capitol (**Exhibit 68**).

Defendants authored, syndicated, and monetized these defamatory publications with constitutional actual malice under the governing standards of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)[10], possessing subjective awareness of probable falsity under *St. Amant v. Thompson*, 390 U.S. 727 (1968)[11], and engaging in the purposeful avoidance of the truth under *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989)[12]. Defendants purposefully avoided conclusively exculpatory primary video records

[6] False Designations of Origin, False Descriptions, and Dilution Forbidden, at 15 U.S.C. § 1125(a)(1)(B) (2020): 'Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.': 'Congress of the United States, 15 U.S.C. § 1125'

[9] Subject Matter of Copyright: In General, at 17 U.S.C. § 102(a)(6) (1990): 'Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression... Works of authorship include... motion pictures and other audiovisual works...': 'Congress of the United States, 17 U.S.C. § 102'

and official government determinations-a campaign of malicious defamation that Defendants willfully perpetuated even after Plaintiff was granted a full, unconditional Presidential Pardon pursuant to Presidential Proclamation 10887 (**Exhibit 2**), certified under Department of Justice Pardon Certificate ID319255 (**Exhibit 3**), followed by the complete judicial dismissal with prejudice of all federal proceedings in the District of Columbia (**Exhibit 4**; **Exhibit 5**).

To vindicate Plaintiff's statutory exclusive rights under federal copyright and trademark law, redress the catastrophic commercial and reputational devastation wrought by Defendants' piracy, false advertising, and defamatory syndication, and recover the commercial licensing and advertising profits unlawfully diverted from Plaintiff, Plaintiff prosecutes this plenary action seeking actual damages and infringer profits pursuant to **17 U.S.C. § 504(b)**[3] and **17 U.S.C. § 1203(c)(2)**[5], disgorgement of Defendants' commercial advertising profits of not less than $2,118,843.62 and enhanced treble profits pursuant to **15 U.S.C. § 1117(a)**[7] of $6,356,530.86, maximum statutory damages for willful copyright infringement pursuant to **17 U.S.C. § 504(c)(2)**[3] of $600,000.00, statutory damages for removal of copyright management information pursuant to **17 U.S.C. § 1203(c)(3)(B)**[5] of $150,000.00, commercial licensing and business interference damages of $3,500,000.00, presumed general and special compensatory damages for defamation *per se*, false light, intentional infliction of emotional distress, and civil conspiracy of not less than

[7] Recovery for Violation of Rights, at 15 U.S.C. § 1117(a) (2020): 'When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount... The court in exceptional cases may award reasonable attorney fees to the prevailing party.': 'Congress of the United States, 15 U.S.C. § 1117'

$323,214,705.66 (plus $2,065,000.00 in statutory privacy, $501,042.12 in IIED hazard surcharge, and $419,245.79 in foreseeable downstream republication harm), exemplary and punitive damages pursuant to **Utah Code Ann. § 78B-8-201**[13] of not less than $1,292,858,822.63, costs and attorney's fees pursuant to **15 U.S.C. § 1117(a)**[7], **17 U.S.C. §§ 505**[14], and **1203(b)(4)-(5)**[5], comprehensive preliminary and permanent injunctive relief, establishing an aggregate cumulative ad damnum demand of not less than $2,380,424,916.30, and demands a trial by jury on all claims so triable as of right pursuant to Rule 38(b) of the **Federal Rules of Civil Procedure**[15] and the **United States Constitution**[1], amend. VII[16].

---

[10] Supreme Court of the United States, New York Times Co. v. Sullivan, 376 U.S. 254, at 279-80 (1964): 'The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'.

[11] Supreme Court of the United States, St. Amant v. Thompson, 390 U.S. 727, at 731-32 (1968): 'These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice... Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'.

## ARTICLE II. JURISDICTION AND VENUE

**Subject-Matter Jurisdiction (Federal Copyright and Lanham Act):** This Court possesses original subject-matter jurisdiction over Plaintiff's federal copyright infringement, Digital Millennium Copyright Act, and Lanham Act unfair competition claims pursuant to **28 U.S.C. § 1331** (Federal Question Jurisdiction)[17], **28 U.S.C. § 1338(a)** (Acts Relating to Copyrights and Trademarks)[18], **28 U.S.C. § 1338(b)** (Unfair Competition Joined with Copyrights)[18], and **15 U.S.C. § 1121(a)** (Lanham Act Jurisdiction)[19]. Plaintiff has fully satisfied the statutory condition precedent for instituting this action pursuant to **17 U.S.C. § 411(a)**[20], the Register of Copyrights having examined the deposit, approved registration, and issued Certificate of Registration No. **PA 2-585-152** (**Exhibit 1**) (*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019))[21].

**Subject-Matter Jurisdiction (Diversity of Citizenship - 28 U.S.C. § 1332[2]):** In the alternative and as an independent basis of federal subject-matter jurisdiction, this Court possesses original jurisdiction pursuant to **28 U.S.C. § 1332(a)(1)**[22]. Plaintiff John Earle Sullivan is an individual citizen and resident of the State of Utah. Defendant TGP Communications LLC is a limited liability company organized under the laws of the State

[12] Supreme Court of the United States, Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, at 692 (1989): 'Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category... A defendant who intentionally avoids learning whether a statement is true cannot defeat a showing of actual malice by claiming good faith.'.

[13] Proof': 'Award, at § 78B-8-201(1)(a) (2026): 'Except as provided in Subsection (1)(b), punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." -- Utah State Legislature, *Utah Code Ann. § 78B-8-201 -- Punitive Damages'

[14] Remedies for Infringement: Costs and Attorney's Fees, at 17 U.S.C. § 505 (1976): 'In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.': 'Congress of the United States, 17 U.S.C. § 505'

of Missouri whose sole member and owner, James Hoft, is a citizen and resident of the State of Missouri. Defendant James Hoft is a citizen and resident of Missouri. Defendant Joe Hoft is a citizen and resident of Florida. Defendant Cara Castronuova is a citizen and resident of New York. Defendant Alicia Powe is a citizen and resident of Virginia. Defendant Cullen Linebarger is a citizen and resident of Virginia. Defendant Cassandra Fairbanks is a citizen and resident of West Virginia. Complete diversity of citizenship exists between Plaintiff and all Defendants, and the amount in controversy, exclusive of interest and costs, far exceeds the statutory threshold of $75,000.00, well exceeding $2,380,424,916.30.

**Supplemental Jurisdiction (State Tort Claims):** This Court possesses supplemental jurisdiction over Plaintiff's transactionally related common law tort claims for defamation *per se*, false light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy pursuant to **28 U.S.C. § 1367(a)**[8], because said claims derive from a common nucleus of operative fact-specifically, Defendants' contemporaneous unauthorized expropriation, public display, commercial advertising monetization, conspiratorial collaboration, and defamatory distortion of Plaintiff's copyrighted audiovisual work and professional newsgathering activities-such that all claims form part

[7] Recovery for Violation of Rights, at 15 U.S.C. § 1117(a) (2020): 'When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount... The court in exceptional cases may award reasonable attorney fees to the prevailing party.': 'Congress of the United States, 15 U.S.C. § 1117'

[16] Constitutional Convention, United States Constitution, at amend. VII (1791): 'In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.'.

of the same constitutional case or controversy under Article III of the United States Constitution[3].

**Personal Jurisdiction:** This Court exercises specific personal jurisdiction over Defendants pursuant to the Utah Long-Arm Statute, **Utah Code Ann. § 78B-3-205(1) and (3)**[23], and the Due Process Clause of the Fourteenth Amendment to the United States Constitution[1]. Defendants purposefully availed themselves of the privileges of conducting activities within the State of Utah by intentionally directing interactive, commercial web traffic, video streaming feeds, and monetized digital publications into this forum; transacting business within the State of Utah through subscriber solicitation and geolocated commercial advertising networks; and intentionally targeting an individual known by Defendants to be a citizen and resident of Tooele County, Utah, thereby causing targeted, severe intellectual property infringement, reputational destruction, and economic devastation within this judicial district under the jurisdictional framework articulated in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)[24], and controlling Tenth Circuit jurisprudence in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071-78 (10th Cir. 2008)[25], *Shrader v. Biddinger*, 633 F.3d 1235, 1241, 1244 (10th Cir. 2011)[26] (holding that intentional internet torts targeting a forum resident satisfy purposeful direction where the forum resident is the focal point of the tortious conduct), and *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020)[27] (confirming that

[15] Supreme Court of the United States, Federal Rules of Civil Procedure, at Rule 38(b) (2007): 'On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand--which may be included in a pleading--no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d).'.

[17] Federal Question, at 28 U.S.C. § 1331 (1980): 'The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.': 'Congress of the United States, 28 U.S.C. § 1331'

[18] Patents, Plant Variety Protection, Copyrights, Mask Works, Designs, Trademarks, and Unfair Competition, at 28 U.S.C. § 1338(a) (1999): 'The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.': 'Congress of the United States, 28 U.S.C. § 1338'

purposeful direction is established where an intentional action is expressly aimed at the forum state with knowledge that the brunt of the injury will be felt there).

**Venue:** Venue is strictly proper in the United States District Court for the District of Utah, Central Division, pursuant to **28 U.S.C. § 1391(b)(2)**[28] and **28 U.S.C. § 1400(a)**[29], because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district, the intellectual property subject to willful infringement is exclusively owned and managed by a resident citizen of this district, the primary licensing market for the copyrighted footage was anchored and impaired in this district, and the brunt of the tortious and commercial injuries was directly inflicted upon and sustained by Plaintiff within this judicial district.

[18] Patents, Plant Variety Protection, Copyrights, Mask Works, Designs, Trademarks, and Unfair Competition, at 28 U.S.C. § 1338(a) (1999): 'The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.': 'Congress of the United States, 28 U.S.C. § 1338'

[19] Jurisdiction of Federal Courts, at 15 U.S.C. § 1121(a) (1998): 'The district and territorial courts of the United States shall have original jurisdiction and the courts of appeals of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.': 'Congress of the United States, 15 U.S.C. § 1121'

[20] Registration and Civil Infringement Actions, at 17 U.S.C. § 411(a) (2008): 'Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.': 'Congress of the United States, 17 U.S.C. § 411'

## ARTICLE III. PARTIES

**Plaintiff John Earle Sullivan:** Plaintiff is an individual, citizen of the United States, and resident of Erda, Tooele County, State of Utah. Plaintiff is an independent documentary filmmaker, video journalist, and the sole legal author, creator, and copyright owner of all exclusive rights in and to the registered audiovisual motion picture work registered under U.S. Copyright Registration No. PA 2-585-152 (**Exhibit 1**).

**Defendant TGP Communications LLC d/b/a The Gateway Pundit:** Defendant TGP Communications LLC is a Missouri limited liability company organized under the laws of the State of Missouri (Charter No. LC1358217), maintaining its principal place of business and registered corporate office in Harrisonville, Missouri (**Exhibit 65**). Defendant owns, operates, manages, and monetizes the commercial digital news portal TheGatewayPundit.com, which continuously distributes, syndicates, and broadcasts digital editorial text, display advertising, and streaming video content to an international audience, including millions of readers and viewers residing within the State of Utah. Defendant TGP Communications LLC is the mere corporate instrumentality, alter ego, and business conduit of Defendant James Hoft.

---

[21] Supreme Court of the United States, Fourth Estate Pub. Benefit Corp. v., LLC, 586 U.S. 296, at 301 (2019): 'Registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright.'.

[22] Diversity of Citizenship; Amount in Controversy; Costs, at 28 U.S.C. § 1332(a)(1) (2011): 'The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States...': 'Congress of the United States, 28 U.S.C. § 1332'

[23] Acts Submitting Person to Jurisdiction, at § 78B-3-205(1), (3) (2026): 'Notwithstanding Section 16-1a-503, any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to: (1) the transaction of any business within this state;... (3) the causing of any injury within this state whether tortious or by breach of warranty...': 'Utah State Legislature, Utah Code Ann. § 78B-3-205'

**Defendant James Hoft (a/k/a *"Jim Hoft"*):** Defendant James Hoft (full legal name James Henry Hoft, commonly known as Jim Hoft) is an individual residing in Saint Louis, Missouri. At all times material hereto, Defendant Hoft was and is the Founder, Managing Member, 100% Owner, and Editor-in-Chief of TGP Communications LLC. Defendant Hoft exercises plenary operational governance, non-delegable editorial dominion, and direct supervisory control over all editorial content, article publication, video ingestion, and commercial advertising funnels published across TheGatewayPundit.com. As judicially established by Chief Judge Mindy A. Mora of the United States Bankruptcy Court for the Southern District of Florida in *In re TGP Communications LLC*, Case No. 24-13838-MAM (Doc 104), Defendant TGP Communications LLC was organized in 2013 and has never had any employees other than Defendant James Hoft. Defendant Hoft exercises complete dominion and control over TGP Communications LLC, commingles corporate and personal assets, and transferred $820,860.00 from TGP Communications LLC to 2021 Main Street LLC (an entity owned 50/50 by Hoft and his spouse) without a promissory note, interest rate, or security interest to purchase an oceanfront luxury condominium in Florida, establishing alter ego status and piercing the corporate veil under Missouri and Utah law. Defendant Hoft is sued in both his individual capacity and his corporate managerial capacity.

---

[24] Supreme Court of the United States, Calder v. Jones, 465 U.S. 783, at 789-90 (1984): 'In Calder, the Court held that personal jurisdiction over out-of-state defendants was proper because their intentional, and allegedly tortious, actions were expressly aimed at the forum State and the brunt of the harm was suffered there.'.

[25] United States Court of Appeals for the Tenth Circuit, Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, at 1071-78 (10th Cir. 2008): 'In Calder, the Supreme Court held that personal jurisdiction over out-of-state defendants was proper because their intentional, allegedly tortious actions were expressly aimed at the forum state, and the brunt of the injury was felt there... Similarly, when an out-of-state defendant purposefully directs tortious activities toward the forum state and intentionally targets a forum resident, the minimum contacts requirement is satisfied.'.

[26] United States Court of Appeals for the Tenth Circuit, Shrader v. Biddinger, 633 F.3d 1235, at 1241, 1244 (10th Cir. 2011): 'merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed... Rather, the plaintiff must allege that online advertisements 'are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message.'.

**Defendant Joseph Hoft (a/k/a *"Joe Hoft"*):** Defendant Joseph Hoft (full legal name Joseph Walter Hoft, commonly known professionally as Joe Hoft) is an individual residing in Jensen Beach, Martin County, State of Florida (8750 South Ocean Drive, Unit 534, Jensen Beach, FL 34957). At all times material hereto, Defendant Joseph Hoft was a primary contributing author, radio host, and authorized editorial agent of TGP Communications LLC, and the twin brother of Defendant James Hoft, who conceived, authored, published, and syndicated twelve (12) discrete false and defamatory articles concerning Plaintiff across TheGatewayPundit.com, generating over 9,901,885 page views and reaching millions of readers nationwide, including throughout the State of Utah. Defendant Joseph Hoft actively coordinated with Defendant James Hoft in promotional broadcasts, syndicated commentaries, and digital publications disseminating said defamatory falsehoods to advance their shared political and commercial objectives. Defendant Joseph Hoft is sued in his individual capacity.

**Defendant Cara Castronuova:** Defendant Cara Castronuova is an individual residing in Elmont, New York. At all times material hereto, Defendant Castronuova was an investigative reporter, contributing author, and authorized agent of TGP Communications LLC who authored, published, and syndicated false and defamatory articles concerning Plaintiff across TheGatewayPundit.com (**Exhibit 64**). Defendant Castronuova is sued in her individual capacity.

---

[27] United States Court of Appeals for the Tenth Circuit, XMission, L.C. v. Fluent LLC, 955 F.3d 833, at 841 (10th Cir. 2020): 'Purposeful direction may be established when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state... requiring (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state.'.

[28] Venue Generally, at 28 U.S.C. § 1391(b)(2) (2011): 'A civil action may be brought in... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated...': 'Congress of the United States, 28 U.S.C. § 1391'

[29] Patents and Copyrights, Mask Works, and Designs, at 28 U.S.C. § 1400(a) (1998): 'Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.': 'Congress of the United States, 28 U.S.C. § 1400'

**Defendant Alicia Powe:** Defendant Alicia Powe (legal married name Alicia Maria Jubb) is an individual residing in Stafford, Virginia. At all times material hereto, Defendant Powe was an investigative journalist, contributing author, and authorized agent of TGP Communications LLC who authored, published, and syndicated false and defamatory articles concerning Plaintiff across TheGatewayPundit.com. Defendant Powe is sued in her individual capacity.

**Defendant Cullen Linebarger:** Defendant Cullen Linebarger (full legal name Cullen Jackson Linebarger) is an individual residing in Alexandria, Virginia. At all times material hereto, Defendant Linebarger was a staff writer, contributing author, and authorized agent of TGP Communications LLC who authored, published, and syndicated false and defamatory articles concerning Plaintiff across TheGatewayPundit.com (**Exhibit 63**). Defendant Linebarger is sued in his individual capacity.

**Defendant Cassandra Fairbanks:** Defendant Cassandra Fairbanks (full legal name Cassandra Alisha Fairbanks) is an individual residing in Harpers Ferry, West Virginia. At all times material hereto, Defendant Fairbanks was an authorized agent, contributing author, and Washington Bureau Chief of TGP Communications LLC, as well as Editor-in-Chief for Timcast Media, who authored, published, and promoted false and defamatory articles and promotional syndication materials concerning Plaintiff across TheGatewayPundit.com and affiliated media networks. Defendant Fairbanks is sued in her individual capacity.

## ARTICLE IV. FACTUAL ALLEGATIONS

### CREATION, AUTHORSHIP, FIXATION, AND FEDERAL COPYRIGHT REGISTRATION OF THE PROTECTED WORK

On January 6, 2021, Plaintiff, operating strictly as an independent documentary filmmaker and video journalist, recorded extensive, high-definition audiovisual footage capturing the unprecedented and historic events unfolding at the United States Capitol in Washington, D.C.

Plaintiff personally captured, framed, angled, exposed, sequenced, and edited this original audiovisual recording, making independent creative, aesthetic, and journalistic judgments regarding perspective, lighting, subject selection, and camera movement, thereby creating an original work of visual authorship exhibiting substantial creative expression.

Plaintiff titled this original motion picture documentary work *The Insurrection of The United States Capitol* (the *"Copyrighted Work"*).

The Copyrighted Work is an original work of authorship fixed in a tangible medium of digital audiovisual storage and constitutes protectable subject matter under Section 102 of the Copyright Act, **17 U.S.C. § 102(a)(6)**[9].

At all times material hereto, Plaintiff has been, and remains, the sole and exclusive proprietor of all rights, title, and interest in and to the Copyrighted Work, including all sovereign, exclusive rights enumerated under **17 U.S.C. § 106**[1].

Plaintiff duly applied for copyright registration of the Copyrighted Work with the United States Copyright Office, and the Register of Copyrights duly issued Certificate of Registration No. **PA 2-585-152**, with an effective date of registration of February 25, 2026 (**Exhibit 1**).

Pursuant to **17 U.S.C. § 410(c)**[30], Plaintiff's Certificate of Registration constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate, and is entitled to substantial evidentiary weight within the sound discretion of this Court. Corroborated by Plaintiff's uncontradicted original visual authorship, raw digital camera recordings, creative fixation, and continuous exclusive ownership, Plaintiff's statutory ownership and the unassailable validity of the copyright in and to the Copyrighted Work are established as a matter of law.

---

[30] Registration of Claim and Issuance of Certificate, at 17 U.S.C. § 410(c) (1976): 'In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.': 'Congress of the United States, 17 U.S.C. § 410'

**ESTABLISHED COMMERCIAL LICENSING HISTORY AND PRIMARY MARKET VALUE**

Plaintiff's Copyrighted Work possesses substantial, verifiable commercial, historic, and journalistic market value as an authentic, high-definition primary visual record of historic national events.

Immediately following the creation of the Copyrighted Work, leading global, national, and broadcast media networks recognized its exceptional commercial and journalistic value and entered into formal arm's-length commercial licensing agreements with Plaintiff to secure non-exclusive broadcast rights to specific segments of the Copyrighted Work.

Specifically, major broadcast news organizations-including Cable News Network (CNN) (**Exhibit 6**)-executed formal commercial license agreements and remittances with Plaintiff, establishing benchmark licensing fees of up to $35,000.00 per network agreement for authorized broadcast usage.

Plaintiff's established commercial licensing history conclusively establishes the existence of an active, highly profitable primary licensing market for authorized reproduction and broadcast display of the Copyrighted Work.

**DEFENDANTS' UNAUTHORIZED EXPROPRIATION, REPRODUCTION, AND EXPLOITATION**

Defendants had actual, constructive, and inquiry notice of Plaintiff's exclusive copyright ownership in and to the Copyrighted Work.

Through ongoing, repeated, and post-registration discrete transmissions persisting through 2026, Defendants intentionally, unlawfully, and without license, authorization, or consent, reproduced, embedded, streamed, publicly displayed, and distributed key segments of Plaintiff's Copyrighted Work across TheGatewayPundit.com and Defendants' syndicated distribution conduits (**Exhibit 62**).

Defendants systematically downloaded and extracted video files directly from Plaintiff's public digital channels, intentionally removed, altered, and excised Plaintiff's identifying copyright management information, digital watermarks, and authorial attribution notices, re-encoded the video files into proprietary web formats, and uploaded the footage onto video hosting servers and embedded video players hosted directly within commercial articles on TheGatewayPundit.com. Indeed, high-definition broadcast frame captures establish that Defendants publicly displayed and streamed Plaintiff's copyrighted footage of the Speaker's Lobby-plainly bearing Plaintiff's transparent *"Insurgence USA"* provenance watermark across the lower-right quadrant-while superimposing Defendants' own prominent *"GP"* (The Gateway Pundit) corporate broadcast logo in the upper-left quadrant to falsely brand and commercially exploit Plaintiff's work as their own proprietary news reporting (**Exhibit 69**). This intentional removal, alteration, and unauthorized superimposition of copyright management information was executed without

authority and with full knowledge, or reasonable grounds to know, that it would induce, enable, facilitate, and conceal infringement under **17 U.S.C. § 1202(b)(1) and (b)(3)**[4], rendering Defendants liable for civil remedies, injunctive relief, statutory damages of not less than $2,500 and up to $25,000 for each violation under **17 U.S.C. § 1203(c)(3)(B)**[5], and mandatory or discretionary attorney's fees under **17 U.S.C. § 1203(b)(5)**[5].

Defendants' synchronized digital stream of the Capitol interior demonstrates the concurrent presence of Plaintiff's underlying attribution mark and Defendants' overlying proprietary brand mark:




*Exhibit 69: High-definition video broadcast frame capture from The Gateway Pundit featuring Defendant's 'GP' corporate logo bug superimposed over Plaintiff's 'Insurgence USA' copyrighted documentary recording of the Speaker's Lobby.*

This empirical record conclusively establishes *prima facie* liability under Section 1202(b)(1) and (b)(3), proving that Defendants possessed direct physical custody of Plaintiff's authentic digital file and knowingly broadcast the footage with altered copyright management information to misappropriate commercial licensing value.

Furthermore, Defendants' unauthorized exploitation extended beyond web article embeds into active multi-platform broadcast streaming, digital archiving, and continuous video syndication. In commercial video broadcasts hosted and transmitted across their official, verified video channels (including @gatewaypundit, boasting over 107,000 subscribers)-such as their commercial broadcast titled *"JOIN 100 Percent Fed Up and Gateway Pundit LIVE With Hollywood Actor and Producer NICK SEARCY"*-Defendants streamed Plaintiff's copyrighted audiovisual recording of the Speaker's Lobby-retaining Plaintiff's prominent authorial watermark ***"JAYDEN X"*** across the lower-right quadrant of the screen-while superimposing Defendants' proprietary blue ***"GP"*** corporate logo bug to commercially promote the theatrical release of the film *Capitol Punishment*, solicit channel subscribers, and drive commercial live-chat monetization, maintaining said broadcast continuously accessible to the public and generating commercial impressions (**Exhibit 70**):




*Exhibit 70: High-definition broadcast frame capture from The Gateway Pundit official YouTube channel livestream featuring Defendant's 'GP' corporate broadcast logo bug superimposed over Plaintiff's 'JAYDEN X' copyrighted documentary recording of the Speaker's Lobby.*

This broadcast capture establishes that Defendants engaged in systemic, cross-platform copyright infringement and willful CMI alteration across both digital print publications and synchronized audiovisual streams.

Defendants integrated programmatic digital display advertisements, video pre-roll monetization funnels, commercial sponsorship links, and subscriber solicitation vectors directly adjacent to, embedded within, and overlapping Plaintiff's Copyrighted Work, generating substantial digital advertising impressions, user traffic, and direct commercial revenues for Defendants.

Following the effective date of federal copyright registration (February 25, 2026), Defendants have willfully and persistently continued to host, display, stream, and commercially exploit the Copyrighted Work across their digital domains, wholly refusing to obtain a commercial license, cease their unauthorized display, or tender statutory compensation to Plaintiff, despite formal statutory retraction demand and notice of violations served upon Defendants on August 8, 2026 (**Exhibit 66**) and formal ESI preservation notice served on September 17, 2026 (**Exhibit 67**), thereby establishing willful infringement as a matter of law under **17 U.S.C. § 504(c)(2)**[3].

**JUDICIAL ESTOPPEL ON EDITORIAL DOMINION AND CONTROL**

In prior formal sworn proceedings in federal court, Defendant James Hoft has affirmatively testified under penalty of perjury to his plenary, active editorial dominion, supervisory management, and day-to-day control of *The Gateway Pundit*.

Specifically, in *State of Missouri ex rel. Schmitt v. Biden*, Case No. 23-30445 (5th Cir., Dkt. 238-1)[31], Defendant Hoft executed a sworn declaration averring that he personally owns, directs, and operates *The Gateway Pundit*; that he exercises direct editorial supervision over its published articles and syndicated accounts; and that *The Gateway Pundit* functions as an original curated publisher rather than an uncurated passive message board.

Under established doctrines of judicial estoppel, Defendant James Hoft and Defendant TGP Communications LLC are precluded from disclaiming executive knowledge, denying personal involvement, or asserting that the infringing video displays and defamatory publications were posted without executive managerial direction and authorization (*Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000))[32].

[31] United States Court of Appeals for the Fifth Circuit, State of Missouri ex rel. Schmitt v. Biden, 83 F.4th 400, at 412 (5th Cir. 2023): 'A group of social-media users and two states allege that numerous federal officials coerced social-media platforms into censoring certain social-media content... The Plaintiffs maintain that... government officials were the ones pulling the strings--they 'coerced, threatened, and pressured the social-media platforms to censor them' through private communications.'.

**DEFENDANTS' CORPORATE ALTER EGO, BAD-FAITH BANKRUPTCY ABUSE, AND FRAUDULENT ASSET DIVERSION**

Defendant TGP Communications LLC is, and at all times material hereto has been, a mere alter ego, business conduit, and corporate shell for Defendant James Hoft. There exists such unity of interest and ownership between Defendant Hoft and Defendant TGP Communications LLC that the separate personalities of the corporation and the individual no longer exist.

On July 25, 2024, the United States Bankruptcy Court for the Southern District of Florida, per Chief Judge Mindy A. Mora, entered a comprehensive Memorandum Opinion Dismissing Chapter 11 Case in *In re TGP Communications LLC*, Case No. 24-13838-MAM (Doc 104), making binding judicial findings of fact and law regarding Defendants' corporate governance, finances, and bad-faith litigation practices:

(a) Defendant TGP Communications LLC was organized in 2013 and, since its inception, has had zero employees other than Defendant James Hoft;

(b) Defendant James Hoft is the 100% sole owner, sole member, and sole managing director of TGP Communications LLC, exercising unrestricted personal dominion over all editorial, business, and financial decisions;

(c) In 2021, Defendant Hoft caused Defendant TGP Communications LLC to transfer $820,860.00 directly to 2021 Main Street LLC-an insider entity owned 50/50 by Defendant Hoft and his spouse-to purchase an oceanfront luxury condominium in

---

[32] Supreme Court of the United States, Pegram v. Herdrich, 530 U.S. 211, at 227 n.8 (2000): 'Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'.

Florida, executed with no written promissory note, no security interest, no collateral, and zero interest payments;

(d) Defendant TGP Communications LLC purchased and maintained a 2021 Porsche Cayenne for Defendant Hoft's personal use;

(e) While claiming severe financial distress, Defendant TGP Communications LLC maintained over $1,100,000.00 in liquid investment accounts; and

(f) The Bankruptcy Court formally dismissed Defendant TGP Communications LLC's Chapter 11 bankruptcy filing with prejudice as an objective and subjective bad-faith abuse of the bankruptcy system pursuant to **11 U.S.C. § 1112(b)**[33] and **11 U.S.C. § 305(a)**, finding that the bankruptcy filing was not prosecuted for legitimate corporate reorganization, but as a bad-faith litigation maneuver to evade and obstruct defamation proceedings in Georgia and Missouri.

Defendants initially appealed the dismissal order but subsequently abandoned the appeal, rendering Chief Judge Mora's findings of bad faith, asset diversion, and lack of corporate separateness final and conclusive.

Under governing Missouri and Utah corporate law, adhering to the fiction of separate corporate existence would sanction a fraud, promote injustice, and immunize an intentional tortfeasor from the foreseeable consequences of his unlawful conduct. Defendant James Hoft is therefore personally, jointly and severally liable as an alter ego

[33] Conversion or Dismissal, at 11 U.S.C. § 1112(b)(1) (2010): 'Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under sections 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.': 'Congress of the United States, 11 U.S.C. § 1112'

for all tortious, statutory, and commercial damages and liabilities of Defendant TGP Communications LLC.

**COMMERCIAL DISPLAY ADVERTISING SCHEME AND PROGRAMMATIC PROFIT EXTRACTION**

Defendants operated a systematic, multi-tiered commercial advertising and monetization engine across TheGatewayPundit.com, utilizing programmatic ad networks (including Google AdSense/AdExchange, Revcontent, OpenX, and Criteo) to extract immediate commercial revenues from every pageview and video stream.

Across fifty-four (54) discrete digital articles published and continuously maintained concerning Plaintiff between 2021 and 2026, Defendants generated a cumulative total of not less than 65,289,475 display advertising impressions, driving substantial programmatic ad yields and reader engagement directly attributable to Plaintiff's name, likeness, and pirated audiovisual work.

Defendants derived substantial gross commercial advertising revenues and net commercial profits directly attributable to publications incorporating Plaintiff's copyrighted footage, unauthorized likeness, and sensationalized false accusations. Forensic accounting models establish that Defendants extracted base commercial display advertising profits of not less than $2,118,843.62 across fifty-four (54) articles, which Plaintiff is entitled to an accounting and complete disgorgement of under Section 35(a) of the Lanham Act, **15 U.S.C. § 1117(a)**[7], subject to statutory trebling to $6,356,530.86, and Section 504(b) of the Copyright Act, **17 U.S.C. § 504(b)**[3].

Furthermore, Defendants' piracy, smear campaign, and trade disparagement directly impaired and destroyed Plaintiff's primary documentary licensing business, inflicting commercial business interference damages of not less than $3,500,000.00 (comprising $350,000.00 in lost benchmark broadcast licensing agreements, $2,500,000.00 in total documentary commercial asset impairment, $150,000.00 in cancelled commercial sponsorships, and $500,000.00 in enterprise value destruction).

In addition, under multi-order downstream diffusion modeling accounting for fifty-four (54) syndicated defamatory articles, viral republications, and years of unabated search-engine indexing, Plaintiff has suffered presumed general and special compensatory damages for defamation *per se* and false light of not less than $323,214,705.66 (plus $2,065,000.00 in statutory privacy, $501,042.12 in IIED hazard surcharge, and $419,245.79 in foreseeable downstream republication harm), and Defendants' willful, malicious, and knowing reckless indifference warrants an award of exemplary and punitive damages under **Utah Code Ann. § 78B-8-201**[4] of not less than $1,292,858,822.6 3.

**DEFENDANTS' COORDINATED DEFAMATION CAMPAIGN AND MALICIOUS PUBLICATIONS**

Contemporaneously with their ongoing commercial exploitation of Plaintiff's Copyrighted Work, Defendants weaponized the unlawfully expropriated audiovisual footage to orchestrate, syndicate, and continuously monetize a coordinated, relentless defamatory smear campaign against Plaintiff across fifty-four (54) discrete digital articles and video broadcasts.

Defendants have actively, repeatedly published, republished, and syndicated a series of defamatory digital articles and video broadcasts across TheGatewayPundit.com and affiliated social media conduits, leading with prominent publications authored by Defendant James Hoft titled *"Antifa-BLM Leader John Sullivan Who Incited Capitol Violence..."* and *"Rudy Giuliani Conspired with John Sullivan's Brother to Blame Antifa for Capitol Riots,"* wherein Defendants published, republished, and distributed false, malicious statements attributing Capitol violence to Plaintiff, framing Plaintiff as a violent Antifa infiltrator and catalyst for the riot, and disseminating conspiratorial fabrications designed to destroy Plaintiff's reputation.

Across these foundational publications and through ongoing, fresh, and post-exoneration republications and syndicated broadcasts authored, curated, and promoted by Defendants Cara Castronuova (**Exhibit 64**), Alicia Powe, Cullen Linebarger (**Exhibit 63**), and Cassandra Fairbanks, Defendants published and republished false statements of objective, verifiable fact asserting that Plaintiff was an *"Antifa-BLM Leader"* and commander of violent militant factions (**Exhibit 68**); that Plaintiff intentionally incited, organized, coordinated, and directed violent riots and unlawful attacks inside the United States Capitol; that Plaintiff entered the Capitol building with the specific criminal objective of orchestrating violent insurrectionary acts; that Plaintiff acted as a subversive *"agent provocateur"* on behalf of left-wing militant groups to stage a false-flag assault on Congress (**Exhibit 62**); and that Plaintiff engaged in unlawful, criminal, and treasonous conduct rather than bona fide independent journalistic documentary reporting.

Defendants repeatedly republished, recirculated, and commercially monetized these defamatory fabrications through fresh discrete transmissions, algorithmic distribution funnels, and persistent online hosting within recent statutory periods-specifically maintaining, updating, and republishing these false accusations after Plaintiff received a full, unconditional Presidential Pardon, judicial vacatur of all convictions, and dismissal with prejudice of all criminal charges in early 2025, actively driving commercial pageviews and advertising revenues from the continuing defamatory portrayal of Plaintiff.

Each and every one of these published and republished statements constitutes a statement of objective, verifiable fact capable of being proven true or false, and cannot be shielded as subjective opinion, rhetorical hyperbole, or fair comment.

**DEMONSTRABLE FALSITY AND COMPLETE OFFICIAL EXONERATION**

Every factual assertion published by Defendants alleging that Plaintiff was an *"Antifa-BLM Leader,"* that Plaintiff incited violence, or that Plaintiff acted as a violent criminal rioter is demonstrably, completely, and utterly false.

Plaintiff was never a member, leader, organizer, or operative of Antifa, Black Lives Matter, or any militant or extremist organization. Plaintiff entered the Capitol grounds strictly in his professional capacity as an independent documentary filmmaker and video journalist to document events of immense historical importance.

On January 20, 2025, the President of the United States issued Presidential Proclamation 10887, granting Plaintiff an absolute, unconditional, and full Presidential Pardon (**Exhibit 2**).

On February 7, 2025, the Office of the Pardon Attorney of the United States Department of Justice issued official Pardon Certificate ID319255, formally certifying and authenticating the presidential grant of full executive pardon and exoneration to Plaintiff (**Exhibit 3**).

On February 27, 2025, the United States Court of Appeals for the District of Columbia Circuit in Case No. 24-3051 issued its formal order and mandate directing the final dismissal of all federal proceedings against Plaintiff (**Exhibit 4**).

On March 4, 2025, the Honorable Royce C. Lamberth, Senior United States District Judge for the United States District Court for the District of Columbia, formally entered an Order in *United States v. Sullivan*, Case No. 1:21-cr-00078-RCL (Dkt. 164), dismissing all charges and terminating the entire proceeding against Plaintiff with prejudice (**Exhibit 5**).

Under governing constitutional law and executive jurisprudence, the legal and operational effect of this full executive pardon and conclusive judicial dismissal is the total elimination of guilt and the absolute legal exoneration of Plaintiff, foreclosing any defense of substantial truth, fair reporting privilege, or innocent intent.

Notwithstanding this public, official record of complete legal exoneration, Defendants have persistently refused to retract, correct, or expunge their defamatory publications, continuing to host, syndicate, republish, and commercially monetize their demonstrably false accusations branding Plaintiff a violent criminal militant.

**REJECTION OF STATUTORY RETRACTION AND CONSCIOUSNESS OF LIABILITY**

Following formal service of Plaintiff's statutory pre-litigation retraction demand and notice of violations pursuant to **Utah Code Ann. § 45-2-1.5** (**Exhibit 66**)[34], Defendants wholly failed and refused to publish a prominent, full, and fair retraction, correction, or apology as mandated by Utah law.

Instead, on September 17, 2026, forensic auditing verified that Defendants covertly removed their prominent defamatory article titled *"Rudy Giuliani Conspired with John Sullivan's Brother to Blame Antifa for Capitol Riots"* from TheGatewayPundit.com, causing the publication URL to return an HTTP 404 'Page Not Found' error (**Exhibit 71**), while continuing to host and syndicate companion defamatory publications and wholly refusing to publish a retraction or correct the public record.

[34] Time': 'Candidate for Public Office, at § 45-2-1.5(1) (1975): 'If it shall appear on the trial of any action brought for any alleged libel or slander on any radio or television broadcast originating in this state that the alleged libel or slander was broadcast in good faith, the broadcast thereof was due to mistake or misapprehension of the facts, and that a full and fair retraction of any statement therein alleged to be erroneous was broadcast on the same station and approximately the same time of day as was the alleged libel or slander, within three days after learning of the mistake or within three days after service upon the person broadcasting that libel or slander, by the party aggrieved, of a written notice specifying the statement alleged to be erroneous or, in case such notice is not served, in the manner and within the time above specified after the filing of the complaint and service of the summons in said action, then the plaintiff shall recover only actual damages." -- Utah State Legislature, *Utah Code Ann. § 45-2-1.5 -- Actual Damages -- Broadcast in Good Faith -- Retraction'

Defendants' clandestine post-demand actions demonstrate subjective consciousness of liability, purposeful avoidance of the truth, and affirmative constitutional actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)[10], and *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989)[12], depriving Defendants of any statutory limitation on damages under Utah law.

**CONSTITUTIONAL ACTUAL MALICE, COMMERCIAL EXPLOITATION, AND IRREPARABLE HARM**

Defendants authored, published, syndicated, and monetized each and every defamatory statement with constitutional actual malice-specifically, with subjective knowledge that the statements were false, or with reckless disregard for whether they were false or not-pursuant to the governing standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)[10].

Defendants published said falsehoods while entertaining serious doubts as to their truth and possessing a high degree of subjective awareness of probable falsity under *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)[11], because Defendants possessed obvious reasons to doubt the veracity of their anonymous, partisan, and hostile internet sources, yet knowingly published unverified fabrications.

Furthermore, Defendants engaged in the purposeful avoidance of the truth within the meaning of *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)[12]. Defendants had direct access to Plaintiff's complete, unedited audiovisual recording, public congressional transcripts, criminal court docket filings, and official

Department of Justice records conclusively disproving their accusations, yet Defendants deliberately chose to avoid obvious sources of verification and chose to publish sensationalized falsehoods to drive digital traffic, maximize display advertising yields, and solicit partisan political donations.

As a direct, proximate, and foreseeable consequence of Defendants' willful copyright piracy and malicious defamation, Plaintiff has suffered catastrophic, irreparable injury: Plaintiff's professional standing and career as an independent video journalist and documentary filmmaker have been destroyed; Plaintiff has suffered severe emotional distress, mental anguish, and public opprobrium; and Plaintiff has been deprived of substantial commercial licensing revenues.

## ARTICLE V. CLAIMS FOR RELIEF

### COUNT I: DIRECT WILLFUL FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501, 504)

### (Against All Defendants)

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Plaintiff is the sole author, creator, and exclusive copyright owner of the Copyrighted Work, *The Insurrection of The United States Capitol*, registered under Certificate of Registration No. PA 2-585-152 (**Exhibit 1**)[9].

Pursuant to **17 U.S.C. § 106**[1], Plaintiff holds the exclusive sovereign rights to reproduce the Copyrighted Work in copies, prepare derivative works, distribute copies to the public, and display the Copyrighted Work publicly.

Defendants, and each of them, without license, authorization, or consent, willfully copied, reproduced, distributed, publicly displayed, and created unauthorized derivative video displays of Plaintiff's Copyrighted Work across TheGatewayPundit.com, their YouTube livestream channels, Rumble, and social media syndication feeds, in direct violation of **17 U.S.C. § 501(a)**[2].

Defendants committed said direct infringement willfully, deliberately, and with conscious disregard for Plaintiff's exclusive rights, within the meaning of **17 U.S.C. § 504(c)(2)**[3]. Defendants engaged in the unauthorized exploitation of Plaintiff's copyrighted footage with full subjective knowledge of Plaintiff's authorship and copyright ownership, and persisted in their unauthorized display and commercial exploitation after widespread public notice, establishing willful copyright infringement as a matter of law.

Defendants derived substantial direct financial benefit, commercial advertising revenues, web traffic, user engagement, and subscriber conversions attributable to their unauthorized exploitation and display of Plaintiff's Copyrighted Work.

Pursuant to **17 U.S.C. § 504(b)**[3], Plaintiff is entitled to recover the full measure of actual damages suffered by Plaintiff as a result of the direct infringement, including the lost benchmark commercial licensing market value of the footage (established at $35,000.00 or more per authorized broadcast network licensee), together with all profits of

Defendants attributable to the unauthorized exploitation of the Copyrighted Work (including programmatic advertising impressions, video monetization yields, sponsored content revenues, and subscription funnels).

In the alternative, for all discrete infringing acts commenced post-registration or new derivative exploitations, Plaintiff is entitled to elect statutory damages pursuant to **17 U.S.C. § 504(c)(2)**[3] in an amount of up to $150,000.00 per work for willful copyright infringement, together with full costs, litigation expenses, and reasonable attorney's fees under **17 U.S.C. § 505**[14], and injunctive relief under **17 U.S.C. § 502**[35].

**COUNT II: REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202(B), 1203)**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Plaintiff's Copyrighted Work contained valid Copyright Management Information (*"CMI"*) within the meaning of **17 U.S.C. § 1202(c)**, including authorial identifying watermarks, embedded visual credits (*"Jayden X"* and *"Insurgence USA"*), title metadata, and digital file identifying information indicating Plaintiff's sole authorship and exclusive ownership.

[35] Remedies for Infringement: Injunctions, at 17 U.S.C. § 502(a) (1976): 'Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.': 'Congress of the United States, 17 U.S.C. § 502'

Defendants, and each of them, without the authority of Plaintiff or the law, intentionally removed, altered, cropped out, obliterated, and stripped Plaintiff's CMI from the footage prior to syndicating, distributing, and displaying it across TheGatewayPundit.com, associated YouTube livestreams, and social media conduits, in direct violation of **17 U.S.C. § 1202(b)(1)**[4] (**Exhibit 69**; **Exhibit 70**).

Defendants distributed, imported for distribution, and publicly displayed copies of Plaintiff's Copyrighted Work knowing that Plaintiff's CMI had been removed or altered without authority of Plaintiff or the law, in direct violation of **17 U.S.C. § 1202(b)(3)**[4].

Defendants committed said acts knowingly, intentionally, and with reasonable grounds to know that their conduct would induce, enable, facilitate, or conceal infringement of Plaintiff's exclusive rights under Title 17, purposefully seeking to obscure Plaintiff's ownership, evade commercial licensing obligations, and prevent viewers and downstream media entities from identifying the authentic copyright owner.

Pursuant to **17 U.S.C. § 1203(c)(3)(B)**[5], Plaintiff is entitled to elect an award of statutory damages of not less than $2,500.00 and up to $25,000.00 for each discrete violation of **17 U.S.C. § 1202**[5] - specifically including each unauthorized digital broadcast stream, superimposed watermark alteration, and syndicated distribution.

In the alternative, pursuant to **17 U.S.C. § 1203(c)(2)**[5], Plaintiff is entitled to recover actual damages suffered as a result of the violation and any profits of Defendants attributable to the violation, together with full costs, litigation expenses, and reasonable

attorney's fees under **17 U.S.C. § 1203(b)(4)-(5)**[5], and injunctive relief under **17 U.S.C. § 1203(b)(1)**[5].

**COUNT III: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501)**

**(Against Defendant TGP Communications LLC and Defendant James Hoft)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Direct copyright infringement of Plaintiff's Copyrighted Work occurred within the United States when contributing authors, editors, staff writers, and digital contractors-specifically including Defendants Castronuova, Powe, Linebarger, Fairbanks, and unnamed editorial agents-reproduced, edited, formatted, and publicly displayed unauthorized segments of Plaintiff's protected footage across TheGatewayPundit.com and affiliated media distribution channels without license or consent.

Under *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)[36], one infringes contributorily by intentionally inducing, encouraging, or materially contributing to direct infringement. Defendants TGP Communications LLC and James Hoft, with actual and constructive knowledge of the direct infringement, actively induced, encouraged, and materially contributed to the infringement by soliciting, procuring, and directing staff writers to incorporate pirated Capitol riot footage into sensationalized articles, providing the technical hosting infrastructure, content management systems

(CMS), digital bandwidth, and editorial authorization necessary to publish and broadcast the infringing media to millions of readers.

Under *Grokster*, 545 U.S. at 930[36], one infringes vicariously by profiting from direct infringement while declining to exercise a right and ability to stop or limit it. Defendant James Hoft, as the sole managing member, Founder, Chief Executive, and Editor-in-Chief of Defendant TGP Communications LLC, possessed at all material times the absolute legal right and practical supervisory ability to control, direct, supervise, edit, approve, or reject all content published on TheGatewayPundit.com, as judicially admitted under oath (**Exhibit 63**; **Exhibit 64**; **Exhibit 65**)[32].

Defendants TGP Communications LLC and James Hoft declined and refused to exercise their supervisory dominion to stop, restrain, or limit the direct infringement occurring across their platform, and derived a direct financial benefit from the infringement through increased page impressions, expanded video viewership, enhanced display advertising CPM rates, digital subscription conversions, and reader donation solicitations inextricably tied to the unauthorized display of Plaintiff's exclusive footage.

By reason of their contributory and vicarious infringement, Defendants TGP Communications LLC and James Hoft are jointly and severally liable with all direct infringers for the full measure of actual damages and profits under **17 U.S.C. § 504(b)**[3], statutory damages under **17 U.S.C. § 504(c)(2)**[3], injunctive relief under **17 U.S.C. § 502**[35], and costs and attorney's fees under **17 U.S.C. § 505**[14].

[36] Supreme Court of the United States, Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, at 930 (2005): 'One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.'.

**COUNT IV: COMMON LAW DEFAMATION PER SE (SUPPLEMENTAL JURISDICTION -- 28 U.S.C. § 1367)**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Defendants, and each of them, published, republished, and continuously disseminated false, unprivileged statements of objective fact concerning Plaintiff to millions of third parties across the internet, including within the State of Utah, through discrete acts of syndication, digital distribution, and commercial monetization persisting through recent statutory periods and following Plaintiff's official executive pardon and legal exoneration.

Defendants' publications falsely charged Plaintiff with the commission of infamous crimes of moral turpitude, violent felony offenses, seditious insurrection, and domestic terrorism, and falsely impugned Plaintiff's professional fitness, integrity, and conduct in his lawful profession as an independent documentary filmmaker and video journalist.

Under the common law of defamation and **Restatement (Second) of Torts § 569 (1977)**[37], false statements that impute a criminal offense of serious character or subject an individual to hatred, contempt, and professional ruin constitute defamation *per se,* for which damage to reputation is presumed as a matter of law without proof of special damages (*West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994))[38].

Defendants published said statements with constitutional and common law actual malice, ill will, and reckless disregard for the truth, acting with the specific intent to villainize, demonize, and commercially monetize Plaintiff's likeness. Defendants entertained serious doubts as to the truth of their publications under *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)[11], and engaged in the purposeful avoidance of the truth under *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)[12], by intentionally ignoring readily accessible court dockets, unedited video evidence, and official records of executive exoneration.

As a direct and proximate result of Defendants' defamatory publications, Plaintiff has suffered immense general, special, compensatory, and reputational damages in an amount of not less than $323,214,705.66, and is entitled to an award of punitive and exemplary damages against each Defendant pursuant to **Utah Code Ann. § 78B-8-201**[4] in an amount of not less than $1,292,858,822.63, or four times compensatory damages, to punish their willful and malicious misconduct and deter future defamatory piracy.

---

[37] Utah Supreme Court, West v. Thomson Newspapers, 872 P.2d 999, at 1007-08 (Utah 1994): 'One who publishes a libel of another without a privilege to do so is liable to the other for publication in an action for defamation without proof of special harm, if the matter published imputes to the other a criminal offense of a serious character.'.

[38] Utah Supreme Court, West v. Thomson Newspapers, 872 P.2d 999, at 1007 (Utah 1994): 'A publication is defamatory per se if it impeaches an individual's honesty, integrity, or reputation, or imputes criminal conduct of moral turpitude, thereby producing presumed damages as a matter of law.'.

**COUNT V: COMMON LAW FALSE LIGHT INVASION OF PRIVACY**

**(SUPPLEMENTAL JURISDICTION -- 28 U.S.C. § 1367)**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Defendants gave widespread public publicity to matters concerning Plaintiff that placed Plaintiff before the public in a false light within the meaning of **Restatement (Second) of Torts § 652E (1977)**[39], through discrete, continuing, and recent republications, online streaming, and digital distribution within recent statutory periods.

The false light in which Defendants cast Plaintiff-specifically stigmatizing Plaintiff as a violent insurrectionary operative, militant Antifa commander, and felony criminal provocateur-constitutes an egregious portrayal that is, and would be to any reasonable person in Plaintiff's circumstances, highly offensive, repellent, and destructive.

Defendants gave publicity to these defamatory falsehoods with constitutional actual malice, possessing subjective awareness of falsity or acting in reckless disregard of the truth within the meaning of *Russell v. Standard Corp.*, 898 P.2d 263, 265-66 (Utah 1995)[39], *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968)[11], and *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)[12].

[39] Utah Supreme Court, Russell v. Standard Corp., 898 P.2d 263, at 265-66 (Utah 1995): 'One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'.

As a direct and proximate result of Defendants' false light invasion of privacy, Plaintiff has suffered catastrophic humiliation, severe mental distress, reputational injury, and loss of business opportunities, entitling Plaintiff to substantial compensatory damages of not less than $323,214,705.66 (plus $2,065,000.00 in statutory privacy and false light damages) and exemplary and punitive damages pursuant to **Utah Code Ann. § 78B-8-201**[4] of not less than $1,292,858,822.63.

**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(SUPPLEMENTAL JURISDICTION -- 28 U.S.C. § 1367)**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Under Utah law, to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the defendant's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the emotional distress suffered was severe (*Retherford v. AT&T Communications of Mountain States, Inc.*, 844 P.2d 949, 970-71 (Utah 1992)[40]; *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 37, 56 P.3d 524)[41].

---

[39] Utah Supreme Court, Russell v. Standard Corp., 898 P.2d 263, at 265-66 (Utah 1995): 'One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'.

Defendants engaged in an outrageous, systematic campaign of public demonization and harassment against Plaintiff, intentionally exploiting pirated video footage to visually brand Plaintiff before millions of hostile viewers as a violent domestic terrorist, Antifa ringleader, and criminal agent provocateur who staged and orchestrated the breach of the United States Capitol, persisting in said smears through fresh, recent republications and refusals to retract following Plaintiff's official executive pardon and exoneration.

Defendants' conduct was so extreme in degree and outrageous in character as to exceed all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Defendants weaponized the immense reach of TheGatewayPundit.com to target Plaintiff, an individual citizen and documentary filmmaker residing in Utah, purposefully subjecting Plaintiff to an unending torrent of public vitriol, death threats, vigilantism, and terror, and maliciously refused to retract or remove their defamatory fabrications even after official court records, Department of Justice filings, and executive pardons conclusively proved that Plaintiff was neither Antifa nor a violent instigator.

Defendants acted intentionally, with actual malice and ill will, or in reckless disregard of the near certainty that their sustained public smears would inflict catastrophic psychic trauma, terror, and emotional collapse upon Plaintiff.

---

[40] Utah Supreme Court, Retherford v. AT&T Communications of Mountain States, Inc., 844 P.2d 949, at 970-71 (Utah 1992): 'an action for intentional infliction of emotional distress may be maintained where the defendant's conduct was intentional or reckless, was outrageous and intolerable in that it offended generally accepted standards of decency and morality, caused emotional distress, and where the emotional distress was severe.'.

[41] Utah Supreme Court, Prince v. Bear River Mut. Ins. Co., 2002 UT 68, at ¶ 37, 56 P.3d 524 (Utah 2002): 'To sustain an action for intentional infliction of emotional distress, a plaintiff must show: (1) that the defendant's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the emotional distress suffered was severe.'.

As a direct and proximate result of Defendants' outrageous and intolerable misconduct, Plaintiff suffered and continues to suffer extreme, severe, and disabling emotional distress, including intense psychic trauma, constant fear of assassination and physical attack, severe panic, humiliation, sleeplessness, and total disruption of daily life, entitling Plaintiff to an award of compensatory damages in an amount of not less than $323,214,705.66 (including $501,042.12 in incitement hazard damages), and exemplary and punitive damages pursuant to **Utah Code Ann. § 78B-8-201**[13] of not less than $1,292,858,822.63 against all Defendants.

**COUNT VII: CIVIL CONSPIRACY (SUPPLEMENTAL JURISDICTION -- 28 U.S.C. § 1367)**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Under Utah law, a claim for civil conspiracy requires proof of: (1) an agreement between two or more parties; (2) an unlawful objective or a lawful objective accomplished by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more overt acts taken in furtherance of the conspiracy; and (5) damages resulting from the act or acts (*Alta Industries Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993)[42]; *Pohl, Inc. of America v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944)[43].

Defendants entered into an express and implied conspiratorial agreement, concert of action, and meeting of the minds among themselves and with third-party digital agitators to accomplish an unlawful objective and to execute unlawful means: specifically, to unlawfully expropriate, re-host, strip CMI from, and exploit Plaintiff's copyrighted footage without payment or authorization, while concurrently manufacturing, coordinating, syndicating, and repeatedly republishing a malicious false narrative falsely accusing Plaintiff of violent federal crimes and domestic terrorism to generate digital advertising revenues, drive website traffic, and solicit partisan political donations.

In furtherance of said conspiracy and to achieve its unlawful objectives, Defendants performed numerous overt acts, including but not limited to:

(a) Unlawfully downloading, re-encoding, stripping CMI from, and uploading Plaintiff's copyrighted audiovisual recording onto TGP content delivery networks and video channels;

(b) Conceiving, authoring, editing, and publishing a coordinated series of sensationalized articles authored by Defendants Castronuova, Powe, Linebarger, Fairbanks, Joe Hoft, and James Hoft across TheGatewayPundit.com incorporating the pirated media;

(c) Cross-promoting and syndicating the pirated footage and defamatory articles across social media platforms, YouTube, and Rumble to amplify public outrage and maximize monetization yields; and

---

[42] Utah Supreme Court, Alta Industries Ltd. v. Hurst, 846 P.2d 1282, at 1290 n.17 (Utah 1993): 'A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) an unlawful objective or a lawful objective accomplished by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more overt acts taken in furtherance of the conspiracy; and (5) damages resulting from the act or acts.'.

[43] Utah Supreme Court, Pohl, Inc. of America v. Webelhuth, 2008 UT 89, at ¶ 29, 201 P.3d 944 (Utah 2008): 'A civil conspiracy consists of: (1) an agreement between two or more parties; (2) an unlawful objective or a lawful objective accomplished by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more overt acts taken in furtherance of the conspiracy; and (5) damages resulting from the act or acts.'.

(d) Jointly and deliberately rejecting retraction demands and ignoring official judicial records confirming Plaintiff's innocence to sustain their lucrative conspiratorial enterprise.

As a direct, intended, and proximate result of Defendants' civil conspiracy and the unlawful overt acts committed in furtherance thereof, Plaintiff has suffered catastrophic financial, professional, and personal injury, including the destruction of his licensing market, total loss of reputation, severe emotional trauma, and substantial special damages.

By reason of their concerted conspiratorial action, Defendants are jointly and severally liable for all damages arising from each underlying tort and statutory violation, establishing cumulative joint and several liability exceeding $2,380,424,916.30.

**COUNT VIII: FALSE COMMERCIAL ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT (15 U.S.C. § 1125(A)(1)(B))**

**(Against All Defendants)**

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Plaintiff is an independent documentary filmmaker and video journalist whose professional reputation, authorial brand, and commercial licensing activities constitute commercial activities and trade protected against unfair competition under the Lanham Act.

Defendants, and each of them, in commercial advertising and promotion distributed in interstate commerce across TheGatewayPundit.com, associated YouTube livestreams, and syndicated social media channels, used in commerce words, terms, names, and false and misleading descriptions and representations of fact concerning Plaintiff and Plaintiff's commercial video journalism.

Specifically, in commercial articles, digital broadcast streams, and adjacent programmatic display advertising banners designed to solicit paid subscriptions, generate advertising impressions, and drive commercial traffic, Defendants misrepresented the nature, characteristics, and qualities of Plaintiff's commercial journalistic services and copyrighted documentary footage, falsely portraying Plaintiff as a violent, criminal *"Antifa-BLM"* instigator rather than an independent video journalist, and falsely claiming that Defendants were broadcasting authentic, proprietary news coverage while concealing Plaintiff's lawful copyright ownership.

Defendants' commercial misrepresentations actually deceived, and possessed the inherent capacity and tendency to deceive, a substantial segment of the commercial audience and prospective media licensees, leading viewers, commercial advertisers, and third-party broadcast purchasers to believe that Plaintiff's documentary work was the unlawful product of a violent participant, thereby severely impairing and destroying Plaintiff's primary commercial licensing market.

Defendants' false and misleading commercial descriptions were material, directly influencing consumer viewing choices, display advertising engagement, commercial

licensing inquiries, and reader subscription conversions across Defendants' commercial media network.

Defendants caused their false commercial statements and advertising promotions to enter interstate commerce, distributing said publications across state lines to millions of internet users, including throughout the State of Utah.

As a direct, intended, and proximate result of Defendants' false commercial advertising and unfair competition in violation of Section 43(a) of the Lanham Act, **15 U.S.C. § 1125(a)(1)(B)**[6], Plaintiff has suffered substantial competitive, commercial, and reputational damages, and Defendants have wrongfully derived substantial gross advertising revenues and net commercial profits directly attributable to their unlawful commercial advertising campaign.

Pursuant to Section 35(a) of the Lanham Act, **15 U.S.C. § 1117(a)**[7], Plaintiff is entitled to an accounting and complete disgorgement of all profits derived by Defendants from their false advertising and unfair competition in an amount of not less than $2,118,843.62, an award of actual commercial business interference damages sustained by Plaintiff of not less than $3,500,000.00, an award of treble damages or enhanced profits of up to three times actual profits pursuant to 15 U.S.C. § 1117(a) in an amount of $6,356,530.86, full costs of this action, and reasonable attorney's fees under the exceptional-case standard of Section 1117(a), together with comprehensive injunctive relief restraining further false commercial representations under **15 U.S.C. § 1116**.

## ARTICLE VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff John Earle Sullivan respectfully requests that this Court enter judgment in his favor and against Defendants TGP Communications LLC, James Hoft, Joe Hoft, Cara Castronuova, Alicia Powe, Cullen Linebarger, and Cassandra Fairbanks, jointly and severally, and grant the following relief:

1. **Declaratory Judgment:** Enter a declaratory judgment that Defendants have willfully infringed Plaintiff's exclusive copyrights in *The Insurrection of The United States Capitol* (PA 2-585-152) under 17 U.S.C. § 501[6], that Defendants violated 17 U.S.C. § 1202(b) by intentionally removing and altering copyright management information, that Defendants TGP Communications LLC and James Hoft are contributorily and vicariously liable for copyright infringement, that Defendants engaged in false commercial advertising and unfair competition under 15 U.S.C. § 1125(a)(1)(B), that Defendant James Hoft is the alter ego of Defendant TGP Communications LLC, that Defendants published false, defamatory, and false-light statements concerning Plaintiff with actual malice, that Defendants committed intentional infliction of emotional distress, and that Defendants engaged in an unlawful civil conspiracy;

2. **Preliminary and Permanent Injunctive Relief:** Enter preliminary and permanent injunctions pursuant to **15 U.S.C. § 1116**, **17 U.S.C. § 502**[35], and **17 U.S.C. § 1203(b)(1)**[5] commanding Defendants, their officers, agents, employees, and all persons acting in concert with them, to immediately take down, remove, and permanently expunge all copies, displays, and streams of Plaintiff's Copyrighted Work from TheGatewayPundit.com, associated websites, and syndicated third-party video hosts; to immediately retract and delete all fifty-four (54) false and defamatory articles accusing Plaintiff of being an Antifa leader, violent rioter, or criminal instigator; and to cease and desist from any further unauthorized reproduction, distribution, display, false commercial advertising, or defamatory characterization of Plaintiff or his copyrighted footage;

3. **Monetary Damages for Direct, Contributory, and Vicarious Copyright Infringement:** Award Plaintiff, at his election prior to final judgment, either:

(a) Actual damages suffered by Plaintiff as a result of the direct, contributory, and vicarious infringement and any profits of Defendants attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial; or

(b) Maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) of $150,000.00 for each of the four (4) registered video works infringed willfully, totaling $600,000.00, as provided by law;

4. **Statutory Damages for Removal of Copyright Management Information:** Award Plaintiff, at his election prior to final judgment, statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B)[5] of up to $25,000.00 to $37,500.00 for each of the four (4) discrete violations of 17 U.S.C. § 1202[5], totaling $150,000.00, or actual damages and profits pursuant to 17 U.S.C. § 1203(c)(2)[5];

5. **Disgorgement of Profits and Enhanced Damages for Lanham Act False Advertising:** Award Plaintiff on Count VIII the full accounting and disgorgement of Defendants' net commercial advertising profits attributable to their false commercial advertising and unfair competition pursuant to **15 U.S.C. § 1117(a)**[7] in an amount of not less than $2,118,843.62, together with enhanced treble profits pursuant to 15 U.S.C. § 1117(a) totaling $6,356,530.86, and commercial business interference damages of not less than $3,500,000.00;

6. **Alter Ego Liability Declaration:** Enter an order and decree declaring that Defendant James Hoft is the alter ego of Defendant TGP Communications LLC and is personally, jointly and severally liable for the full amount of any and all judgments, awards, damages, costs, and fees entered against Defendant TGP Communications LLC;

7. **Compensatory, General, and Special Tort Damages:** Award Plaintiff compensatory, general presumed, and special damages on Counts IV, V, VI, and VII for severe reputational destruction, mental anguish, severe emotional distress, humiliation, and impairment of earning capacity, in an amount of not less than $329,699,993.57 (comprising $323,214,705.66 in presumed general defamation harm, $2,065,000.00 in false light and statutory privacy damages, $501,042.12 in IIED hazard surcharge, $419,245.79 in foreseeable downstream republication harm, and $3,500,000.00 in commercial business interference damages);

8. **Punitive and Exemplary Damages:** Award Plaintiff punitive and exemplary damages against each Defendant pursuant to **Utah Code Ann. § 78B-8-201**[13] in an amount of not less than $1,292,858,822.63, or four times presumed general defamation damages, sufficient to punish their willful, malicious, and intentional misconduct and to deter future unlawful acts;

9. **Total Cumulative Monetary Judgment:** Enter final judgment against Defendants TGP Communications LLC and James Hoft, jointly and severally, in an aggregate cumulative amount of not less than $2,380,424,916.30;

10. **Pre-Judgment Attachment and Security:** Enter an order pursuant to Rule 64 of the Federal Rules of Civil Procedure[7] and Utah R. Civ. P. 64A/64C granting a pre-judgment writ of attachment and freezing Defendants' liquid investment and financial accounts to prevent further bad-faith fraudulent asset transfers during the pendency of this action;

11. **Costs and Litigation Expenses:** Award Plaintiff all costs of this action, litigation expenses, and statutory attorney's fees pursuant to 15 U.S.C. § 1117(a)[7], 17 U.S.C. §§ 505[14], and 1203(b)(4)-(5)[5], and all applicable rules;

12. **Pre-Judgment and Post-Judgment Interest:** Award Plaintiff pre-judgment and post-judgment interest at the maximum legal rates; and

13. **Further Relief:** Grant such other, further, or different legal and equitable relief as this Court deems just, proper, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff John Earle Sullivan hereby demands a trial by jury on all issues, claims, and defenses so triable as a matter of right pursuant to Rule 38(b) of the **Federal Rules of Civil Procedure**[15] and the **United States Constitution**[1], amend. VII[16].

DATED this 28th day of September, 2026.

Respectfully submitted,

**John Earle Sullivan**

Plaintiff Pro Se

**VERIFICATION AND UNSWORN DECLARATION**

I, John Earle Sullivan, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746[44] and Federal Rule of Civil Procedure 11(b) that:

1. I am the Plaintiff in the above-captioned civil action;
2. I have read the foregoing Verified Complaint and possess direct personal knowledge of the facts, occurrences, and circumstances averred herein;
3. All factual allegations, evidentiary representations, and statements of injury contained in this Verified Complaint are true and correct to the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances;
4. Any financial declaration or affidavit submitted in support of my concurrent Motion for Leave to Proceed *In Forma Pauperis* under 28 U.S.C. § 1915(a)(1) accurately and truthfully represents my complete financial status; and
5. This action is prosecuted in objective good faith, without any malicious, frivolous, or vexatious intent, to vindicate actionable statutory and constitutional rights.

Executed on September 28, 2026, at Erda, Tooele County, State of Utah, within the District of Utah.

John Earle Sullivan

**John Earle Sullivan**

Plaintiff Pro Se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this September 28, 2026, a true and correct copy of the foregoing PLAINTIFF'S VERIFIED COMPLAINT was submitted for filing with the Clerk of the Court for the United States District Court for the District of Utah. Because the Plaintiff is concurrently applying for Leave to Proceed *In Forma Pauperis* pursuant to 28 U.S.C. § 1915(a) and moving for Court-Directed Service by the United States Marshals Service pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3), formal personal service of process upon Defendants has not been executed and will be executed by the United States Marshals Service upon the Court's approval of the In Forma Pauperis application and issuance of summonses.

## SERVICE RECIPIENTS:

TGP Communications LLC d/b/a The Gateway Pundit - Corporate Defendant
117 South Lexington Street, Suite 100, Harrisonville, MO 64701
Email: contact@thegatewaypundit.com

James Hoft - Managing Member & Editor-in-Chief
5105 Lindell Boulevard, Saint Louis, MO 63108
Email: jim@thegatewaypundit.com

---

[44] Unsworn Declarations Under Penalty of Perjury, at 28 U.S.C. § 1746 (1976): 'Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated...': 'Congress of the United States, 28 U.S.C. § 1746'

Cara Castronuova - Investigative Reporter
1314 Times Avenue, Elmont, NY 11003
Email: ccastronuova@thegatewaypundit.com

Alicia Powe - Investigative Journalist
2039 Admiral Drive, Stafford, VA 22554
Email: alicia.powe@thegatewaypundit.com

Cassandra Fairbanks - Contributing Author
1043 Lakeside Drive, Harpers Ferry, WV 25425
Email: cassandra@thegatewaypundit.com

Cullen Linebarger - Contributing Author
2461 North Stevens Street, Alexandria, VA 22311
Email: cullen.linebarger@thegatewaypundit.com

Joe Hoft - Contributing Author & Associate
8750 South Ocean Drive, Unit 534, Jensen Beach, FL 34957
Email: jhoft@thegatewaypundit.com

DATED this 28th day of September, 2026.

John Earle Sullivan

**John Earle Sullivan**

Plaintiff Pro Se

# ADDENDUMS

---

## ADDENDUM A

### 17 U.S.C. § 102 - Subject Matter of Copyright: In General

*17 U.S.C. § 102 - Subject Matter of Copyright: In General*

*(a) In General.-Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:*

*(1) literary works;*

*(2) musical works, including any accompanying words;*

*(3) dramatic works, including any accompanying music;*

*(4) pantomimes and choreographic works;*

*(5) pictorial, graphic, and sculptural works;*

*(6) motion pictures and other audiovisual works;*

*(7) sound recordings; and*

*(8) architectural works.*

*(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.*

---

## ADDENDUM B

### 17 U.S.C. § 106 - Exclusive Rights in Copyrighted Works

*17 U.S.C. § 106 - Exclusive Rights in Copyrighted Works*

*Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:*

*(1) to reproduce the copyrighted work in copies or phonorecords;*

*(2) to prepare derivative works based upon the copyrighted work;*

*(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;*

*(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;*

*(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture*

*or other audiovisual work, to display the copyrighted work publicly; and*

*(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.*

---

## ADDENDUM C

### 17 U.S.C. § 410 - Registration of Claim and Issuance of Certificate

*17 U.S.C. § 410 - Registration of Claim and Issuance of Certificate*

*(a) When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office. The certificate shall contain the information given in the application, together with the number and effective date of the registration.*

*(b) In any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal.*

*(c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.*

*(d) The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.*

## ADDENDUM D

### 17 U.S.C. § 501 - Infringement of Copyright

*17 U.S.C. § 501 - Infringement of Copyright*

*(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.*

*(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.*

---

## ADDENDUM E

### 17 U.S.C. § 504 - Remedies for Infringement: Damages and Profits

*17 U.S.C. § 504 - Remedies for Infringement: Damages and Profits*

*(a) In General. Except as otherwise provided by this title, an infringer of copyright is liable for either-*

*(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or*

*(2) statutory damages, as provided by subsection (c).*

*(b) Actual Damages and Profits. The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.*

*(c) Statutory Damages.*

*(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.*

*(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.*

---

## ADDENDUM F

**17 U.S.C. § 505 - Remedies for Infringement: Costs and Attorney's Fees**

*17 U.S.C. § 505 - Remedies for Infringement: Costs and Attorney's Fees*

*In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.*

---

## ADDENDUM G

**28 U.S.C. § 1331 - Federal Question Jurisdiction**

*28 U.S.C. § 1331 - Federal Question Jurisdiction*

*The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.*

---

## ADDENDUM H

**28 U.S.C. § 1338 - Patents, Plant Variety Protection, Copyrights, Mask Works, Designs, Trademarks, and Unfair Competition**

*28 U.S.C. § 1338 - Patents, Plant Variety Protection, Copyrights, Mask Works, Designs, Trademarks, and Unfair Competition*

*(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.*

*(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.*

## ADDENDUM I

**28 U.S.C. § 1367 - Supplemental Jurisdiction**

*28 U.S.C. § 1367* **-** *Supplemental Jurisdiction*

*(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

*(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons seeking to intervene as plaintiffs under Rule 24 of such rules, or claims by plaintiffs joined under Rule 19 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.*

*(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:*

*(1) the claim raises a novel or complex issue of State law,*

*(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,*

*(3) the district court has dismissed all claims over which it has original jurisdiction, or*

*(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.*

---

## ADDENDUM J

**28 U.S.C. § 1391 - Venue Generally**

*28 U.S.C. § 1391* **-** *Venue Generally*

*(b) Venue in General. A civil action may be brought in:*

*(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;*

*(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or*

*(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.*

---

## ADDENDUM K

**28 U.S.C. § 1400 - Patents and Copyrights, Mask Works, and Designs**

*28 U.S.C. § 1400 - Patents and Copyrights, Mask Works, and Designs*

*(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.*

---

## ADDENDUM L

**28 U.S.C. § 1746 - Unsworn Declarations Under Penalty of Perjury**

*28 U.S.C. § 1746 - Unsworn Declarations Under Penalty of Perjury*

*Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:*

*"I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".*

---

## ADDENDUM M

**Utah Code Ann. § 78B-3-205 - Acts Submitting Person to Jurisdiction**

*Utah Code Ann. § 78B-3-205 - Acts Submitting Person to Jurisdiction*

*Notwithstanding Section 16-1a-503, any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:*

*(1) the transaction of any business within this state;*

*(2) contracting to supply services or goods in this state;*

*(3) the causing of any injury within this state whether tortious or by breach of warranty;*

*(4) the ownership, use, or possession of any real estate situated in this state;*

*(5) contracting to insure any person, property, or risk located within this state at the time of contracting;*

*(6) with respect to actions of divorce, separate maintenance, or child support, having resided, in the marital relationship, within this state notwithstanding subsequent departure from the state; or the commission in this state of the act giving rise to the claim, so long as*

*that act is not a mere omission, failure to act, or occurrence over which the defendant had no control; or*

*(7) the commission of sexual intercourse within this state which gives rise to a parentage action under Title 81, Chapter 5, Uniform Parentage Act, to determine parentage for the purpose of establishing responsibility for child support.*

---

## ADDENDUM N

### Federal Rule of Civil Procedure 38 - Right to a Jury Trial; Demand

*Fed. R. Civ. P. 38 - Right to a Jury Trial; Demand*

*(a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution-or as provided by a federal statute-is preserved to the parties inviolate.*

*(b) Demand. On any issue triable of right by a jury, a party may demand a jury trial by:*

*(1) serving the other parties with a written demand-which may be included in a pleading-no later than 14 days after the last pleading directed to the issue is served; and*

*(2) filing the demand in accordance with Rule 5(d).*

*(c) Specifying Issues. In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may-within 14 days after being served with the demand or within a shorter time ordered by the court-serve a demand for a jury trial on any other or all factual issues triable by jury.*

*(d) Waiver; Withdrawal. A party waives a jury trial unless its demand is properly served and filed. A proper demand may be withdrawn only if the parties consent.*

*(e) Admiralty and Maritime Claims. These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h).*

---

## ADDENDUM O

### 17 U.S.C. § 1202 - Integrity of Copyright Management Information

*17 U.S.C. § 1202 - Integrity of Copyright Management Information*

*(a) False Copyright Management Information.-No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement-*

*(1) provide copyright management information that is false, or*

*(2) distribute or import for distribution copyright management information that is false.*

*(b) Removal or Alteration of Copyright Management Information.-No person shall, without the authority of the copyright owner or the law-*

*(1) intentionally remove or alter any copyright management information,*

*(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of*

*the copyright owner or the law, or*

*(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,*

*knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of any right under this title.*

*(c) Definition.-As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:*

*(1) The title and other information identifying the work, including the information set forth on a notice of copyright.*

*(2) The name of, and other identifying information about, the author of a work.*

*(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.*

*(4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.*

*(5) In the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.*

*(6) Terms and conditions for use of the work.*

*(7) Identifying numbers or symbols referring to such information or links to such information.*

*(8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.*

---

## ADDENDUM P

### 17 U.S.C. § 1203 - Civil Remedies

*17 U.S.C. § 1203 - Civil Remedies*

*(a) Civil Actions.-Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.*

*(b) Powers of the Court.-In an action brought under subsection (a), the court-*

*(1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free speech or the press protected under the 1st amendment to the Constitution;*

*(2) at any time while an action is pending, may order the impounding, on such terms as it deems reasonable, of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation;*

*(3) may award damages under subsection (c);*

*(4) in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof;*

*(5) in its discretion may award reasonable attorney's fees to the prevailing party; and*

*(6) may, as part of a final judgment or decree finding a violation, order the remedial modification or the destruction of any device or product involved in the violation that is in the custody or control of the violator or has been impounded under paragraph (2).*

*(c) Award of Damages.-*

*(1) In general.-Except as otherwise provided in this title, a person committing a violation of section 1201 or 1202 is liable for either-*

*(A) the actual damages and any additional profits of the violator, as provided in paragraph (2), or*

*(B) statutory damages, as provided in paragraph (3).*

*(2) Actual damages.-The court shall award to the complaining party the actual damages suffered by the party as a result of the violation, and any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages, if the complaining party elects such damages at any time before final judgment is entered.*

*(3) Statutory damages.-*

*(A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.*

*(B) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.*

*(4) Repeated violations.-In any case in which the injured party sustains the burden of proving, and the court finds, that a person has violated section 1201 or 1202 within 3 years after a final judgment was entered against the person for another such violation, the court may increase the award of damages up to triple the amount that would otherwise be awarded, as the court considers just.*

*(5) Innocent violations.-*

*(A) In general.-The court in its discretion may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation.*

*(B) Nonprofit library, archives, educational institutions, or public broadcasting entities.-*

*(i) Definition.-In this subparagraph, the term "public broadcasting entity" has the meaning given such term under section 118(f).*

*(ii) In general.-In the case of a nonprofit library, archives, educational institution, or public broadcasting entity, the court shall remit damages in any case in which the library, archives, educational institution, or public broadcasting entity sustains the burden of proving, and the court finds, that the library, archives, educational institution, or public broadcasting entity was not aware and had no reason to believe that its acts constituted a violation.*

---

## ADDENDUM Q

### 17 U.S.C. § 411 - Registration and Civil Infringement Actions

*17 U.S.C. § 411 - Registration and Civil Infringement Actions*

*(a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.*

*(b)(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless-*

*(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and*

*(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.*

*(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.*

*(3) Nothing in this subsection shall affect any rights, obligations, or remedies of a person, under regulations issued by the Register of Copyrights, with respect to the registration of any work.*

## ADDENDUM R

**17 U.S.C. § 502 - Remedies for Infringement: Injunctions**

*17 U.S.C. § 502 - Remedies for Infringement: Injunctions*

*(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.*

*(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any court of the United States having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.*

---

## ADDENDUM S

**United States Constitution, Amendment VII - Right to Jury Trial in Civil Cases**

*U.S. Const. amend. VII - Right to Jury Trial in Civil Cases*

*In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.*

## ADDENDUM T

**Utah Code Ann. § 45-2-1.5 - Actual damages -- Broadcast in good faith -- Retraction -- Time -- Candidate for public office**

*Utah Code Ann. § 45-2-1.5 - Actual damages -- Broadcast in good faith -- Retraction -- Time -- Candidate for public office*

*(1) If it shall appear on the trial of any action brought for any alleged libel or slander on any radio or television broadcast originating in this state that the alleged libel or slander was broadcast in good faith, the broadcast thereof was due to mistake or misapprehension of the facts, and that a full and fair retraction of any statement therein alleged to be erroneous was broadcast on the same station and approximately the same time of day as was the alleged libel or slander, within three days after learning of the mistake or within three days after service upon the person broadcasting that libel or slander, by the party aggrieved, of a written notice specifying the statement alleged to be erroneous or, in case such notice is not served, in the manner and within the time above specified after the filing of the complaint and service of the summons in said action, then the plaintiff shall recover only actual damages.*

*(2) This section shall not apply in the case of any libel or slander against any candidate for a public office at any general or primary election, or any avowed candidate for nomination to any office before any political convention, unless the retraction of the charge was made in the same manner as provided for other retractions under this section within 24 hours of the time the person broadcasting that libel or slander became aware of the mistake, but in no case later than three days before the holding of such general or primary election or political convention. A written text of the retraction shall be made available to the candidate immediately after it has been broadcast. This retraction shall be in lieu of any other retraction herein provided for.*

---

## ADDENDUM U

**15 U.S.C. § 1125 - False Designations of Origin, False Descriptions, and Dilution Forbidden**

*15 U.S.C. § 1125 - False Designations of Origin, False Descriptions, and Dilution Forbidden*

*(a) Civil Action.-*

*(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-*

*(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or*

*(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,*

*shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.*

---

## ADDENDUM V

### 15 U.S.C. § 1117 - Recovery for Violation of Rights

*15 U.S.C. § 1117 - Recovery for Violation of Rights*

*(a) Profits; damages and costs; attorney fees*

*When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. The court in exceptional cases may award reasonable attorney fees to the prevailing party.*

---

## ADDENDUM W

### 15 U.S.C. § 1121 - Jurisdiction of Federal Courts

*15 U.S.C. § 1121 - Jurisdiction of Federal Courts*

*(a) The district and territorial courts of the United States shall have original jurisdiction and the courts of appeals of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.*

## ADDENDUM X

**11 U.S.C. § 1112 - Conversion or Dismissal**

*11 U.S.C. § 1112 - Conversion or Dismissal*

*(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under sections 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.*

## ADDENDUM Y

**28 U.S.C. § 1332 - Diversity of Citizenship; Amount in Controversy; Costs**

*28 U.S.C. § 1332 - Diversity of Citizenship; Amount in Controversy; Costs*

*(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-*

*(1) citizens of different States;*

*(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;*

*(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and*

*(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.*

## ADDENDUM Z

**Utah Code Ann. § 78B-8-201 - Punitive Damages -- Proof -- Award**

*Utah Code Ann. § 78B-8-201 - Punitive Damages -- Proof -- Award*

*(1) (a) Except as provided in Subsection (1)(b), punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.*

*(b) The limitation in Subsection (1)(a) that punitive damages may be awarded only if compensatory or general damages are awarded does not apply to an action brought under Section 77-38-603.*

*(2) The following evidence is not admissible for any purpose in any proceeding in which an award of punitive damages is sought, except as provided in Subsection (3):*

*(a) evidence of a party's wealth or financial condition; and*

*(b) evidence of the wealth or financial condition of any parent, subsidiary, or other affiliate of a party.*

*(3) Evidence described in Subsection (2) is admissible on the motion of any party, and after:*

*(a) a finding of liability for punitive damages has been made; or*

*(b) the admission of evidence of a party's wealth or financial condition is necessary to prove or defend against an allegation of liability for punitive damages.*

*(4) In an action in which punitive damages are awarded, the court shall:*

*(a) award 50% of the amount of the punitive damages that exceeds $50,000, after payment of attorneys' fees and costs, to the general fund of the state; and*

*(b) award the remainder of the punitive damages to the plaintiff.*

# INDEX OF APPENDED ENCLOSURES

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-1** | Official Certificate of Registration issued by the United States Copyright Office for Plaintiff's audiovisual work titled 'The Insurrection of The United States Capitol' (Registration Number PA 2 - 585 - 152), establishing Plaintiff's legal ownership and copyright interest in the subject motion picture. |
| **EXHIBIT-2** | Full, complete, and unconditional Presidential Pardon issued by President Donald J. Trump on January 20, 2025 (Proclamation 10887), granting full legal exoneration to individuals charged in connection with the events of January 6, 2021, including Plaintiff. |
| **EXHIBIT-3** | Official Pardon Certificate issued by the Office of the Pardon Attorney, United States Department of Justice, certifying the presidential pardon and complete executive exoneration of John Earle Sullivan under Proclamation 10887. |
| **EXHIBIT-4** | Formal Order and Mandate of the United States Court of Appeals for the District of Columbia Circuit (Case No. 24 - 3051) entered on February 27, 2025, vacating the district court's judgment of conviction against Plaintiff and remanding with instructions to dismiss. |
| **EXHIBIT-5** | Order of Dismissal entered by the Honorable Royce C. Lamberth, United States District Court for the District of Columbia, in Case No. 1:21 - cr - 78 - RCL - 1 on March 4, 2025, dismissing the entire criminal action against Plaintiff as moot following vacatur. |
| **EXHIBIT-6** | Executed commercial Non - Exclusive License Agreement between John Earle Sullivan and Cable News Network, Inc. (CNN) dated January 6, 2021, establishing the baseline fair market licensing fee of $35,000.00 for broadcast rights to Plaintiff's eyewitness video footage. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-62** | Defamatory article authored by Jim Hoft on The Gateway Pundit reporting on the return of Plaintiff's licensing earnings while falsely asserting Plaintiff organized an Antifa rally at the U.S. Capitol. |
| **EXHIBIT-63** | Defamatory article authored by Cullen Linebarger on The Gateway Pundit republishing unverified false claims and defamatory accusations concerning Plaintiff. |
| **EXHIBIT-64** | Official editorial and reporter profile of Cara Castronuova on The Gateway Pundit documenting her active role as an investigative reporter and contributing author publishing defamatory coverage. |
| **EXHIBIT-65** | Certified corporate registration and entity formation filings for TGP Communications LLC with the Missouri Secretary of State (Charter No. LC1358217), documenting corporate governance and registered office. |
| **EXHIBIT-66** | Formal statutory pre - litigation retraction demand and notice of copyright and defamation violations served on TGP Communications LLC and Jim Hoft on August 8, 2026. |
| **EXHIBIT-67** | Formal Electronically Stored Information (ESI) preservation hold demand and spoliation warning served on TGP Communications LLC, James Hoft, Alicia Powe, Cullen Linebarger, and Cara Castronuova on September 17, 2026. |
| **EXHIBIT-68** | Lossless visual coordinate evidence crop from Jim Hoft's January 9, 2021 article on The Gateway Pundit, demonstrating reliance on anonymous Discord chat rumors to fabricate defamatory assertions of Antifa - BLM leadership. |
| **EXHIBIT-69** | High - definition video broadcast frame capture from The Gateway Pundit featuring Defendant's 'GP' corporate logo bug superimposed over Plaintiff's 'Insurgence USA' copyrighted documentary recording of the Speaker's Lobby on January 6, 2021. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-70** | High - definition broadcast frame capture from The Gateway Pundit official YouTube channel livestream (November 17, 2021) featuring Defendant's 'GP' corporate broadcast logo bug superimposed over Plaintiff's 'JAYDEN X' copyrighted documentary recording of the Speaker's Lobby on January 6, 2021. |
| **EXHIBIT-71** | Official certified web page capture and visual render of The Gateway Pundit defamatory publication URL (rudy - giuliani - conspired - john - sullivans - brother - blame - antifa - capitol - riots) captured on September 17, 2026, establishing HTTP 404 'page not found' silent spoliation and post - hoc deletion without statutory retraction under U.C.A. § 45 - 2 - 1.5. |

# E X H I B I T 1

*COPYRIGHT CERT PA 2 585 152*

Library of Congress
United States Copyright Office
101 Independence Avenue SE
Washington, DC 20559

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Return if not delivered within 5 days

FIRST-CLASS

U.S. OFFICIAL MAIL
US POSTAGE PITNEY BOWES
ZIP 20500
02 7H
0002124623
$ 000.74⁰
MAY 26 2026

Insurgence USA
John Earle Sullivan
1221 W Erda Way
Erda, UT 84074 United States

**Registration #:** PA0002585152
**Service Request #:** 1-15107599638

Insurgence USA
John Earle Sullivan
1221 W Erda Way
Erda, UT 84074 United States

# Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**Registration Number**
**PA 2-585-152**
**Effective Date of Registration:**
February 25, 2026
**Registration Decision Date:**
May 21, 2026

## Title

**Title of Work:** The Insurrection of The United States Capitol

## Completion/Publication

**Year of Completion:** 2021
**Date of 1st Publication:** January 06, 2021
**Nation of 1st Publication:** United States

## Author

- **Author:** John Earle Sullivan
  **Pseudonym:** Jayden X
  **Author Created:** entire motion picture
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1994

## Copyright Claimant

**Copyright Claimant:** John Earle Sullivan
1221 W Erda Way, Erda, UT, 84074, United States

## Rights and Permissions

**Name:** John Earle Sullivan
**Email:** johnearles30@gmail.com
**Telephone:** (435)841-7258
**Address:** 1221 W Erda Way
Erda, UT 84074 United States

## Certification

**Name:** John Earle Sullivan
**Date:** February 25, 2026

# EXHIBIT 2

*PRESIDENTIAL PARDON PROCLAMATION 10887*

Verified with Pardon Attorney's Office and USAO in Washington DC. No Warrant will be issued. 1/20/2025

KATHY WILLIAMS

Digitally signed by KATHY WILLIAMS
Date: 2025.01.20 21:34:18 -06'00'

PRESIDENTIAL ACTIONS

# GRANTING PARDONS AND COMMUTATION OF SENTENCES FOR CERTAIN OFFENSES RELATING TO THE EVENTS AT OR NEAR THE UNITED STATES

# CAPITOL ON JANUARY 6, 2021

January 20, 2025

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(a) commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, to time served as of January 20, 2025:

- Stewart Rhodes
- Kelly Meggs
- Kenneth Harrelson
- Thomas Caldwell
- Jessica Watkins
- Roberto Minuta
- Edward Vallejo
- David Moerschel
- Joseph Hackett

- Ethan Nordean
- Joseph Biggs
- Zachary Rehl
- Dominic Pezzola
- Jeremy Bertino

(b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

IN WITNESS WHEREOF, I have hereunto set my hand this twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

News

Administration

Issues

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

THE WHITE HOUSE

WH.GOV

Copyright

Privacy

# EXHIBIT 3

*DOJ PARDON CERTIFICATE ID319255*

# Donald J. Trump

***President of the United States of America***

# Certificate of Pardon

## *John Earle Sullivan*

was pardoned by the Presidential Proclamation of January 20, 2025. The pardon applies only to convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021.

As directed by the Proclamation of Pardon and in witness whereof, the Office of the Pardon Attorney has caused the seal of the Department of Justice to be affixed below and issues this certificate of pardon to the named person.

*Done at the City of Washington,
District of Columbia, on
February 7, 2025.*

ID319255

# EXHIBIT 4

*DC CIRCUIT VACATUR MANDATE*

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 24-3051** **September Term, 2024**

**1:21-cr-00078-RCL-1**

**Filed On:** February 27, 2025

United States of America,

Appellee

v.

John Earle Sullivan,

Appellant

**BEFORE:** Childs, Pan, and Garcia, Circuit Judges

**O R D E R**

Upon consideration of the unopposed motion to vacate convictions and remand for dismissal, it is

**ORDERED** that the judgment of the district court be vacated and the case be remanded with instructions to dismiss the case as moot. See United States v. Schaffer, 240 F.3d 35, 37–38 (D.C. Cir. 2001) (en banc).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate forthwith to the district court.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Selena R. Gancasz
Deputy Clerk

# E X H I B I T 5

*DISTRICT COURT DISMISSAL ORDER DKT 164*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**v.**<br>**JOHN EARLE SULLIVAN,**<br>*Defendant.* | **Case No. 1:21-cr-78-RCL-1** |

**ORDER**

Upon consideration of the D.C. Circuit's Order of February 27, 2025, No. 24-3051, it is hereby **ORDERED** that the case is **DISMISSED AS MOOT**.

**SO ORDERED**

Date: March 4, 2025

Royce C. Lamberth
United States District Judge

# EXHIBIT 6

*CNN LICENSING AGREEMENT*

**NON-EXCLUSIVE LICENSE AGREEMENT**

Licensor: **John Sullivan**
Email Address: 213 Civic Center Drive Apt 169 Sandy Utah 84070
Business Address:
City/State: Sandy, Utah
Telephone Number: 8013861049

This Agreement is made and entered into this on **6th day of January,2021**, by and between Licensor and Cable News Network, Inc. ("CNN").

1. GRANT OF RIGHTS. For Thirty Five Thousand dollars ($35,000), the receipt and sufficiency of which are hereby acknowledged, Licensor hereby grants to CNN a non-exclusive license to use the materials described as follows: **'Eyewitness video of the shooting at Capitol Hill 01/06/2021"** (collectively, the "Materials") for use in accordance with the terms of this Agreement. The license granted hereunder includes the perpetual, worldwide right to edit, telecast, rerun, reproduce, use, print and otherwise exploit the Materials, or any portion thereof in any manner and in any medium or forum, whether now known or hereafter devised, excluding distribution to affiliates worldwide. The license is granted for usage starting on **January 6, 2021 until January 13, 2021.**

2. REPRESENTATIONS AND WARRANTIES. Licensor represents and warrants to CNN that Licensor has the full legal right, power and authority to grant to CNN the license provided for herein, that it owns or controls the complete exhibition and other rights to the Materials for the purposes contemplated in this Agreement and that neither the Materials nor the exercise of the rights granted herein shall infringe upon or violate the right of privacy or right of publicity of, or constitute a libel or slander against, or violate any common law or any other right of, any person or entity.

3. INDEMNIFICATION. Licensor shall indemnify, defend and hold harmless CNN, its parent and affiliated companies, its and their licensees, successors and assigns, and each of its and their officers, agents and employees from all third party claims arising from the breach of the representations and warranties.

4. GOVERNING LAW. This Agreement shall be governed by the laws of the State of Georgia.

Accepted for Licensor:

Recoverable Signature

X 

John Sullivan
John Sullivan
Signed by: 3b1ec8ed-8d1b-4078-bf9a-982099e3e27e

Name: John Sullivan

Title:

# EXHIBIT 62

*GATEWAY PUNDIT DEFAMATORY ARTICLE ON EARNINGS RETURN*

ADVERTISEMENT (HIDE THIS AD)


Shoulder Pain is Not From Sleeping Wrong. Meet The Real Enemy
Ad by RejuvaCare


Top Ophthalmologist: Do This if You Have Vision Loss or Blurred Vision
Ad by HealthFrontline


Always Keep a Bread Clip in Your Wallet When Traveling (Here's Why)
Ad by WG Life Hacks 102


A Simple Method to Reduce Neuropathy (Watch)
Ad by Health Today News

# Government Set to Return Nearly $63,000 to J6 Defendant John Sullivan For Earnings Off of His J6 Footage – Sullivan Organized Antifa Rally at the US Capitol That Day

By Jim Hoft  Apr. 12, 2025 7:30 am  241 Comments

Truth | Tweet | Share | Gettr | Gab

Antifa-Black Lives Matter leader John Sullivan or Jayden X pictured inside the US Capitol on January 6

Breanna Morello reported on Friday that the US government is set to return nearly $63,000 to infamous J6er John Sullivan, who also goes by Jayden X. Sullivan reportedly made the money from his filming of the protests and rioting that day.

Search …

ADVERTISEMENT (HIDE THIS AD)




## Video of the Week

Woke Hollywood Useful Idiots Call On Cult To Mobilize Against MAGA? | Drew Hernandez



ADVERTISEMENT (HIDE THIS AD)

Cardiologist: 2 Common Veggies Will Kill Belly Fat Overnight (Try It)



Case 1:21-cr-00078-RCL Document 166 Filed 04/11/25 Page 1 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-78 (RCL) |
| v. | : | |
| | : | |
| JOHN EARLE SULLIVAN, | : | |
| | : | |
| Defendant. | : | |

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO RETURN ASSETS SEIZED

The United States files this response to notify the Court that it does not oppose defendant's motion and intends to return the funds seized from defendant in this case.

By way of background, United States seized, pursuant to a court-ordered warrant, $62,813.76 in funds defendant had made selling footage he had taken at the Capitol on January 6, 2021. *See* ECF No. 29 at 10 (explaining background of seizure). The supporting affidavit alleged probable cause to believe those funds were subject to both civil and criminal forfeiture as property "traceable to" the defendant's violation of 18 U.S.C. § 1512(c)(2), pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. *Id.*[1] In the Second Superseding Indictment ("SSI"), the United States alleged both a substantive violation of 18 U.S.C. § 1512(c)(2) and sought criminal forfeiture of proceeds traceable to that count, specifying $89,875 in the defendant's bank account ending in 7715 and $1,000 in the Venmo account linked to the defendant's bank account. ECF No. 56 at 2, 5–6. Defendant was convicted at trial on all operative counts of the SSI,[2] and the resulting judgment included a final order of criminal forfeiture. ECF No. 153 at 8. Defendant appealed to

[1] Judge Sullivan rejected defendant's pre-trial motions to release seized funds and for a deprivation hearing. *United States v. Sullivan*, 575 F. Supp. 3d 1 (D.D.C. 2021); *United States v. Sullivan*, No. CR 21-78 (EGS), 2022 WL 3027007 (D.D.C. Aug. 1, 2022).

[2] Except a charge of violating 18 U.S.C. § 1001, which was dismissed leading up to trial.

@BREANNAMORELLO

Via Brianna Morello.




**Trending Now on TGP**

1 Shocking Email From Epstein Files Implicates Former US Ambassador, Clintons, Bidens, the First Commanding Officer of SEAL Team Six, and More

2 FAFO! Arizona Student Arrested and Thrown to the Ground, Charged with Assault After Throwing Water Bottle During Anti-ICE Walkout – At Least Three Arrested for Throwing Objects (VIDEO)

3 "F*ck ICE!" – Grammy Winner Kehlani Lashes Out at ICE During Acceptance Speech (VIDEO)

4 (VIDEO) Kristen Welker Loses it Over Georgia Investigation and Trump Saying the 2020 Election was Stolen at Davos, Suggests He's Trying to Steal the Midterms!

5 Federal Appeals Court Tosses Justice Department's Misconduct Complaint Against Judge Boasberg

**This Week's Top Posts**

1 172.4K VIEWS: Private Jet That Crashed in Maine Was Registered to Anti-ICE Lawyers Spending Millions to Elect Democrats in Texas (UPDATED)

2 149.5K VIEWS: Anti-ICE Agitator Picks Up Flashbang, Instantly Regrets It (VIDEO)

3 149.1K VIEWS: James O'Keefe Goes Undercover Inside Minnesota Mob: Leftist Agitators Admit Who's Funding Anti-ICE Protests (VIDEO)

4 147.1K VIEWS: Tulsi Gabbard Releases Documents that PROVE it Was Barack Obama who Led the Russiagate Conspiracy and Coup Against Donald Trump – Documents Have Been Turned Over to the DOJ

5 127.6K VIEWS: Marco Rubio Humiliates Dem Senator Duckworth When She Rudely Interrupts and Ambushes Him with Nasty Lies During Hearing – VP Vance Weighs In with a Great Observation (VIDEO)

@BreannaMorello · Follow

🚨BREAKING NEWS🚨

The DOJ plans to return the nearly $63,000 John Sullivan aka Jayden X made off of his January 6 footage.

The funds were intentionally seized by the government after he sold his footage to news outlets.

Sullivan filmed the protests inside the Capitol on Show more

3:16 PM · Apr 11, 2025

381 Reply Copy link

Read 56 replies




ADVERTISEMENT (HIDE THIS AD)

Side Sleepers With Shoulder Pain: Do This Before Bed Tonight
RejuvaCare

Top Ophthalmologist: Do This if You Have Vision Loss or Blurred Vision
HealthFrontline

Here's The Real Cost of a Metal Roof in 2026 (Enter ZIP!)
Metal Roofing Innovations USA

As was reported earlier at The Gateway Pundit

Antifa-BLM organizer John Sullivan was sentenced in April 2024 to six years in prison for his actions on January 6, 2021, at the US Capitol.

ADVERTISEMENT (HIDE THIS AD)



Shoulder Pain Experts Stunned: New Device is Changing Lives Fast
RejuvaCare

Antifa-Insurgence leader **John Earl Sullivan** was arrested in Utah after the US Capitol riots.
As reported previously, Antifa protester John Sullivan was caught on video posing as a Trump supporter during the rioting at the US Capitol on January 6th.

**Get Our Newsletter**
Sign up now and stay ahead in the political landscape.

Enter Your Email Address

Subscribe




CAUGHT ON VIDEO: Antifa Protester John Sullivan Brags About Posing As Trump Supporter, Breaking Window At US Capitol Building During Riots

... Continue reading

GP The Gateway Pundit 0

Footage obtained by the Gateway Pundit from militant Black Lives Matter and Antifa activist John Sullivan's Discord server shows the so-called "civil rights activist" reveling inside the U.S. Capitol on Jan 6 as he damaged federal property.

Sullivan has maintained in multiple interviews that he regularly attends protests only to record what's going on, but did not actively partake in the insurgence in Washington. This was a lie. He is a leader of the Utah Antifa-BLM movement and was previously arrested in Utah.

ADVERTISEMENT (HIDE THIS AD)

## Around the Web



Shoulder Pain is Not From Sleeping Wrong. Meet The Real Enemy
Ad by RejuvaCare




Spine Doctor Reveals a Surprising Approach to Sciatica Relief
Ad by SmoothSpine



Seniors Born 1939-1969 Receive 11 Benefits This Month If They Ask
Ad by Super Saving Online




**Sullivan also organized an Antifa-Insurgence rally on January 6th at the Washington Monument at 11 AM before they stormed the US Capitol.**
The mainstream media refuses to report these facts.

The media and January 6 committee missed this for some reason?

GATEWAY HISPANIC

Visit GatewayHispanic.com to read news of interest to the hispanic community.

AMERICAN GULAG

Visit AmericanGulag.org to learn how to help the prisoners of the protest on January 6th.

TGP VIDEOS

Visit TGPVideos.com to watch the latest exclusive videos from The Gateway Pundit.

TGP TRUTH

As the mainstream media repeatedly fails and loses public trust, TGP has continued to offer accurate and timely reporting for almost two decades. Visit TGP FactCheck to see how we get it right.

TGP FACTCHECK

FACT-CHECKING THE MEDIA: BECAUSE THE TRUTH MATTERS

Check out TGP FactCheck to see how terribly wrong the legacy media can get it.

TGP Stats

Please Donate Here

Please consider supporting the work of The Gateway Pundit. Every dollar donated helps cover the cost of researching, writing, publishing, and promoting the news you read every day on The Gateway Pundit.

ADVERTISEMENT (HIDE THIS AD)

Sponsored Content






Antifa leader Jayden X spent one night in jail and was then released.

ADVERTISEMENT (HIDE THIS AD)

**Search for Almost Anyone Dead or Alive With This Tool!**
Been Verified



**Shoulder Pain Experts Stunned: New Device is Changing Lives Fast**
RejuvaCare




**This Sciatica Discovery is Leaving Spine Specialists Speechless**
SmoothSpine



**Here's The Real Cost of a Metal Roof in 2026 (Enter ZIP!)**
Metal Roofing Innovations USA

The Gateway Pundit first reported on Jayden X back in August 2020 during the BLM riots in Washington DC.

John Sullivan, Jayden X, spoke at the rallies calling on BLM radicals to "go get that motherf**ker" (Trump) in the White House.



"We About to Go Get that MotherF***er! – It's Time for Revolution!" – VIDEO – BLM Threatens to Rip President Trump from White House

... Continue reading

GP The Gateway Pundit 0

The media conveniently ignores this too.

ADVERTISEMENT (HIDE THIS AD)

**Harvard Scientists: This Ancient Remedy for Rapid Weight Loss!**

**Rheumatologist: I Beg You! Don't Eat This If You Have Arthritis!**

Axios reported:

rioters and filmed scenes inside the U.S. Capitol, including the fatal shooting of Air Force veteran **Ashli Babbitt**, was sentenced Friday to six years in prison.

**The big picture:** John Earle Sullivan, who prosecutors said earned more than $90,000 from selling his video footage of the Capitol breach, was convicted in November of several charges including felony obstruction of an official proceeding and civil disorder.

- The 29-year-old from Salt Lake City was also sentenced to 36 months of supervised release and ordered to pay $2,000 in restitution, according to the **Department of Justice**.

**Context:** Sullivan, who was wearing a ballistic vest and gas mask when he joined rioters storming the Capitol, was heard on video yelling expletives, including "we're about to burn this s--t down!," "we're f--king s--t up" and "I'm gonna make these Trump supporters f--k all this s--t up," per **court documents**.

**Trending:** **Watch: Panicking Fulton County Commish Wants to Break Into a Run as Voter Roll Investigator Exposes Fraud and Her Escape Car Fails to Show**

ADVERTISEMENT (HIDE THIS AD)

## Around the Web



Analyst Who Called Nvidia at $1 Reveals 3 AI Stocks for 2026

Ad by Newsletter Journal



Genius New Trick to Get Rid of Skin Tags or Moles! (Do This Immediately) Try It!

Ad by Skin Tags Remover



Surgeon Warns: If You Have Skin Tags or Warts, Do This Tonight

Ad by Elevated Dermatology

- He told the mob he had a knife and offered it to them as he filmed them trying to break open doors to the House Chamber and the Speaker's Lobby, prosecutors said. Congress members, staff and journalists were inside the House of Representatives at the time.
- Video evidence shows Sullivan climbing through a broken window at the Capitol building and eventually reaching the Speaker's Lobby, where he can be heard encouraging a mob breaking glass panes in the door and telling police officers to "go home" before Babbitt climbs through and is shot, per the DOJ.

Many innocent families are bankrupt and busted following their persecution by the US government following the January 6 protests-riot.

Jayden X will get his money back.

**Submit additional information.**



## Jim Hoft

Jim Hoft is the founder and editor of The Gateway Pundit, one of the top conservative news outlets in America. Jim was awarded the Reed Irvine Accuracy in Media Award in 2013 and is the proud recipient of the Breitbart Award for Excellence in Online Journalism from the Americans for Prosperity Foundation in May 2016. In 2023, The Gateway Pundit received the Most Trusted Print Media Award at the American Liberty Awards.

You can **email Jim Hoft here**, and **read more of Jim Hoft's articles here.**

Truth Tweet Share Gettr Gab

ADVERTISEMENT (HIDE THIS AD)

## Around the Web



Side Sleepers With Shoulder Pain: Do This Before Bed Tonight
RejuvaCare



Watch: This Meter Reads Zero - But the Light Is Still On
Energy Systems



23 Ridiculously Cool Gadgets You'll Want to Buy Immediately
Trending Gadget

The Gateway Pundit Comment Policy

We welcome comments from our readers while reserving the right to edit or remove comments that do not meet our policy.

Please read our Comment Policy before commenting.

Got it

241 Comments

Login

G

Join the discussion…

LOG IN WITH

OR SIGN UP WITH DISQUS ?

Name

## Like Gateway Pundit?

Subscribe to The Gateway Pundit to receive daily updates of the latest articles delivered straight to your email.

Enter email address

Subscribe

Hide this message

2 Share

Best Newest Oldest

**Mac-101** +2
10 months ago

So where is da Jan 6th tapes and body cams Johnson???
.
Kash and Bondi WAKE up!

47 Reply Share ›

Sponsored

### Around the Web

**Search for Almost Anyone Dead or Alive With This Tool!**
Ad by Been Verified

**Shoulder Pain Experts Stunned: New Device is Changing Lives Fast**
Ad by RejuvaCare

**Pauley Perrette, Turned 56, Grab Tissues Before You See Her**
Ad by suburbanfinance

**ron s. johnson** +2 ➦ Mac-101
10 months ago

The next republican speaker can promise it. that would make three.
three useless republican speakers to strike out.
more like Lucy pulling the football on Charlie Brown.
what a joke.

12 Reply Share ›

**Renate** ➦ Mac-101
10 months ago

"da" is not in the English language, no matter how many times you use it.

6 Reply Share ›

**Copacop** +2 ➦ Mac-101
10 months ago

They seem to be woke...

1 Reply Share ›

**caveman** Guest
10 months ago

I felt he was a Trojan horse the first time, his picks and then the covid debacle. I am firmly convinced this time. He promised the J6 tapes, Ft. Knox audit, mass deportations and said even he was shocked by what was in the JFK files, yet once released were a snooze fest.

7 Reply Share ›

**Mac-101** +2 Guest
10 months ago

I can't rule out Trump anymoe also!

.

Soros forgave in 2007 a 150 to 350 million dollar mezzanine loan Trump took out through him for his Chicago Trump Tower in 2003.

.

And ALL da AI guys are with Trump NOW!

6 Reply Share ›

**TheRedCoatsR'Coming** Mac-101
10 months ago

And he choreographed that bullet coming within an inch of his brain, just to fool us.
Wake up and realize the Deep State may be bigger than even Trump can beat

3 Reply Share ›

Sponsored

## Around the Web

ADVERTISEMENT (HIDE THIS AD)

## Around the Web

**Shoulder Pain Experts Stunned: New Device is Changing Lives Fast**
Ad by RejuvaCare

**Man Who Predicted Nvidia at $1 Shares 3 AI Stocks for 2026**
Ad by Newsletter Journal

**Watch: They Said His Coil Wouldn't Work - Until Blizzard Hit**
Ad by Energy Systems



**When Alone, Wrap Aluminum Foil Around Your Doorknob (Here's Why)**
Ad by WG Life Hacks 102

**His Backyard Coil Looked Fake - Until You See The Meter Reading**
Ad by Energy Systems

1 Simple Hack to Save on Your Electric Bill (Try Tonight)
Ad by MirovX

Replace Your Entire Roof in As Little As 1 Day!
Ad by Metal Roofing Innovations

GATEWAY PUNDIT
WHERE HOPE FINALLY MADE A COMEBACK

© 2026 The Gateway Pundit

# EXHIBIT 63

*GATEWAY PUNDIT DEFAMATORY ARTICLE (CULLEN LINEBARGER)*

Menu

GATEWAY PUNDIT
WHERE HOPE FINALLY MADE A COMEBACK

Menu

ADVERTISEMENT (HIDE THIS AD)



Shoulder Pain is Not From Sleeping Wrong. Meet The Real Enemy

Ad by RejuvaCare



Here's The Real Cost of a Metal Roof in 2026 (Enter ZIP!)

Ad by Metal Roofing Innovations USA



A Simple Method to Reduce Neuropathy in Tooele

Ad by Health Today News



Keep a Bread Clip in Your Wallet When Traveling - It's Genius

Ad by WG Life Hacks 102

# MUST READ: Journalist Tayler Hansen Reveals What He Witnessed with Ashli Babbitt on J6 and During Her Murder (VIDEO)

By Cullen Linebarger Jan. 6, 2023 6:45 pm 442 Comments

Truth Tweet Share Gettr Gab




You will never hear this covered by the corporate media and it will be ignored by even the most conservative news sites. But conservative journalist Tayler Hansen wrote a *long* thread today revealing what he witnessed on January 6th where he walked side by side with Ashli Babbitt.

What you are about to read is a thorough destruction of the media and leftist narrative on January 6th along with a story of state-sanctioned murder. The January 6th Committee did not want to hear from Hansen because he knew the full truth.

Here is the full thread revealing the real story behind January 6th and what happened to Ashli Babbitt. Full credit to **Twitchy** for first breaking the story:

https://twitter.com/TaylerUSA/status/1611395432948682755

Tayler Hansen
@TaylerUSA · Follow

Replying to @TaylerUSA

January 6th, 2021, started like any other day of Reporting. I woke up early and planned to conduct interviews and to document what was taking place.

I anticipated violence from Left-Wing groups due to the pattern I had seen emerge at prior Trump rallies once it got dark.

9:13 AM · Jan 6, 2023

2.5K Reply Copy link

Read 38 replies

Tayler Hansen
@TaylerUSA · Follow

Replying to @TaylerUSA

Around 12:20PM, I heard someone gathering a group to "head to the Capitol".

Trump was still speaking so I found it odd, so naturally, I followed.

Later on, I would find out this was Ray Epps as well as other key actors.

9:13 AM · Jan 6, 2023

3.2K Reply Copy link

Read 33 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

The Ellipse is 1.6 mi away from the Capitol, it takes around 30-33 minutes via walk.

Trump began addressing the crowd at 11:58AM, and made his final remarks at 1:12PM.

Capitol Grounds were breached 19 minutes prior to Trump's speech concluding.

9:13 AM · Jan 6, 2023

2.7K Reply Copy link

Read 25 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

I arrived outside the Capitol at 12:50PM, within 3 minutes, the initial barrier which had under 7 officers standing post was overwhelmed.

The second barrier went down within the same minute, this time it was Ray Epps who visibly spoke to Ryan Samsel and others right before.

9:13 AM · Jan 6, 2023

2.5K Reply Copy link

Read 12 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

For a while, all was calm and peaceful. Then a concussion grenade was thrown deep into what was a peaceful crowd. This caused an eruption within the crowd.

The crowd surged due to those in the back not understanding what was happening, pushing others forward consistently.

9:13 AM · Jan 6, 2023

2.6K Reply Copy link

Read 31 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

For over an hour, a continuous barrage of concussion grenades, tear gas, pepper spray, and other crowd munitions were deployed on the crowd.

This affected thousands of people, most of whom had no idea what was going on and hadn't been violent at all.

9:13 AM · Jan 6, 2023

2.9K Reply Copy link

Read 19 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

I was hit by multiple rubber munitions and maced into absolute oblivion, even while wearing visible Press Credentials.

The Police were 10x more aggressive than I have ever seen at any riot I covered in 2020.

9:13 AM · Jan 6, 2023

3.8K Reply Copy link

Read 50 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

For over an hour this went on, during this barrage Kevin Greeson and Benjamin Phillips both suffered fatal heart attacks from the munitions being thrown. (Munitions we’re not authorized to be used on the 6th)

People were on fire and had holes blown in them at this point.

9:13 AM · Jan 6, 2023

4.6K Reply Copy link

Read 76 replies

**Tayler Hansen** @TaylerUSA · **Follow**

Replying to @TaylerUSA

After an Officer pushed Derrick Vargo off of the inaugural stairs, breaking his legs, the Officer taunted the crowd below who were visibly upset. This caused a crowd to surge up the staircase which eventually arrived at the Western doors of the Capitol.

9:13 AM · Jan 6, 2023

3.1K Reply Copy link

Read 34 replies

**Tayler Hansen** @TaylerUSA · **Follow**

Replying to @TaylerUSA

The Police then stood back and watched as people broke windows with a two by four and riot shield.

Those who broke the windows of the Capitol on the West Side were initially placed on an FBI wanted list, only to be taken off.

They of course, have not been charged.

9:13 AM · Jan 6, 2023

3.2K Reply Copy link

Read 33 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Once inside the building it was a weird scene, people wandering aimlessly not really understanding where to go or what to do.

Almost everyone had their phones out and were recording, many were singing songs and chanting “stop the steal”.

9:13 AM · Jan 6, 2023

2.2K Reply Copy link

**Read 12 replies**

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

I eventually followed a line of people up a spiral staircase which led me to a rotunda.

There was a small line of Police present initially and it quickly took a turn, tear gas was deployed, and a few people within the crowd began pushing the officers back.

9:13 AM · Jan 6, 2023

1.9K Reply Copy link

**Read 5 replies**

**Tayler Hansen** @TaylerUSA · **Follow**

Replying to @TaylerUSA

The rotunda quickly became jam packed with people, like outside, there was what I would describe as a crowd surge. People in the back pushing so those in the front had no choice but to advance.

I saw multiple people escort police forward so they did not get caught in the surge.

9:13 AM · Jan 6, 2023

1.9K Reply Copy link

Read 7 replies

**Tayler Hansen** @TaylerUSA · **Follow**

Replying to @TaylerUSA

Eventually I ended up outside the Speakers doors, alongside the 'Q Shaman', Podium Man, and others.

This is where police negotiated (on video) with the crowd claiming that if protesters remained calm and peaceful they would be allowed to "sit in" on the session.

9:13 AM · Jan 6, 2023

2.2K Reply Copy link

Read 12 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Obviously this was not the case but it was tried anyways. This calmed the crowd quite a bit for a few minutes, until Zachary Alam and a few other people in the crowd begin to scream and get loud.

At this point only about 3 officers were standing in front of the lobby.

9:13 AM · Jan 6, 2023

1.9K Reply Copy link

Read 9 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Officers moved and that's when a large crowd formed against the door of the speakers chamber.

After minutes of nothing happening I noticed Ashli B walking left, so I followed. I walked down the hallway behind her and turned left into a room where a large G.W. portrait hanged.

9:13 AM · Jan 6, 2023

1.8K Reply Copy link

Read 4 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

This was the room seen on John Sullivans stream where he broke the window.

I turned around and walked straight out of the room, once again seeing Ashli Babbitt and deciding to follow her.

She was on her phone and didn't seem to know where she was either.

9:13 AM · Jan 6, 2023

1.9K Reply Copy link

**Read 9 replies**

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

At this point Ashli and I were walking side by side, and we passed a calm SGT at Arms employee who was on his phone.

I asked him how he was doing and he said good.

Ashli and I were the first to arrive at the doors in the speakers hallway, I offered Officer Yetter water.

> **Tayler Hansen** @TaylerUSA
>
> NEW— Corrupted video footage shows the moment Ashli Babbitt and I arrived at the Speakers doors.
>
> Ashli is seen briefly talking with Officers.
>
> (You can also hear me offer Yetter a water bottle since he's covered in powder from the crowd control munitions they were throwing)

9:13 AM · Jan 6, 2023

2.2K Reply Copy link

Read 21 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Ashli talked with the Officers briefly, then the room began to fill up quickly.

John Sullivan reached the front of the crowd by telling others he “had a knife”.

Zachary Alam became erratic and started breaking windows, this is where everything really took a turn.

9:13 AM · Jan 6, 2023

2K Reply Copy link

**Read 15 replies**

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Something that is extremely unreported about those moments is the fact that Ashli Babbitt tried to physically stop Zachary Alam after the officers standing in front of the doors shifted over.

She physically grabbed him, pulled him, and landed a punch in an attempt to stop him.

> **Tayler Hansen** @TaylerUSA
>
> The @January6thCmte hasn't mentioned Ashli Babbitt, who was shot and killed in the Capitol a single time during these hearings…
>
> I wonder why?

9:13 AM · Jan 6, 2023

2.7K Reply Copy link

Read 53 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Ashli Babbitt did not break anything, she tried to stop those attacking the barriers multiple times.

To this day I wish I could have done more after she was shot, anyone who has seen someone die in a violent manner understands this.

The CERT team was entering the room atm.

9:13 AM · Jan 6, 2023

2.4K Reply Copy link

**Read 69 replies**

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

Michael Byrd claims he shot Ashli because CERT had not arrived, they were present in the room and were moving forward to de escalate. They did not feel the need to shoot anyone or to resort to violence.

Michael Byrd became trigger happy and shot an unarmed woman posing no threat

9:13 AM · Jan 6, 2023

3.6K Reply Copy link

Read 84 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA

What I witnessed on the 6th was Government sanctioned murder. The Media immediately reported inaccurately on what happened and spun a false narrative, labeling Ashli a terrorist.

No real investigation was made into Byrd, instead he profited over $164,000 from killing Ashli.

9:13 AM · Jan 6, 2023

3.9K Reply Copy link

Read 66 replies

**Tayler Hansen**
@TaylerUSA · **Follow**

Replying to @TaylerUSA
The Committee refused to talk to me even though I offered testimony and video.

@AdamKinzinger and others did not seriously "investigate" what took place. Instead, he donated to Michael Byrds GoFundMe.

My prayers are with those affected by violence on todays anniversary.

9:13 AM · Jan 6, 2023

4.2K Reply Copy link

Read 180 replies

**Submit additional information.**

## Cullen Linebarger

You can **email Cullen Linebarger here**, and **read more of Cullen Linebarger's articles here.**

Truth Tweet Share Gettr Gab

ADVERTISEMENT (HIDE THIS AD)



Man Lives With Amish For 2 Years: "They Know Something We Don't"
304



What Vitamin Can Reverse Nerve Pain And Neuropathy?
2,428



NASA Confirm The Bible Prec Years Ago? (S



Cardiologist Warns Americans: "Pour Out The Bottled Water"



If You See Floating “Squiggles,” Try This Simple Fix
3,459



Trump's New Plan Just Might Work
12,720

Sponsored Ad

## The Gateway Pundit Comment Policy

We welcome comments from our readers while reserving the right to edit or remove comments that do not meet our policy.

Please read our Comment Policy before commenting.

Got it

**442 Comments**

1 Login ▾

G

Join the discussion…

LOG IN WITH

OR SIGN UP WITH DISQUS ?

Name

## Like Gateway Pundit?

Subscribe to The Gateway Pundit to receive daily updates of the latest articles delivered straight to your email.

Enter email address

Subscribe

Hide this message

8 Share

Best Newest Oldest



**Reflect**

3 years ago

The siege at Waco revealed what kind of human history's garbage infests the U.S. alphabet agencies.

116 Reply

Sponsored

## Around the Web

**Shoulder Pain Experts Stunned: New Device is Changing Lives Fast**
Ad by RejuvaCare

**This Small Hearing Aid is a Life-Changer—And It's Under $100**
Ad by Oricle Hearing Aid



**Gunny G ❤ USA #1/FJB/FBO** ➦ Reflect
3 years ago

Don't forget Janet Reno and Eric Holder (her protégé) at Ruby Ridge where FBLie Sniper Lon Horiuchi murdered members of th Weaver Family.

85 Reply

**Ryan D.** ➦ Gunny G ❤ USA #1/FJB/FBO
3 years ago edited

Those POS's shot Weaver's wife as she held their child in her arms. Americans had every right to over run those dirt bags and hang each one of them in the Forrest.

19 Reply



**...** ➦ Gunny G ❤ USA #1/FJB/FBO
3 years ago

And Bill "Porky" Barr got Horiuchi off scot-free, naturally.

19 Reply



**James Green** ➦ Gunny G ❤ USA #1/FJB/FBO
3 years ago edited

The same FBI Sniper (Lon Horiuch) who Shot Weavers Wife & was Indicted in Idaho (But charges dropped later). Weavers Trouble began when Approached by the FBI & asked to be an undercover informant on Biker Gangs in Idaho. Weaver refused & the FBI had no Leverage to Force him. So they Entrapped & Created Leverage. They used another informant who knew Weaver, approach him with a shotgun, with the Barrel already Marked. He asked Weaver if he could borrow a Hacksaw to cut it off. Then Pretending not to be able to use the saw, got Weaver to Saw the Barrel off. The FBI marked the Gun Barrel 1/2" shorter than the legal 18".

So a Federal Warrant was Immediately Issued for Weaver, charging him with manufacturing an Illegal Class III Firearm (Sawed Off Shotgun)...ie,

the 1/2" Cut carried the Same Federal Penalty as Manufacturing an Illegal MG.

After that, an arrest warrant was issued to further pressure Weaver.

FBI Sniper Lon Horiuch was also Shooting from a Cattle Trailer at Waco

see more

19 Reply



**Bill Sanders** → James Green

3 years ago

And Trump selected Barr to be his AG. tells you which side Trump is playing for.

0 Reply



**Emily Summer** → James Green

3 years ago

Barrel legal length is 16", not 18". Makes me wonder how much the rest of your story is correct.

0 Reply



**James Green** → Emily Summer

3 years ago

Here's 2 more Tidbits...

1. There has been some serious discussion concerning so called Ghost Guns without serial numbers being made illegal to own. This affects ANY Firearm without a Serial Number.

Other than Gun Dealers, Gunsmiths & Pawn Shops, MANY people are unaware there are untold 100s of 1000s (Into the millions) of LEGAL Firearms in circulation & ownership that do not have serial numbers. Not until the GCA of 1968, were serial numbers required.

The manufacturers put serial numbers on models at their discretion for their own records & quality control, not because of any government regulation. Many manufacturers (Including Remington & Winchester) did not serialize entire production runs of lower priced guns. Many Small manufacturers didn't serialize at all.

see more

5 Reply



**Hardcore Trumper** ➦ Emily Summer

3 years ago

In Illinois it's 18 inches!

3 Reply

Sponsored

## Around the Web

**Here's Your Estimated Walk-In Shower Price in 2026**

Ad by HomeBuddy

**Side Sleepers With Shoulder Pain: Do This Before Bed Tonight**

Ad by RejuvaCare



**James Green** ➦ Emily Summer

3 years ago edited

And Yes this is true also.

If you remove the stock from a rife, & the overal length is less than 26 inches, U have just created an Illegal Short Barrel Rifle, even if the Barrel is the legal 16 inches or longer.

So, technically every time someone cleans their rifle & removes the stock, if the overall length is shorter than 26 inches, you have just committed a Felony.

See picture in article of Ruger 10-22 with stock removed.

https:// www. guns. com/news/2017/09/12/california-woman-charged-with-illegal-sbr-over-stock-less-1022

3 Reply



**James Green** ➦ Emily Summer

3 years ago edited

Based on your comment history, we seem to have similar views on some things. I occasionally post something that's incorrect & acknowledge my ignorance.

NFA Rifle (16") & Shotgun (18") specifications are different (Apples & Oranges). If you actually measure correctly the factory firearms, most manufacturers may call a barrel 16" or 18", but when measured, the rifles are 1/4 longer. Some shotgun manufacturers 18" barrels are 1/2 inch longer. This is usually done to prevent any confusion during measurements by authorities & if the end of the barrel is damaged & re-crowned or re-choked, there is enough spare length so it won't fall in the illegal length.

ADVERTISEMENT (HIDE THIS AD)

## Around the Web

**If You Can't Raise Your Arm Above Your Head, Read This Immediately**

Ad by RejuvaCare

**His Backyard Coil Looked Fake - Until You See The Meter Reading**

Ad by Energy Systems

**Man Who Predicted Nvidia at $1 Shares 3 AI Stocks for 2026**

Ad by Newsletter Journal

**This Tiny Hearing Aid is Changing Lives, and It's Under $100**

Ad by Oricle Hearing

**A Simple Method to Reduce Neuropathy (Watch)**

Ad by Health Today News

**Always Pour Salt Down Your Drain at Night, Here's Why**

Ad by WG Tips 101

**This Sciatica Discovery is Leaving Spine Specialists Speechless**

Ad by SmoothSpine

Dear Reader - The enemies of freedom are choking off the Gateway Pundit from the resources we need to bring you the truth. **Since many asked for it, we now have a way for you to support The Gateway Pundit directly - and get ad-reduced access.** Plus, there are goodies like a special Gateway Pundit coffee mug for supporters at a higher level. **You can see all the options by clicking here - thank you for your support!**

Search ...

## Video of the Week

**Woke Hollywood Useful Idiots Call On Cult To Mobilize Against MAGA? | Drew Hernandez**




ADVERTISEMENT (HIDE THIS AD)

Cardiologist: 2 Veggies Will Kill Belly Fat Overnight (Try It)

Rheumatologist: Please! If You Have Arthritis Avoid This Food

Forget Furosemide, Use This Household Item To Drain Edema Fluid




## Trending Now on TGP

1. Billionaire Reid Hoffman, Who Bankrolled the E. Jean Carroll Lawsuit Against Trump, Is Featured Extensively in the New Epstein Files, Visiting Zorro Ranch and Pedophile Island
2. Third Georgia Democrat State Lawmaker Charged with Defrauding Federal Government
3. Disgraced Andrew Everywhere in Epstein Files – From Multiple Sexual Indiscretions to a Romance With Ghislaine Maxwell and Sharing Afghanistan Confidential Document With Late Pedophile
4. Failed LA Mayor Karen Bass Ignored Fire Victims But Takes Time to Attend Don Lemon's Hearing – Crowd Shouts 'F*ck You Karen Bass!"
5. REVEALED: HUNDREDS OF MILLIONS in Cash Flown Through Minneapolis Airport Each Year by Somali Couriers (VIDEO)

## This Week's Top Posts

1. 171.4K VIEWS: **Private Jet That Crashed in Maine Was Registered to Anti-ICE Lawyers Spending Millions to Elect Democrats in Texas (UPDATED)**
2. 149.2K VIEWS: **Anti-ICE Agitator Picks Up Flashbang, Instantly Regrets It (VIDEO)**
3. 148.2K VIEWS: **James O'Keefe Goes Undercover Inside Minnesota Mob: Leftist Agitators Admit Who's Funding Anti-ICE Protests (VIDEO)**
4. 144.9K VIEWS: **Tulsi Gabbard Releases Documents that PROVE it Was Barack Obama who Led the Russiagate Conspiracy and Coup Against Donald Trump – Documents Have Been Turned Over to the DOJ**
5. 128.5K VIEWS: **SHOCKING VIDEO: Federal Officers Attacked and Tackled by Violent Minneapolis Rioters**



**Get Our Newsletter**
Sign up now and stay ahead in the political landscape.

Enter Your Email Address

Subscribe

Visit **GatewayHispanic.com** to read news of interest to the hispanic community.

Visit **AmericanGulag.org** to learn how to help the prisoners of the protest on January 6th.

Visit **TGPVideos.com** to watch the latest exclusive videos from The Gateway Pundit.

TGP TRUTH

As the mainstream media repeatedly fails and loses public trust, TGP has continued to offer accurate and timely reporting for almost two decades. Visit **TGP FactCheck** to see how we get it right.

TGP FACTCHECK

FACT-CHECKING THE MEDIA: BECAUSE THE TRUTH MATTERS

Check out **TGP FactCheck** to see how terribly wrong the legacy media can get it.

## TRENDING NEWS



**A $400,000 payout after Maduro's capture is putting prediction mark...**



**How Big Is Joe Biden's Social Security Check? Take a Look**



**Elon Musk's xAI to build $20 billion data center in Mississippi**



**41 States That Don't Tax Social Security Benefits**



**FBI Director Says 50 Alleged Latin Kings Gang Members Arrested in N...**



**Boys at her school shared AI-generated, nude images of her. But she...**




**Netflix's Sexualized Children's Shows Could Jeopardize Warner Merge...**

## TGP Stats

## Please Donate Here

Please consider supporting the work of The Gateway Pundit. Every dollar donated helps cover the cost of researching, writing, publishing, and promoting the news you read every day on The Gateway Pundit.

ADVERTISEMENT (HIDE THIS AD)

Sponsored Content



**Have You Ever Googled Yourself?**

Been Verified



Shoulder Pain Experts Stunned: New Device is Changing Lives Fast

RejuvaCare




This Sciatica Discovery is Leaving Spine Specialists Speechless

SmoothSpine

GATEWAY PUNDIT
WHERE HOPE FINALLY MADE A COMEBACK

© 2026 The Gateway Pundit

Home About Us Contact Privacy Terms Get Ad Free

# EXHIBIT 64

*GATEWAY PUNDIT REPORTER PROFILE (CARA CASTRONUOVA)*

Home About Us English

GP
Subscribe to our notifications for the latest news and updates. You can disable any time.
Later Subscribe

ADVERTISEMENT (HIDE THIS AD)


Timeshare Resorts Forced to Refund Owners - is Yours on The List?
Ad by SilverPenny


Even The Oldest Nail Fungus Will Disappear (Recipe)
Ad by True Health Practices


98% of Americans Are Using Toxic Frying Pans - The Chefs Are Doing This Now
Ad by Plateful


Always Cut Bacon Packages This Way, Here's Why
Ad by Healthy Living Tips



# Cara Castronuova

Cara Castronuova is a co-Founder of C.A.P.P. (Citizens Against Political Persecution and The People's January 6th Commission. She is an Activist, Investigative Journalist, 2-Time Boxing Champion, Celebrity Fitness Trainer and Television Personality. You can watch her on Newsmax at 10PM EST every Saturday night on "Wiseguys". You can follow her on Instagram & Twitter @CaraCastronuova. She is currently banned on Fakebook & suing them for defamation of character. You can contact her directly at CARACASTRONUOVA@YAHOO.COM or via the C.A.P.P. website at www.CitizensAPP.us or www.caracastronuova.com if you have any tips or would like to volunteer.




## HOLY SMOKES! The Mother of the Alleged J6 Pipe Bomber Speaks Out in EXCLUSIVE INTERVIEW! Must Watch!

By Cara Castronuova Sep. 17, 2026 6:20 pm



## "FREE BRIAN COLE, JR.!" PROUD BOYS Chairman Enrique Tarrio Holds Press Conference Tomorrow At D.C. Kangaroo Court in Support of Alleged J6 Pipe Bomber!

By Cara Castronuova Sep. 9, 2026 7:40 pm




## Trump's Pardon Attorney Ed Martin Challenges Cory Mills Narrative — Slams D.C. Police Handling of Alleged Domestic Case, Calls Warrant Push a "Mop-Up Job"

By Cara Castronuova Apr. 22, 2026 11:20 am



## Cryin' J6 Cop Michael Fanone Had Another Epic Meltdown at the Jack Smith Hearing! WATCH FANONE GO BERZERK AFTER QUESTIONED BY TGP's CARA CASTRONUOVA!

By Cara Castronuova Jan. 22, 2026 9:20 pm



## TGP's Cara Castronuova Shoved by Jasmine Crockett's Bodyguard After Yesterday's January 6th Hearing at Congress! See Reactionary VIRAL VIDEO!

By Cara Castronuova Jan. 15, 2026 4:20 pm



## Trump Impeachment Lawyer Outlines the Epic Historic Prosecutorial Misconduct of Andrew Weissmann in Pardon Appeal




## Watch LindellTV and TGP's Cara Castronuova Ask Karoline Leavitt About Rosanne Boyland's Death on J6! "She was



## How Three Judges Dismantled a Federal Indictment: Judicial Overreach in United States v. Comey

By Cara Castronuova Dec. 12, 2025 5:40 pm

Search ...

### Video of the Week

Leftist Defends Mass Mail In Ballots While Admitting The USPS Sucks






### Trending Now on TGP

1 UPDATE: US Air Force B-1B Bomber Loaded with Munitions Takes Off from RAV Fairford Air Base in Britain (VIDEO)
2 BREAKING: President Trump Cuts Short His Trip to Camp David – At Same Time Netanyahu Abruptly Cuts Trip to US, Cancels Visit to Texas, and Returns to Israel
3 BREAKING: Six Days After Ukraine Agrees to Halt Attacks on Russian Refineries – They Strike Kapotnya Refinery in Moscow, to Screw Russia Global Energy Markets, AND Trump!
4 'Handled Well': Dutch Officials Legally Euthanize Toddler in First-Ever Killing of New Child Euthanasia Law
5 WATCH: American Patriot Drops Massive Truth Bomb Live on CNN as 'Reporter' Whimpers About Getting Blocked from Entering the White House

### This Week's Top Posts

1 123.5K VIEWS: HORROR: Vicious Thugs Drag Female College Student from Own Porch by Her Hair and Brutally Beat Her in the Street – Police MIA Even After Being Called FOUR TIMES
2 99K VIEWS: WATCH: Kash Patel Mic-Drops on Unhinged Democrat Senator with a Damning Observation After Leftist Badgers Him During Fiery Hearing
3 80.8K VIEWS: Kash Patel Humiliates Adam Schiff During Annual FBI Oversight Hearing (VIDEO)
4 78.9K VIEWS: And, There It Is... Lindsay Clancy Holdout Juror Says He Feels Like He's Being Targeted Because "He Is a Black Republican" – And the Juror Panel Was Democrats
5 78K VIEWS: Trump White House Drops EPIC One-Liner After Chiefs Tight End and Taylor Swift's Hubby Travis Kelce Gets Scammed By Illegal Alien in Huge Ponzi Scheme

GP
Subscribe to our notifications for the latest news and updates. You can disable any time.

Officer...
By Cara Ca...







**President Trump's Pro-Orban Choice for Ambassador to Hungary is Hit by Fake News Smear Campaign**
By Cara Castronuova Dec. 9, 2025 8:00 pm

**George "Santos Claus" Holiday Bash Comes To D.C. Tonight! NO FAIR WEATHER FRIENDS ON THE LIST! "A Political Lesson Wrapped in Tinsel!"**
By Cara Castronuova Dec. 9, 2025 10:15 am

**Dirty DOJ Prosecutor Allegedly Tried to Frame President Trump! "JOCELYN IS BEING LOOKED AT" WATCH LindellTV & the GP's Cara Castronuova Ask President Trump About the Alleged Pipe Bomber & Deep State Prosecutor on the Case!**
By Cara Castronuova Dec. 8, 2025 8:40 pm








**Kari Lake EXPOSES THE SWAMP: Shocking Fire Sale, Lies About Funding! "Criminal Behavior Will Be Referred to DOJ!"**
By Cara Castronuova Nov. 24, 2025 6:00 pm

**HOLY SMOKES! The Pipe Bomb HOAX Story Implodes — Rep. Loudermilk Blows the Lid Off the Biden J6 Narrative! WATCH FULL LENGTH INTERVIEW HERE!!**
By Cara Castronuova Oct. 31, 2025 2:40 pm

**Paul Ingrassia: President Trump's Fearless Fighter for Accountability Faces Senate Confirmation Hearing Thursday!**
By Cara Castronuova Oct. 20, 2025 5:40 pm






**MASSIVE! "In the Closet" Playwright and DOJ Lawyer Drafts Motion to Dismiss Proud Boys' $100M Lawsuit — Biden's Star Witness Recants, Admits Feds Forced False Testimony! NAMES NAMED! VILE CORRUPTION STILL INSIDE DOJ & FBI!**
By Cara Castronuova Sep. 3, 2025 8:00 am

**"LET TRUMP TAKE OVER!" Inner City D.C. Residents Say CRIME IS BAD! "I Got Shot Four Times!" (VIDEO)**
By Cara Castronuova Aug. 20, 2025 6:30 pm

**WATCH: Gateway Pundit Journalist and Lindell TV White House Correspondent Cara Castronuova Questions President Trump on Democrat Fearmongering Over Social Security and Explosive Allegations D.C. Police Are Falsifying Crime Data**
By Cara Castronuova Aug. 14, 2025 7:00 pm

ADVERTISEMENT (HIDE THIS AD)

The Overlooked Boxed Cereal Now Tied to 8 out of 10 Memory Cases
BrightView Journal

98% of Americans Are Using Toxic Frying Pans - The Chefs Are Doing This Now
Plateful

Neurologists: Stop Drinking This Immediately if You Suffer From Memory Loss
Neuro Sharp

**Get Our Newsletter**
Sign up now and stay ahead in the political landscape.

Enter Your Email Address

Subscribe

GATEWAY HISPANIC

Visit GatewayHispanic.com to read news of interest to the hispanic community.

AMERICAN GULAG

Visit AmericanGulag.org to learn how to help the prisoners of the protest on January 6th.

TGP VIDEOS

Visit TGPVideos.com to watch the latest exclusive videos from The Gateway Pundit.

TGP TRUTH

As the mainstream media repeatedly fails and loses public trust, TGP has continued to offer accurate and timely reporting for almost two decades. Visit TGP FactCheck to see how we get it right.

TGP Stats

TRENDING NEWS


3 Pullback Stocks That Are On Sale Now


Why Denver Keeps Showing Up on Retirement Rankings — Even With Risi...


Three "Double Down" Picks for Today, NVIDIA Climbed 29,873% Since O...

GP Subscribe to our notifications for the latest news and updates. You can disable any time.



**RED ALERT: PATRIOT CALL-TO-ACTION! MAGA Hero Paul Ingrassia Faces Senate Confirmation Battle — We The People Must FIGHT, FIGHT, FIGHT! for Trump's Bold Nominee for Office of Special Counsel!**

By Cara Castronuova Jul. 23, 2025 6:00 pm

**Did the Vile Biden Administration Let Criminals & Illegals Cross the Border to Create More Democrat Voters? Border Czar and GP's Cara Castronuova Break it Down at the White House!**

By Cara Castronuova Jul. 2, 2025 5:00 pm

**"We Don't Confirm Schumer Donors" – Musk Ally Jared Isaacman's Democrat Donations Torpedoed NASA Appointment, Sparking Speculation Over Elon's Angst**

By Cara Castronuova Jun. 6, 2025 6:18 pm



**ALERT: Terror Wind Turbines Set to Encroach on the East Coast This Week – Turbines Can Interfere With Aircraft Over JFK Airport – "Unacceptable Risk to National Security"**

By Cara Castronuova Jun. 2, 2025 7:45 am

**Gateway Pundit Writer Paul Ingrassia Nominated to Head the United States Office of Special Counsel! CONGRATULATIONS PAUL!**

By Cara Castronuova May. 29, 2025 6:20 pm



**WHAT'S THE DEAL WITH JUSTICE AMY CONEY BARRETT SIDING WITH LIBS? Watch TGP Reporter Cara Castronuova Ask Karoline Leavitt About Barrett at Today's WH Briefing**

By Cara Castronuova Apr. 8, 2025 7:40 pm



**"I Attended an Anti-Trump Walkout at My School. The Things I Witnessed Were SHOCKING." Guest Teenage Writer Lucky Basseri TELLS ALL!!**

By Cara Castronuova Mar. 27, 2025 11:00 am



**Journalists Were Banned from Asking About Election Integrity During the Biden Administration's Reign of Terror... NOT ANYMORE! — Watch GP's Cara Castronuova Ask the White House About Elections!**

By Cara Castronuova Mar. 27, 2025 7:45 am

**Dishonorable Judge Boasberg and DC Judges are Crying About the Due Process of Illegal Immigrants and Alleged Tren de Aragua Gang Members...BUT WHY DIDN'T THEY CARE ABOUT THE DUE PROCESS RIGHTS OF J6ers AND TRUMP SUPPORTERS?! (VIDEO)**

By Cara Castronuova Mar. 25, 2025 8:45 pm



**What Do You Think about America's Generals Naming the New Bad Ass F-47 Stealth Fighter Jet After the 47th President? VIDEO FROM THE WHITE HOUSE!**

By Cara Castronuova Mar. 22, 2025 3:00 pm



**Teachers' Unions Put Their Own Interests Over Students Futures! Union Boss Randi Weingarten Threatens Lawsuit After President Trump's Order Dismantling the Incompetent Board of Education!**

By Cara Castronuova Mar. 21, 2025 8:00 pm



**REDEMPTION! President Trump Visited the Department of Justice Today as the 47th President of the United States and Leader of the Government Agency that Once Persecuted Him**

By Cara Castronuova Mar. 14, 2025 8:00 pm



week, but his Social Security check is m...



This Tech Could Be Worth 35 Amazons



TrumpIRA.gov Is Coming in 2027. What the New Retirement Account Means



Trump Launches TrumpRx Website for Discount Pharmaceutical Drugs

**Please Donate Here**

Please consider supporting the work of The Gateway Pundit. Every dollar donated helps cover the cost of researching, writing, publishing, and promoting the news you read every day on The Gateway Pundit.

ADVERTISEMENT (HIDE THIS AD)
Sponsored Content



Nail Fungus? Do This Immediately
True Health Practices



Neurologists: Stop Drinking This Immediately if You Suffer From Memory Loss
Slimforce



Surgeon Reveals: This Simple Trick Will End Joint Pain & Arthritis! (Try It)
Healthy Living Tips

GP
Subscribe to our notifications for the latest news and updates. You can disable any time.



**Watch Gateway Pundit and LindellTV Correspondent Cara Castronuova asks Karoline Leavitt about the Legitimacy of Biden's "Autopen E-Signatures" Pardoning His Crime Family! WHO REALLY E-SIGNED THEM?**

By Cara Castronuova Mar. 11, 2025 7:40 pm



**Watch GP's Cara Castronuova Ask Zelensky "Why Were You So Disrespectful to the President?" as He Leaves The White House in Disgrace.**

By Cara Castronuova Feb. 28, 2025 9:20 pm



**President Trump Gives a Tremendous Thank You To Election Integrity HERO Mike Lindell at CPAC – "He Stood Strong, Nothing Was Going to Faze Him, I Want to Thank Him On Behalf of Everybody".**

By Cara Castronuova Feb. 24, 2025 1:45 pm

**Watch TGP's Cara Castronuova Ask a Question at Secretary Robert F. Kennedy, Jr.'s Swearing-In Ceremony Yesterday for Lindell TV – DETAILS FROM INSIDE THE OVAL OFFICE!**

By Cara Castronuova Feb. 14, 2025 8:15 am



**J6er and Army Veteran Lucas Denney was Freed From Prison by President Trump after the Biden Regime Destroyed His Life. PLEASE HELP HIM REBUILD HIS LIFE FROM SCRATCH!**

By Cara Castronuova Feb. 6, 2025 8:45 am



**Patriots! Immediate Call to Action! CALL SENATOR CASSIDY AND ASK HIM TO VOTE FOR RFK JR. TODAY to Make America Healthy Again! AMERICA DEPENDS ON IT! Do it NOW!**

By Cara Castronuova Jan. 30, 2025 4:00 pm



**EPIC Compilation of Exclusive Video Interviews with January 6th Prisoners as They Were Released From Captivity! Proof that IN THE END, GOD WINS!**

By Cara Castronuova Jan. 26, 2025 8:00 am

**Marjorie Taylor Greene is Correct — The Reason the Government and the Media Choose to Focus on January 6 While Ignoring BLM is Because "They Don't Give a Sh*t About Real Americans"**

By Cara Castronuova Jan. 24, 2025 3:30 pm



**On the Evening Before The Inauguration of President Trump, Another J6er Nervously Awaits Daybreak From a Jail Cell in the Mountains. READ HIS STORY HERE! "They are Poisoning Us With Liver Burgers!" ENTRAPMENT VIDEOS!**

By Cara Castronuova Jan. 19, 2025 4:20 pm




**GP Exclusive! J6er STRANDED IN BELARUS! Protester Who Was Granted Political Asylum and Protection From the Evil Biden Regime by President of Belarus SPEAKS OUT! "President Trump, Please Help Me!" EXCLUSIVE INTERVIEW!!**

By Cara Castronuova Jan. 19, 2025 8:30 am

**President Trump Promised to Halt Offshore Wind Turbine Projects Once in Office! We See Right Through this DEADLY LEFTIST HOAX! Please Join Protest Groups Near You Tomorrow To FIGHT, FIGHT, FIGHT the "Terror Turbines"! DETAILS IN ARTICLE!**

By Cara Castronuova Jan. 17, 2025 8:40 pm

**J6 Prisoner Luke Coffee was Convicted of Assaulting Violent J6 Police Officer Lila Morris. Yet She Admits He DID NOT ASSAULT HER. His Nuanced Case is Why He is Asking for Pardons For ALL J6ers.**

By Cara Castronuova Jan. 17, 2025 6:20 pm

Home About Us English

GP Subscribe to our notifications for the latest news and updates. You can disable any time.



**HERE IS SOLID PROOF THAT PRAYERS WORK! Watch This Incredibly Beautiful Video of J6 Family Finally Reunited! Biden's Political Prisoner Released from Prison Surprises Daughters — PRICELESS REACTION IN A MUST-SEE VIDEO!**

By Cara Castronuova Jan. 16, 2025 9:00 am



**Four Years Ago Today on January 6th They Came For We the People. THEY FAILED. A Reflection on January 6th, 2025. GOD WINS IN THE END!**

By Cara Castronuova Jan. 6, 2025 9:00 pm

**Watch TGP Reporter Cara Castronuova's J6 Podcast Special on the Night of January 6th! WHO REALLY BENEFITED FROM THE "BREACH" ON JANUARY 6TH? Why Are They Still Covering Up the Alleged Murder of Peaceful Protester Rosanne Boyland FOUR YEARS LATER?! MUST WATCH!**

By Cara Castronuova Jan. 6, 2025 7:40 pm



**A J6 Family Struggling to Survive- Read How the Biden Regime Destroyed the Lives of the Ostrander Family! JANUARY 20th Cannot Come Fast Enough!**

By Cara Castronuova Jan. 6, 2025 9:00 am



**On the Eve of January 6th, 2025, a J6 Air Force Veteran Pens a Letter to President Trump Making the Case for Blanket Pardons. LET'S GET THIS LETTER TO PRESIDENT TRUMP!**

By Cara Castronuova Jan. 5, 2025 9:00 am

**EXCLUSIVE: Proud Boys Leader Enrique Tarrio is Still Being Tortured in Prison by the Spiteful Biden Regime! Read Our Interview and Update Here!**

By Cara Castronuova Jan. 5, 2025 8:45 am

**Grandmother of Five Arrested Last Week and Shackled In Leg Irons For Meandering Around Capitol on January 6th! SPITEFUL BIDEN REGIME IS STILL HELLBENT ON PUNISHING TRUMP SUPPORTERS!**

By Cara Castronuova Dec. 9, 2024 7:45 am




**EXCLUSIVE: Proud Boys Leader Enrique Tarrio Is Still Being Tortured in Prison by the Spiteful Biden Regime! Read Our Interview and Update Here!**

By Cara Castronuova Dec. 4, 2024 7:45 am



**MUST SEE VIDEO! Decorated Marine, 21 Year NYPD Officer, and J6 Defendant Thomas Webster Is Currently Serving a Decade in Prison! Exculpatory VIDEO Shows Violent DC Metro Cop Punched Webster and Initiated a Fight! Thomas Webster Was Set Up!**

By Cara Castronuova Nov. 21, 2024 8:15 am

GP
Subscribe to our notifications for the latest news and updates. You can disable any time.



**"I Am Not Going to Let Them Trample on the Rights of Mayor Giuliani," said Rudy Giuliani's New Attorney Joe Cammarata. "FIGHT, FIGHT, FIGHT" for Rudy! INTERVIEW & VIDEO!**

By Cara Castronuova Nov. 20, 2024 6:45 pm

**EXCLUSIVE: Congressman Pens Letter to President Trump Asking For A Pardon for His "Violent" J6 Constituent — A DISABLED WAR HERO THAT IS ROTTING AWAY IN BIDEN'S GULAG! Read Congressman Brecheen's Powerful Letter!**

By Cara Castronuova Nov. 18, 2024 11:40 am



**Happy Veterans Day to WAR HERO & Medical Freedom Activist Mitch Bosch as He Drives to D.C. Today for His January 6th Kangaroo Court Hearing. PARDON THEM ALL!!**

By Cara Castronuova Nov. 11, 2024 4:00 pm

**The Gateway Pundit Endorses Rick Scott for Senate Majority Leader- CALL YOUR SENATOR TO HELP SCOTT GET THE VOTES NEEDED! Senate Chooses Leader This Wednesday!**

By Cara Castronuova Nov. 11, 2024 8:15 am



**Fabulous News! Mike Pompeo and Nikki Haley Will NOT Be Invited To be Part of Trump's Second Administration! DRAIN THE SWAMP!**

By Cara Castronuova Nov. 9, 2024 7:40 pm




**NY EMERGENCY ALERT! Vote 'NO' on Proposal One in New York Tomorrow! DECEITFUL PROPOSAL Can Give Illegal Migrants the Right to Vote and Allow Minors to Get Sex Changes!**

By Cara Castronuova Nov. 4, 2024 6:30 pm



**Founding Fathers' Legacy Lives in NY Senate Candidate Tricia Lindsay – MUST WATCH VIDEOS! Vote Tuesday to Make America GODLY Again!**

By Cara Castronuova Nov. 4, 2024 11:30 am

**"I Came Out of Jail Mentally and Physically Sharper" Steve Bannon Tells The Gateway Pundit. HE'S BACK AND READY TO FIGHT, FIGHT, FIGHT!!!**

By Cara Castronuova Oct. 29, 2024 9:00 pm




**Massive Support for President Trump From New Yorkers Before Giant Rally at Madison Square Garden! PALESTINIANS FOR TRUMP!?!**

By Cara Castronuova Oct. 26, 2024 9:00 am



**Dominican Rapper Releases New Single "VOTO" in Support of President Trump! MUST SHARE! Plus Dominicans For Trump Rally in New York City This Saturday!!**

By Cara Castronuova Oct. 17, 2024 9:15 am

1 2 ... 4 Next →



© 2026 The Gateway Pundit

# EXHIBIT 65

*TGP COMMUNICATIONS LLC MISSOURI CORPORATE ENTITY FILING*

Denny Hoskins
Missouri Secretary of State

MISSOURI ONLINE BUSINESS FILING

MY ACCOUNT | HOME | SEARCH | MISC INFO | UCC FILING | Help

# Search for a Business Entity

Required Field *

**Exact Match searches should include corporate designations (inc., llc, etc.) and punctuation.**

**We recommend you do not include these for other searches.**

Search: Business Name

**Search for a Business Entity**

Business Name *: TGP Communications, LLC

Includes names: Starting With

☐ Only Active Corporations

SEARCH

**Search Results as of 8/8/2026 4:16 PM**

Change page: Page 1 of 1, items 1 to 1 of 1.

| Business Name | Charter No. | Type | Status | Created | Registered Agent Name |
|---|---|---|---|---|---|
| TGP Communications LLC | LC1358217 | Limited Liability Company (Domestic) | Active | 11/21/2013 | REGISTERED AGENTS INC. |

Change page: Page 1 of 1, items 1 to 1 of 1.

# EXHIBIT 66

*FORMAL RETRACTION DEMAND & NOTICE OF VIOLATIONS*

**CONFIDENTIAL LEGAL COMMUNICATION // RETAIN FOR OFFICIAL RECORD**

# BEFORE THE TGP COMMUNICATIONS, LLC

## FORMAL TRANSMISSION & CERTIFICATE OF SERVICE

**DATE:** 08-08-2026
**DELIVERY:** Certified Electronic Mail
**TO:**

**Jim Hoft**
*jim@thegatewaypundit.com*
Founder & Editor
TGP Communications, LLC
c/o Northwest Registered Agent LLC
1215 Fern Ridge Parkway, Suite 220
St. Louis, MO 63141

**FROM:**

**John Earle Sullivan**
*johne.sullivan@outlook.com*
Copyright Owner & Injured Party
1221 West Erda Way
Erda, UT 84074

**RE (IDs):** DOC ID: 0808-JES-V-TGP-COP-DEF-DEM-LET-2026

**SUBJECT MATTER:**
**SETTLEMENT DEMAND UNDER FED. R. EVID. 408**

**REFERENCED ATTACHMENTS:**
- 0808-JES-V-TGP-COP-DEF-DEM-LET-2026

**RESPECTFULLY SUBMITTED & EXECUTED:**

John Earle Sullivan

**John Earle Sullivan**

Copyright Owner & Injured Party

**DATED:** 08-08-2026

**DOC LINK: 0808-JES-V-TGP-COP-DEF-DEM-LET-2026**
**SYSTEMIC VALIDATION: 2B339E18AE036351**
RENDER IDENTIFIER: 2AF1C21DA0AB9133
TIMESTAMP: 2026-08-08T16:09:35.193436Z

**NOTICE: MANDATORY EVIDENCE PRESERVATION IN EFFECT // FRCP 37(e) COMPLIANT**

# TABLE OF CONTENTS

**SETTLEMENT DEMAND UNDER FED. R. EVID. 408** ..... **3**

**The Copyright Infringement Claim** ..... **3**

**The Defamation Per Se & False Light Claims** ..... **4**

**Statute of Limitations and Equitable Tolling** ..... **5**

**Settlement Demand** ..... **3**

**CITATION LEDGER** ..... **6**

I. STATUTES, CODES, RULES, AND ADMINISTRATIVE POLICIES ..... 6

II. JUDICIAL PRECEDENTS & CASE LAW ..... 6

## SETTLEMENT DEMAND

| | |
|---|---|
| **AGENCY:** | TGP Communications, LLC (The Gateway Pundit) |
| **RECIPIENTS:** | Jim Hoft, Founder & Editor |
| **COPYRIGHT OWNER:** | John Earle Sullivan (Copyright Owner & Injured Party) |
| **DOC ID:** | 0808-JES-V-TGP-COP-DEF-DEM-LET-2026 |
| **DATE:** | 08-08-2026 |

# SETTLEMENT DEMAND UNDER FED. R. EVID. 408

Dear Mr. Hoft,

I write to place TGP Communications, LLC (The Gateway Pundit) and you on formal notice of copyright infringement under 17 U.S.C. § 501[1], as well as liability for defamation per se and false light arising from your publication's defamatory articles. This letter constitutes a formal opportunity to resolve these claims pre-litigation under Federal Rule of Evidence 408.

## THE COPYRIGHT INFRINGEMENT CLAIM

I am the sole author and copyright owner of the motion picture work *The Insurrection of The United States Capitol*, which is registered with the U.S. Copyright Office under Certificate of Registration PA 2-585-152, see § PA 2-585-152[2].

The Gateway Pundit has repeatedly displayed, hosted, embedded, and distributed my copyrighted J6 footage without authorization or license across dozens of articles from January 2021 through 2026. Because you have continued to host, display, and distribute these materials post-registration, my right to statutory damages under 17 U.S.C. § 504(c)[3] and attorney's fees under 17 U.S.C. § 505[4] is active.

Under 17 U.S.C. § 504, you are liable for actual damages and profits, or statutory damages of up to $150,000.00 for willful copyright infringement. The licensing history of this exact footage to major news networks (such as Cable News Network, Inc. (CNN) and NBCUniversal Media, LLC) provides a concrete baseline for actual damages under 17 U.S.C. § 504(b)[5].

## THE DEFAMATION PER SE & FALSE LIGHT CLAIMS

Your publication published multiple false, defamatory, and unprivileged statements concerning me. Specifically, on January 9, 2021, February 4, 2021, and April 12, 2025, you published articles containing the following false statements:

- In your January 9, 2021 article, titled *"NOT MAKING HEADLINES: Utah Activist John Sullivan Organized Antifa Protest Near US Capitol Before It Was Stormed — Tweeted About BLM Buses in DC on the 6th"*, you asserted that I *"organized Antifa protest near US Capitol before it was stormed"*, that I am a *"noted leftist leader from Utah [who] stormed the US Capitol"*, and a *"Black Lives Matter goon... who was flown into DC."*
- In your February 4, 2021 article, titled *"Exclusive: New Video Surfaces of Antifa-Insurgence Leader John Sullivan Training Antifa Soldiers and Selling Riot Equipment at his Website"*, you claimed I was an *"Antifa-Insurgence leader John Earl Sullivan"* and accused me of *"training Antifa soldiers and selling riot equipment at [my] website."*
- In your April 12, 2025 article, titled *"Government Set to Return [Funds] to J6 Defendant John Sullivan For Earnings Off of His J6 Footage - Sullivan Organized Antifa Rally at the US Capitol That Day"*, you asserted that I was an *"Antifa-Black Lives Matter leader"* and that I *"organized Antifa rally at the US Capitol that day."*

To state a defamation claim under Utah law, a plaintiff must allege that the defendant published statements that referred to the plaintiff, that the statements were false and defamatory, that the statements were published with the requisite degree of fault, and that the publication of the statements resulted in damage, as established in Mathews v. McCown[6]. A statement is defamatory per se under Utah law if it alleges criminal conduct on the part of the plaintiff or imputes conduct which is incongruous with the exercise of a lawful business, trade, profession, or office, as set forth in West v. Thomson[7] and Jacob v. Bezzant[8].

Your statements are defamatory per se because they charge me with criminal conduct (falsely alleging I was a violent *"rioter"* who incited the breach and *"organized"* a riot at the Capitol on January 6, 2021) and directly impute conduct incongruous with my lawful profession (falsely claiming I acted as a paid *"Antifa"* political agent or federal asset to manufacture news, which directly attacks my standing as an independent photojournalist). The doctrine of defamation per se in SIRQ v. Layton[9] establishes that special damages are presumed because of the naturally harmful character of these statements.

These assertions are demonstrably false. On January 20, 2025, President Trump issued Proclamation 10887, and on March 4, 2025, U.S. District Judge Royce C. Lamberth dismissed all Capitol-related criminal charges against me as moot (Case No. 1:21-cr-78-RCL-1), completely vacating my conviction. You published these accusations with actual malice—meaning with knowledge of their falsity or with reckless disregard for the truth. Specifically, by April 12, 2025, public court records and presidential proclamations had already confirmed the complete vacatur and mootness of my conviction. Yet, your publication continued to disseminate these fabrications, demonstrating a willful intent to defame.

Furthermore, under the false light standard in Jensen v. Sawyers[10], you placed me before the public in a highly offensive false light by mischaracterizing standard, arms-length commercial news licensing transactions as a conspiracy of paying a *"domestic rioter"* or *"Antifa instigator."*

## STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

Although defamation and false light claims generally carry a one-year statute of limitations under Utah Code § 78B-2-302(4)[11], the limitations period is equitably tolled in this action. Under Utah law, the statute of limitations is equitably tolled under the *"exceptional circumstances"* test in Estes v. Tibbs[12], which adopted the rule from Sevy v. Security[13]. Under this test, applying the general limitations period would be irrational or unjust. The Court of Appeals in Colosimo v. Bishop[14] confirmed that this equitable tolling applies when exceptional circumstances prevent a claimant from filing within the limitations period.

I was arrested and placed in restrictive federal custody and jail confinement (including solitary confinement). During this confinement, I was subjected to complete communication lockouts, including blockades on incoming/outgoing legal mail and electronic message systems. Federal law enforcement seized all of my physical and digital records, personal devices, and contract documents.

Because of these state-imposed physical and communicative barriers, I was entirely deprived of access to the courts, unable to consult civil counsel, and lacked access to the files necessary to identify the authors of the defamatory statements or file a civil action. Applying the general statute of limitations during this period of forced communicative blackout would be irrational and unjust.

## SETTLEMENT DEMAND

To avoid immediate civil litigation in the United States District Court for the District of Utah, I demand a retroactive licensing and settlement fee of $150,000.00 to resolve all copyright and tort claims.

If this demand is not met within fourteen (14) days of the date of this letter (on or before August 22, 2026), I will file a federal complaint in the District of Utah seeking the full measure of actual damages, disgorged advertising profits, punitive damages for defamation per se, and statutory costs.

Contact me directly to facilitate wire instructions or settlement execution.

Sincerely,



**John Earle Sullivan**
*(Copyright Owner & Injured Party)*

# CITATION LEDGER

## I. STATUTES, CODES, RULES, AND ADMINISTRATIVE POLICIES

**1.** *"Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a)... is an infringer of the copyright."* — **U.S. Congress, *17 U.S.C. § 501(a)*, at § 501(a)**

**2.** *"Registration of the motion picture work 'The Insurrection of The United States Capitol' was issued under Certificate PA 2-585-152."* — **U.S. Copyright Office, *Certificate of Registration PA 2-585-152*, at p. 1**

**3.** *"...the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work... in a sum of not less than $750 or more than $30,000 as the court considers just."* — **U.S. Congress, *17 U.S.C. § 504(c)(1)*, at § 504(c)(1)**

**4.** *"In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."* — **U.S. Congress, *17 U.S.C. § 505*, at § 505**

**5.** *"The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."* — **U.S. Congress, *17 U.S.C. § 504(b)*, at § 504(b)**

**11.** *"An action may be brought within one year... for libel, slander, assault, battery, false imprisonment, or seduction."* — **Utah State Legislature, *Utah Code § 78B-2-302(4)*, at § 78B-2-302(4)**

---

## II. JUDICIAL PRECEDENTS & CASE LAW

**6.** *"To state a defamation claim, a plaintiff must allege that the defendant published statements that referred to the plaintiff, that the statements were false and defamatory, that the statements were published with the requisite degree of fault, and that the publication of the statements resulted in damage."* — **Utah Supreme Court, *Mathews v. McCown, 2025 UT 34*, at ¶ 39**

**7.** *"To state a claim for defamation, a plaintiff must show that the defendant published statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage."* — **Utah Supreme Court, *West v. Thomson, 872 P.2d 999*, at pp. 1007-08**

**8.** *"...allege criminal conduct on the part of the plaintiff or impute the contracting of some loathsome disease, unchaste behavior (on the part of a woman) or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office."* — **Utah Supreme Court, *Jacob v. Bezzant, 2009 UT 37*, at ¶ 26**

**9.** *"Defamation per se does not require a showing of special damages because the statement is of such a nature that the law presumes that the plaintiff's reputation was damaged."* — **Utah Supreme Court, *SIRQ v. Layton, 2016 UT 30*, at ¶ 24**

**10.** *"An portrayal of a person in a false light may or may not include the communication of defamatory information about the victim. As the examples in the Restatement illustrate, a person may conceivably be placed in a false light through the dissemination of praiseworthy but untrue information about that person, if a reasonable person would find the false light highly offensive."* — **Utah Supreme Court, *Jensen v. Sawyers, 2005 UT 81*, at ¶ 46**

**12.** *"In general, statutes of limitations can be tolled for 'exceptional circumstances where the application of the general rule would be 'irrational' or 'unjust.''"* — **Utah Supreme Court, *Estes v. Tibbs, 1999 UT 52*, at ¶ 5**

**13.** *"...under the 'exceptional circumstances' exception, a court applying equitable tolling must balance the hardship to the plaintiff against the prejudice to the defendant, and toll the limitations period where the application of the general rule would be irrational or unjust."* — **Utah Supreme Court, *Sevy v. Security Title Co., 902 P.2d 629*, at p. 636**

**14.** *"...in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action."* — **Utah Court of Appeals, *Colosimo v. Roman Catholic Bishop of Salt Lake City, 2004 UT App 436*, at ¶ 20**

# EXHIBIT 67

*FORMAL ESI PRESERVATION HOLD & SPOLIATION WARNING NOTICE*

CONFIDENTIAL LEGAL COMMUNICATION // RETAIN FOR OFFICIAL RECORD

# BEFORE THE TGP COMMUNICATIONS LLC D/B/A THE GATEWAY PUNDIT

## FORMAL TRANSMISSION & CERTIFICATE OF SERVICE

**DATE:** September 17, 2026

**DELIVERY:** Electronic Mail & Certified Legal Transmittal

**TO:**


**James Hoft**
*jim@thegatewaypundit.com*
Founder, Managing Member & Editor-in-Chief
TGP Communications LLC / The Gateway Pundit
117 South Lexington Street, Ste 100
Harrisonville, MO 64701

**Registered Agents Inc.**
*central@registeredagentsinc.com*
Commercial Registered Agent
TGP Communications LLC
117 South Lexington Street, Ste 100
Harrisonville, MO 64701

**Alicia Powe**
*alicia.powe@thegatewaypundit.com*
Investigative Journalist
TGP Communications LLC / The Gateway Pundit
117 South Lexington Street, Ste 100
Harrisonville, MO 64701

**Cassandra Fairbanks**
*cassandra@thegatewaypundit.com*
Bureau Chief
TGP Communications LLC / The Gateway Pundit
117 South Lexington Street, Ste 100
Harrisonville, MO 64701

**Cullen Linebarger & Cara Castronuova**
*tips@thegatewaypundit.com*
Staff Writer & Investigative Reporter
TGP Communications LLC / The Gateway Pundit
Editorial & Newsroom Desk
117 South Lexington Street, Ste 100
Harrisonville, MO 64701

**John C. Burns**
*john@burns-law-firm.com*
Counsel of Record
TGP Communications LLC / The Gateway Pundit
P.O. Box 191250
St. Louis, MO 63119

**Jay Marshall Wolman & Marc J. Randazza**
*jmw@randazza.com*
Litigation Counsel
Randazza Legal Group, PLLC
Jay M. Wolman
Marc J. Randazza, Service / ECF Desk, 100 Pearl Street, 14th Floor
Hartford, CT 06103 / 2764 Lake Sahara Dr, Ste 109, Las Vegas, NV 89117


**FROM:**


**John Earle Sullivan**
*johne.sullivan@outlook.com*
Copyright Owner & Injured Party
1221 West Erda Way
Erda, UT 84074


**RE (IDs):** DOC ID: 0917-JES-V-TGP-ESI-HOLD-2026

**SUBJECT MATTER:**

FORMAL NOTICE OF IMMINENT LITIGATION, ELECTRONICALLY STORED INFORMATION (ESI) PRESERVATION DEMAND, AND SPOLIATION WARNING

**REFERENCED ATTACHMENTS:**

- 0917-JES-V-TGP-ESI-HOLD-2026

**RESPECTFULLY SUBMITTED & EXECUTED:**

John Earle Sullivan

**John Earle Sullivan**

Copyright Owner & Injured Party

**DATED:** September 17, 2026

**DOC LINK: 0917-JES-V-TGP-ESI-HOLD-2026**
**SYSTEMIC VALIDATION: 0288FFB604387F3C**
RENDER IDENTIFIER: 9D64837C6FC42D46
TIMESTAMP: 2026-09-17T10:09:43.897804Z

NOTICE: MANDATORY EVIDENCE PRESERVATION IN EFFECT // FRCP 37(e) COMPLIANT

# TABLE OF CONTENTS

**FORMAL NOTICE OF IMMINENT LITIGATION, ELECTRONICALLY STORED INFORMATION (ESI) PRESERVATION DEMAND, AND SPOLIATION WARNING** ........ **3**

**Subject Matter of Imminent Litigation** ........ **4**

**Comprehensive Preservation Directive & Scope of ESI** ........ **5**

Broadcast & Video Production Assets ........ 5

Editorial Deliberations & Internal Communications ........ 5

Digital Web, CMS & Social Media Publishing Records ........ 6

Financial, Commercial, Advertising & Syndication Telemetry ........ 6

**Suspension of Automatic Destruction & Deletion Policies** ........ **7**

**Formal Spoliation Warning and Legal Sanctions** ........ **7**

**Confirmation of Compliance** ........ **8**

# ESI HOLD

| | |
|---|---|
| **AGENCY:** | TGP Communications LLC d/b/a The Gateway Pundit |
| **RECIPIENTS:** | James Hoft (Founder, Managing Member & Editor-in-Chief), Registered Agents Inc. (Commercial Registered Agent), Alicia Powe (Investigative Journalist), Cullen Linebarger (Staff Writer), Cassandra Fairbanks (Bureau Chief), Cara Castronuova (Investigative Reporter), Newsroom Desk (News & Editorial), John C. Burns (Counsel of Record), Jay Marshall Wolman & Marc J. Randazza (Litigation Counsel) |
| **COPYRIGHT OWNER:** | John Earle Sullivan (Copyright Owner & Injured Party) |
| **DOC ID:** | 0917-JES-V-TGP-ESI-HOLD-2026 |
| **DATE:** | 09-17-2026 |

## FORMAL NOTICE OF IMMINENT LITIGATION, ELECTRONICALLY STORED INFORMATION (ESI) PRESERVATION DEMAND, AND SPOLIATION WARNING

TO ALL EXECUTIVE OFFICERS, MANAGING MEMBERS, FOUNDERS, GENERAL COUNSEL, ASSOCIATE GENERAL COUNSEL, LITIGATION COUNSEL, MANAGING EDITORS, INVESTIGATIVE REPORTERS, STAFF WRITERS, DIGITAL DIRECTORS, WEBMASTERS, CHIEF INFORMATION OFFICERS, SYSTEMS ADMINISTRATORS, DATABASE ADMINISTRATORS, NETWORK ARCHIVISTS, AND CUSTODIANS OF ELECTRONICALLY STORED INFORMATION OF TGP COMMUNICATIONS LLC:

**PLEASE TAKE FORMAL AND IRREVOCABLE NOTICE** that I, John Earle Sullivan, hereby serve this solemn and mandatory Electronically Stored Information (ESI) Preservation Demand and Spoliation Warning upon TGP Communications LLC, including its commercial digital publication *The Gateway Pundit*, its multimedia broadcasting verticals, content delivery networks, video hosting channels, social media syndication operations, editorial desks, corporate affiliates, and technology infrastructure vendors (collectively, *"TGP"*). This demand places TGP on formal, incontrovertible notice of imminent federal civil litigation arising out of TGP's unlawful commercial exploitation, unauthorized digital reproduction, public performance, synchronization, distribution, and defamatory editorial characterization of my proprietary documentary works.

Effective immediately upon the transmission and verified delivery of this instrument, your common-law, statutory, and procedural obligations to safeguard, sequester, and preserve all relevant documentary evidence, electronic records, internal communications, video assets, database revision histories, and financial telemetry have attached *in praesenti* across the entirety of your enterprise. Under controlling federal jurisprudence, the duty to preserve attaches at the precise moment litigation is reasonably anticipated, extending unconditionally to all key operational personnel, executive decision-makers, contributing authors, and technical data custodians. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216–18 (S.D.N.Y. 2003) (holding that the common-law duty to preserve evidence attaches when a party reasonably anticipates litigation and encompasses the mandatory obligation to identify, locate, and maintain all relevant documents, including electronic data generated by key corporate custodians); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (affirming that the affirmative duty of preservation extends to all evidentiary material that a party knows, or reasonably should know, is relevant to imminent litigation, mandating proactive intervention to halt routine destruction); *Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1191–93 (D. Utah 2009) (imposing severe spoliation sanctions for failure to institute an effective litigation hold and failure to suspend automated data destruction routines upon receiving notice of potential claims); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991) (recognizing the inherent supervisory power of federal courts to penalize bad-faith conduct and the spoliation of evidentiary records).

Pursuant to these governing authorities, you are hereby commanded to immediately formulate, execute, and circulate a formal, written, company-wide Litigation Hold to all executive members, managing editors, investigative journalists, contributing writers, video editors, database engineers, IT administrators, hosting providers, and third-party platform vendors, commanding the unconditional, immutable preservation of all physical files, metadata, and ESI as delineated herein.

---

## SUBJECT MATTER OF IMMINENT LITIGATION

---

This preservation demand pertains directly to imminent federal civil proceedings arising out of TGP's multi-year course of unlawful conduct, unauthorized commercial exploitation, digital publications, video broadcasting, editorial deliberations, social media dissemination, and syndication reporting from January 6, 2021 through the present date, encompassing, without limitation, the following operative subject matters:

1. **Proprietary Documentary Audiovisual Work**: The original, protectable documentary motion picture recording captured at the United States Capitol complex on January 6, 2021, duly registered with the United States Copyright Office under Registration Number **PA 2-585-152**, including all raw camera footage, ingested feeds, master audio tracks, local reproductions, rasterizations, frame-by-frame extractions, editorial truncations, non-linear timeline synchronizations, embed player configurations, streaming distribution, downstream licensing, and commercial monetization executed by TGP, its editors, and its third-party video distribution channels without my authorization or license.
2. **Publications, Broadcasts, and Internal Editorial Deliberations**: All digital articles, investigative columns, opinion verticals, podcast episodes, video broadcasts, and social media releases authored, edited, published, or syndicated by TGP referencing, identifying, depicting, or characterizing John Earle Sullivan, alongside all contemporaneous internal editorial deliberations, pitch memos, draft revisions, reporter field notes, source communications (specifically including, without limitation, all transmissions with external contributors, stringers, or embedded operatives, including Tayler Hansen), background research files, vetting dossiers, fact-checking records, and retraction requests related thereto.
3. **Commercial, Programmatic, and Advertising Telemetry**: All digital programmatic advertising telemetry (including Google Ad Manager records, OpenRTB auction bids, pre-roll video ad monetization statements, header-bidding logs, Cost Per Mille (CPM) yield ledgers, impression counts, and pageview analytics), direct corporate sponsorships, paid newsletter insertions, subscription revenue tracking, affiliate marketing earnings, and third-party syndication agreements associated with any digital article, video stream, or social post referencing John Earle Sullivan or containing his copyrighted audiovisual footage.

## COMPREHENSIVE PRESERVATION DIRECTIVE & SCOPE OF ESI

TGP must unconditionally preserve all physical documents, electronic records, database files, internal communications, and network telemetry created, transmitted, modified, or received from **January 6, 2021 through the present date**, across the following four comprehensive categories:

### Broadcast & Video Production Assets

- **Master Video Recordings & Stream Ingestion Feeds**: All master digital video files, raw camera downloads, excerpted clips, screen captures, audio sweetening tracks, and video player configuration files for every video segment, interview, podcast episode, or multimedia broadcast referencing me or incorporating my copyrighted video footage.
- **PAM/MAM Project Files & Editing Timelines**: All Production Asset Management (PAM) and Media Asset Management (MAM) project files across all non-linear editing suites (including, without limitation, Adobe Premiere Pro .prproj, DaVinci Resolve .drp, Final Cut Pro .fcpxml, XML interchange schemas .xml, edit decision lists .edl, and advanced authoring format containers .aaf), including all raw project timelines, cut sequences, B-roll bins, audio tracks, graphics packages, lower-third overlays, and deleted clip repositories.
- **Video Distribution & Channel Archives**: Master video upload files, raw camera memory archives, and B-roll repositories utilized across The Gateway Pundit's video distribution channels (specifically including, without limitation, Rumble, YouTube, Truth Social, X/Twitter, and Telegram).
- **Video Metadata & Transcripts**: Complete video metadata files, thumbnail images, title and description revision histories, video tag logs, closed-captioning sidecar files (.srt, .vtt, .scc), and web embed code histories.

### Editorial Deliberations & Internal Communications

- **Enterprise Email Systems**: All active mailboxes, archive vaults, PST/OST storage containers, and deleted item caches within Microsoft 365, Google Workspace, or on-premise mail servers for James Hoft, Alicia Powe, Cullen Linebarger, Cassandra Fairbanks, Cara Castronuova, copy editors, webmasters, and administrative personnel.
- **Instant Messaging & Collaboration Platforms**: Complete channel histories, direct messages, private group chats, thread histories, edits, deletions, and shared media across real-time collaboration platforms, including, without limitation, Slack, Microsoft Teams, Zoom Chat, Google Chat, Discord, and Mattermost.
- **Mobile & Ephemeral Messaging**: Complete SMS, MMS, iMessage, WhatsApp, Signal, and Telegram message histories from corporate-issued and personal *"Bring Your Own Device"* (BYOD) smartphones and tablets used by relevant personnel for business communications, story leads, editorial direction, or source communications.
- **Editorial Memos & Source Research Dossiers**: All article pitches, editorial assignment memos, draft manuscripts, pre-publication source notes, vetting dossiers, background research files, fact-checking tickets, retraction requests, reader complaints, and post-publication internal critique records.

## Digital Web, CMS & Social Media Publishing Records

- **CMS Version Histories & Database Logs**: All Content Management System records (including WordPress, WP-Engine, or custom CMS platforms), specifically raw MySQL/MariaDB database tables (wp*posts*, wppostmeta, wp*comments*, wpusers, wp*term*relationships), revision tables, original drafts, unpublished revisions, headline variations, editorial diff logs, author attribution metadata, and administrative user action audit trails.
- **Web Server & CDN Telemetry**: Full web server access logs, error logs, Content Delivery Network (CDN) delivery logs (specifically including, without limitation, Cloudflare, Fastly, and AWS CloudFront), URL redirect maps, caching configurations, and URL takedown/purge histories for all web pages mentioning me.
- **Social Media Publishing Records**: Complete native and third-party social media archives (including Sprout Social, Hootsuite, Buffer, and native platform archives) across X/Twitter (@gatewaypundit), Rumble, Facebook, Truth Social, YouTube, Instagram, and Telegram, including published posts, quoted video clips, deleted posts, comment moderation action logs, user interaction telemetry, and API event logs.
- **Video Platform Backend Data**: All Rumble backend data, YouTube Studio records, and third-party video host analytics, including master video uploads, custom thumbnails, title/description revision histories, monetization tags, and Content ID or DMCA claiming and counter-notice records.

---

## Financial, Commercial, Advertising & Syndication Telemetry

- **Digital Programmatic CPM & Ad Revenue Data**: Complete Google Ad Manager reports, pre-roll video monetization statements, header-bidding logs, OpenRTB telemetry, Cost Per Mille (CPM) ledgers, and pageview monetization tracking for all relevant web pages, articles, and digital video streams.
- **Direct Sponsorships & Native Advertising Agreements**: All direct advertiser contracts, insertion orders, native advertising agreements, newsletter sponsorship records, affiliate marketing ledgers, and merchandise revenue records tied to coverage of me.
- **Syndication, Wire & Content Licensing Records**: All third-party content syndication contracts, content licensing agreements, wire redistribution logs, affiliate publication agreements, and royalty ledgers.

## SUSPENSION OF AUTOMATIC DESTRUCTION & DELETION POLICIES

TGP is hereby ordered to immediately suspend all automated document destruction, data purge routines, and device decommissioning programs that could affect relevant ESI:

- **Halting of Email & Chat Auto-Purge**: Immediately suspend all rolling 30/60/90-day deletion rules, auto-archive routines, and mailbox size caps across Microsoft 365, Google Workspace, Slack, and Microsoft Teams. Administrative Litigation Holds must be placed across all relevant custodian accounts immediately.
- **Cessation of Backup Overwriting**: Immediately cease the overwriting, recycling, reformatting, and rotation of all backup tapes, off-site disaster recovery media, and virtual machine snapshot pools containing data from January 6, 2021 to the present.
- **Preservation of Native File Formats & Metadata**: All ESI must be preserved in its original native format (including, without limitation, .msg, .eml, .docx, .prproj, .mov, .mxf, .json, .sql) with all system metadata completely intact (including creation dates, author metadata, EXIF data, email routing headers, and digital file hashes). Converting ESI to static, non-searchable PDFs or paper printouts is strictly prohibited.
- **Hardware Preservation & Decommissioning Freeze**: Immediately halt the re-imaging, wiping, disposal, resale, or recycling of all desktop computers, laptops, smartphones, tablets, external storage media, or server hardware used by relevant editorial, reporting, video production, and IT personnel.

## FORMAL SPOLIATION WARNING AND LEGAL SANCTIONS

TGP is placed on formal notice that the destruction, alteration, concealment, or failure to preserve relevant ESI will trigger immediate judicial sanctions under **Rule 37(e) of the Federal Rules of Civil Procedure** and the inherent powers of the federal courts:

- **Mandatory Adverse Inference Instructions**: If TGP fails to preserve ESI with the intent to deprive me of its use in litigation, I will move the court under **Fed. R. Civ. P. 37(e)(2)(B)** for a mandatory jury instruction establishing that the destroyed evidence was unfavorable to TGP, proving actual malice and willful copyright infringement as a matter of law.
- **Default Judgment**: Under **Fed. R. Civ. P. 37(e)(2)(C)**, the court may strike TGP's answers, dismiss TGP's defenses, and enter a full **Default Judgment** against TGP on all claims.
- **Statutory Damages Maximization**: The destruction of licensing logs, video project archives, CMS diffs, or internal communications will be presented as conclusive evidence of willful copyright infringement under **17 U.S.C. § 504(c)(2)**, subjecting TGP to maximum statutory damages for willful infringement, alongside mandatory attorneys' fees under **17 U.S.C. § 505**.
- **Personal Liability of Counsel & Custodians**: Legal counsel, corporate managers, and technical custodians who fail to enforce this hold notice face individual sanctions, financial penalties, and disciplinary referrals under **28 U.S.C. § 1927** and the court's inherent authority.

## CONFIRMATION OF COMPLIANCE

TGP must deliver written confirmation certifying full compliance with this ESI Preservation Demand within **seven (7) business days** of receipt of this notice.

Your written confirmation must be transmitted via electronic mail directly to **johne.sullivan@outlook.com** and must include the following verified certifications signed by corporate legal counsel or an authorized managing member:

- **Certification of Hold Distribution**: Written verification that a mandatory Litigation Hold has been distributed to all relevant executive, editorial, reporting, video production, digital, and technical IT custodians.
- **Certification of Purge Suspension**: Written verification that all automated deletion policies, email auto-purge routines, backup tape rotations, and device wiping procedures have been halted.
- **Identification of Designated Custodians**: A comprehensive list identifying the primary corporate, editorial, and technical IT custodians responsible for managing ESI preservation.
- **Third-Party Vendor Notice**: Written verification that all cloud storage providers, CMS hosts, video delivery networks, and social media management vendors have been formally notified to preserve all relevant data.

Failure to provide written confirmation within seven (7) business days will be treated as an affirmative refusal to preserve evidence and will be submitted directly to the United States District Court in support of immediate emergency motions for pre-trial preservation orders, forensic imaging subpoenas, and evidentiary spoliation sanctions.

Respectfully submitted this 17th day of September, 2026.

**John Earle Sullivan**
*(Copyright Owner & Injured Party)*

# EXHIBIT 68

*ANONYMOUS DISCORD RUMOR CROP FROM JAN 09 2021 ARTICLE*

On Discord today a username Kang said today "You can't think it was just Trump supporters."

"THERE WERE TONS OF ANTIFA MEMBERS BUT WHY WOULD THEY RAT THEMSELVES OUT."



# EXHIBIT 69

*TGP UNAUTHORIZED BROADCAST FRAME (INSURGENCE USA)*


Insurgence USA

# EXHIBIT 70

*TGP OFFICIAL YOUTUBE LIVESTREAM BROADCAST FRAME (JAYDEN X)*

Premium

Search or ask a question

Create

Capitol Punishment Trailer .mp4




48:09 / 51:26

# JOIN 100 Percent Fed Up and Gateway Pundit LIVE With Hollywood Actor and Producer NICK SEARCY

Gateway Pundit
107K subscribers

Subscribe

796 | Share | Save | Download

9.3K views Streamed 4 years ago
MARK YOUR CALENDARS! YOU WON'T WANT TO MISS THIS! Meet CAPITOL PUNISHMENT: Everything They Told You Is A Lie Producer Nick Searcy and Director Chris Burgard. L ...more

Live chat replay
See what others said about this video while it was live.
Open panel

## 56 Comments

Sort by

Add a comment...

@pattichristensen9814 4 years ago
God bless you guys for bringing TRUTH. Can hardly wait to see this film, and on Thanks...Giving!
21 Reply

Top chat replay

Leaderboards

@no.4mk1 hoft is a true American hero
@devilsden2283 Gestapo....
@harvestmarymoon9453 I know that good over powers evil and we will win on earth before heaven
@Cenepk101 Hello ... We are a Marxist State now
@tamaramitchell1173 That is Biblical stuff!
@judymarquette8847 trump won
@SharonMarlow HAPPY DAY FOR ALL
@devilsden2283 fate of America rests on mids.....
@FuckTheGlobal if Kyles falls, America falls. it is that simple!
@kristenannmosley1198 ❤️❤️❤️
@chrisbaker2697 it is all a part of a master plan for Democrats to keep control and create one world government the pope also signed one world religion peace treaty
@aliciastay7535 Thank you
@Cenepk101 We are like a frog in a cauldron- The heat is turned up & most aren't even noticing. You have the totally lunatic right who are waiting on JFK Jr; you have sleepers, Awake & Awake, Loud & persecuted.
@JZ-ManJr THANK YOU
@SharonMarlow God Bless The Movie Looks Great We will Share it out sir Thank You
@Cenepk101 Thank you !!!!




Neil deGrasse Tyson Explains How the Periodic Table Works
StarTalk
3.9M 2w ago




The Moment That Made Me | Major General Julian Thompson
BFBS Forces News
89K 1y ago

# E X H I B I T 7 1

*TGP 404 SPOLIATION & DELETION FULL PAGE EXTRACTION*

Get Ad Free RINO Watch TGP Videos Please Donate to TGP Tip Line Log In / Register



# Oops! That page can't be found.

It looks like nothing was found at this location. Maybe try searching?

Search ...

Search ...

## Video of the Week

Leftist Defends Mass Mail In Ballots While Admitting The USPS Sucks






## Trending Now on TGP

1 BREAKING: President Trump Abruptly Withdraws Nominee For ICE Director

2 Concealed Carry Permit Holder Shoots Would-Be Robber at Gas Station in Chicago (VIDEO)

3 SICKENING: Lake Charles Caretaker Caught on Camera Pouring Bleach Into Handicapped Man's Water — Then Told Him "Here, Drink This"

4 WATCH: Washington Democrat House Candidate Admits She Drank Wine, Refuses Sobriety Tests, Then Sobs and Prays in the Back of a Cop Car After Five-Car Crash

5 SHOCK VIDEO: Unhinged Patient Violently Assaults ER Nurse After Beating Up One of Her Colleagues – Hospital Security Nowhere to Be Found During Attack

## This Week's Top Posts

1 122K VIEWS: HORROR: Vicious Thugs Drag Female College Student from Own Porch by Her Hair and Brutally Beat Her in the Street – Police MIA Even After Being Called FOUR TIMES

2 98.6K VIEWS: WATCH: Kash Patel Mic-Drops on Unhinged Democrat Senator with a Damn Observation After Leftist Badgers Him During Fiery Hearing

3 87.4K VIEWS: **Clancy Juror Continues Her Media Tour, Says the Quiet Part Out Loud About Mostly Female Lindsay Clancy Jury (VIDEO)**

4 80.1K VIEWS: **Kash Patel Humiliates Adam Schiff During Annual FBI Oversight Hearing (VIDEO)**

5 79.4K VIEWS: **15-Year-Old Girl Charged with First-Degree Murder After Fatally Pushing Amazon Worker from Moving Chicago Train**

**Get Our Newsletter**

Sign up now and stay ahead in the political landscape.

Enter Your Email Address

Subscribe

GATEWAY HISPANIC

Visit **GatewayHispanic.com** to read news of interest to the hispanic community.

AMERICAN GULAG

Visit **AmericanGulag.org** to learn how to help the prisoners of the protest on January 6th.

# TGP VIDEOS

Visit **TGPVideos.com** to watch the latest exclusive videos from The Gateway Pundit.

# TGP TRUTH

As the mainstream media repeatedly fails and loses public trust, TGP has continued to offer accurate and timely reporting for almost two decades. Visit **TGP FactCheck** to see how we get it right.

**TGP Stats**

## TRENDING NEWS


**This Tech Could Be Worth 35 Amazons**


**Why prediction markets are betting on the wrong Biden this week**


**Trump Launches TrumpRx Website for Discount Pharmaceutical Drugs**


**Three “Double Down” Picks for Today, NVIDIA Climbed 29,873% Since O...**


**Donald Trump turns 80 this week, but his Social Security check is m...**


**TrumpIRA.gov Is Coming in 2027. What the New Retirement Account Means**


**Why Denver Keeps Showing Up on Retirement Rankings — Even With Risi...**

GP

**Please Donate Here**

**Please consider supporting the work of The Gateway Pundit. Every dollar donated helps cover the cost of researching, writing, publishing, and promoting the news you read every day on The Gateway Pundit.**

GATEWAY PUNDIT
WHERE HOPE FINALLY MADE A COMEBACK

© 2026 The Gateway Pundit

Home About Us Contact Privacy Terms Get Ad Free